IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., individually and as Next Friend to his minor children P.G.F. and P.R.F., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil No. 22-00397 LEK-KJM <br><br> ORDER GRANTING THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER TO QUASH THE DEPOSITION NOTICE TO ADMIRAL SAMUEL J. PAPARO |

ORDER GRANTING THE UNITED STATES'
MOTION FOR A PROTECTIVE ORDER TO QUASH THE
<u>DEPOSITION NOTICE TO ADMIRAL SAMUEL J. PAPARO</u>

Defendant United States of America ("Defendant" or "United States") filed a Motion for Protective Order to Quash the Deposition Notice to Admiral Samuel J. Paparo ("Motion"). ECF No. 101. Plaintiffs filed an Opposition to the Motion on May 30, 2023. ECF No. 112. Defendant filed a Reply on June 2, 2023. ECF No. 115.

The Court held a hearing on the Motion on June 21, 2023. Lyle S. Hosoda, Esq., James Baehr, Esq., and Kristina Baehr, Esq., appeared on behalf of Plaintiffs. Caroline Stanton, Esq., Rosemary C. Yogiaveetil, Esq., and Anna Ellison, Esq., appeared on behalf of Defendant. After carefully considering the Motion,

applicable law, record in this case, and arguments of counsel, the Court GRANTS the Motion for the reasons set forth below.

## BACKGROUND

This case arises out of the May 6 and November 20, 2021 fuel leaks from the Red Hill Bulk Fuel Storage Facility on Joint Base Pearl Harbor-Hickam. Defendant allegedly failed to disclose the leaks to affected parties, including the Plaintiffs, who claim that they suffered various adverse physical and mental health issues as a result of exposure to the contaminated water. Plaintiffs assert claims under the Federal Tort Claims Act for negligence (Count I); (2) negligent undertaking (Count II); (3) nuisance (Count III); (4) medical negligence, failure to treat, and delayed care (Count IV); (5) infliction of emotional distress (Count V); (6) negligent spoliation of evidence (Count VI), and premises liability, duty to control force (Count VII). Fourth Amended Complaint, ECF No. 121, ¶¶ 464–558.

The Motion concerns Plaintiffs' request to depose Admiral Samuel J. Paparo, Commander of the U.S. Pacific Fleet ("Admiral Paparo"). The United States argues that the Supreme Court's decision in *United States v. Morgan*, 313 U.S. 409 (1941), and the cases following *Morgan*, including *In re U.S. Dep't of Educ. (DeVos)*, 25 F.4th 692 (9th Cir. 2022), preclude Plaintiffs from deposing Admiral Paparo. For the reasons explained below, the Court agrees.

2

DISCUSSION

Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

The 2015 amendments to Rule 26(b) encourage trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage discovery to accomplish the goal of Rule 1, which is to secure the just, speedy, and inexpensive determination of every action and proceeding. *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 601–04 (D. Nev. 2016). "[T]he pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015), *available at* http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf. "The key here is careful and realistic assessment of actual need." *Id.*

"A court may issue a protective order only after the moving party demonstrates that good cause exists for protecting" the party or person. *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 436, 437 (N.D. Cal. 2008) (citing Fed. R. Civ. P. 26(c)). The moving party, therefore, has the burden of showing a particular need for protection under Rule 26(c). *Id.*

Defendant urges the Court to preclude Admiral Paparo's deposition pursuant to the rule set forth in *Morgan*, as recently restated by the Ninth Circuit Court of Appeals in *DeVos*. For over 80 years, *Morgan* has stood for the proposition that high-ranking government officials should rarely be compelled to testify regarding the deliberative process used to arrive at a decision within the scope of their governmental duties. In *Morgan*, the district court allowed the Secretary of Agriculture to be examined as to how he had arrived at his decision to set rates to be charged by market agencies for their services. 313 U.S. at 422. In an aside to the merits of the case, the Supreme Court criticized the district court for allowing the Secretary to be questioned at length regarding the manner and extent of his study of the record and his consultation with his subordinates. *Id.* ("[T]he Secretary should never have been subjected to this examination").

*Morgan* remains "the seminal authority on the deposition of cabinet secretaries and other high-ranking government officials[.]" *DeVos*, 25 F.4th at 700. Since *Morgan*, numerous courts have held that high-ranking government

4

officials may not be deposed about their reasons for taking official action absent extraordinary circumstances. *See, e.g.*, *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) (granting petition for writ of mandamus precluding deposition of EPA Administrator); *In re United States (Bernanke)*, 542 F. App'x 944, 947–48 (Fed. Cir. 2013) (granting petition for writ of mandamus and holding that Chairman of Board of Governors of Federal Reserve was entitled to protective order preventing his deposition); *Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199, 203–04 (2d Cir. 2013) (affirming the district court's protective order barring depositions of mayor and former deputy mayor); *Bogan v. City of Boston*, 489 F.3d 417, 423–24 (1st Cir. 2007) (affirming the district court's issuance of protective order preventing deposition of mayor). This rule is based on the notion that "high ranking government officials have greater duties and time constraints than other witnesses and . . . , without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Maney v. Oregon*, 2023 WL 3866761, at *4 (D. Or. June 7, 2023) (citations omitted).

There is a parallel branch of caselaw extending the *Morgan* doctrine to non-governmental executives under the "apex doctrine." *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (deposition of a high-level executive is an "apex deposition" requiring special scrutiny); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *3

5

(N.D. Cal. Jan. 25, 2007) (addressing deposition notices directed at an official at the highest level or "apex" of corporate management); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) (addressing the plaintiffs' motion to depose Lee Iacocca, Chairman of the Board of Chrysler Corporation). Although many earlier judicial opinions tended to refer to the *Morgan* and apex doctrines interchangeably, the Ninth Circuit Court of Appeals recently distinguished the two doctrines. In *DeVos*, a Ninth Circuit panel stated that it views its constitutionally-based *Morgan* analysis as distinct from its apex deposition analysis. 25 F.4th at 700 n.1. The *DeVos* panel issued a writ of mandamus and held that the district court "inappropriately breached the barrier separating one co-equal branch of the federal government from another" in allowing the deposition of former U.S. Secretary of Education Betsy DeVos in connection with an action challenging a Department of Education ruling on student borrowers' applications to cancel federal student loans. 25 F.4th at 699–700.

The panel set forth three requirements a party must satisfy to depose a high-ranking government official: (1) a showing of agency bad faith; (2) the information sought from the witness is essential to the case; and (3) the information sought from the witness cannot be obtained in any other way. *Id.* at 702. All three factors must be satisfied to take the deposition. *Id.* The underlying policy restricting these depositions is that "[h]igh ranking government officials

have greater duties and time constraints than other witnesses . . . . Their time is very valuable." *Id.* at 700 (internal brackets omitted). The *DeVos* analysis binds this Court.

I.      Admiral Paparo is a High-Ranking Official

Although there is no bright-line standard for determining whether an official is sufficiently high-ranking to warrant protection, the Court is guided by the purpose of the rule—to recognize that high ranking government officials may be targeted for discovery, and due to their significant job duties and time constraints, deserve appropriate protection when they have no particularized direct knowledge of essential facts.

Admiral Paparo has served as Commander, U.S. Pacific Fleet[1] since May 2021. ECF No. 101 at 2. As Commander, Admiral Paparo is responsible for protecting and defending the maritime interests of the United States in the Indo-Asia-Pacific Region by providing combat-ready naval forces and operating forward in global areas of consequence. *Id.* The Commander of the U.S. Pacific Fleet is also the Navy's Senior Officer Present in Hawaii, and he assumes command and directs movements and efforts of all Navy personnel in Hawaii

---

[1] The U.S. Pacific Fleet encompasses 100 million square miles and consists of approximately 200 ships, 1,500 aircraft, and 150,000 military and civilian personnel, consisting of more than 60% of the entire U.S. Navy. ECF No. 101 at 2.

7

when deemed necessary. *Id.* at 3. Admiral Paparo, a four-star admiral, holds the highest rank available in the Navy. *Id.* at 2.

The Court is not persuaded by Plaintiffs' arguments that Admiral Paparo is not a high-ranking government official. Plaintiffs concede that Admiral Paparo is a "senior leader[,]" but they nevertheless compare his position under the Secretary of Defense to a sheriff's captain or chief deputy. ECF No. 112 at 15 (citing unpublished cases). Although the Court readily acknowledges the significant duties that a sheriff's captain or chief deputy undertake, the Court is not willing to equate the responsibilities of those positions to those of the Commander of the largest fleet in the U.S. Navy and the world. Under the circumstances, the Court finds that Admiral Paparo is a high ranking official.

II. On This Limited Record, the Court Cannot Make a Finding of Bad Faith

Relying on the core allegations of their complaint, Plaintiffs argue that there is a "substantial showing" of agency bad faith. ECF No. 112 at 17–18 ("The Plaintiffs' case rests on the actions of an agency that violated orders, spilled chemicals, contaminated water, and then minimized and suppressed information about its role in these actions[.]"). Defendant's Motion and Reply do not address this *DeVos* factor or Plaintiffs' argument.

"Bad faith is a requirement because when the agency has been dishonest, further judicial scrutiny is justified and, in fact, necessary to effectuate judicial

review." *DeVos*, 25 F.4th at 703.  In *DeVos*, the Ninth Circuit "s[aw] no reason to question" the district court's finding that the Department of Education acted in bad faith by using form letters to deny student loan applications, despite previously claiming that lengthy delays in deciding debt relief applications were due to a time-intensive decision-making process.  *Id*.  Here, although the United States has admitted to a breach of the standard of care from May 6, 2021 to November 20, 2021, in operating Red Hill, it has not admitted that it did so in bad faith.[2]  Nor has the district court made any findings that would support Plaintiffs' allegations. Accordingly, on this record, the Court cannot make a finding of bad faith attributable to the United States.  This factor therefore weighs in favor of granting the Motion.

III.  Plaintiffs Fail to Establish that Admiral Paparo Has Unique Knowledge of Facts Essential to the Case

The Court next considers whether Admiral Paparo has unique, first-hand knowledge of facts essential to Plaintiff's case.  The record demonstrates that on November 29, 2021, Admiral Paparo ordered a command investigation, conducted by Rear Admiral Christopher J. Cavanaugh, into the causes of the May and November 2021 releases and the recovery efforts thereafter. ECF No. 101 at 3. Rear Admiral Cavanaugh, along with a team of experts, detailed their findings in a

---

[2] The United States has not filed an answer or motion for summary judgment.

January 20, 2022 report. *Id.* The United States has produced unredacted copies of the Cavanaugh Report and its enclosures to the Plaintiffs. *Id.*

Admiral Paparo did not participate in the Cavanaugh investigation, nor did he write any portion of the Cavanaugh Report. *Id.* In accordance with U.S. Navy regulations, Admiral Paparo reviewed the final Cavanaugh Report and submitted it to his superiors. *Id.*

Plaintiffs argue that they intend to depose Admiral Paparo on ten topics, which they argue relate to disputed claims, including their negligent undertaking claim. ECF No. 112 at 12–13.³ The United States repeatedly claims that it has admitted a breach of the standard of care as to all negligence claims, leaving only causation and damages in dispute. ECF No. 115 at 7. The pertinent portion of the stipulation recites:

> The United States does not dispute that, between May 6, 2021, and November 20, 2021, the United States breached its duty of care to the Resident Plaintiffs to exercise ordinary care in the operation of Red Hill, resulting in the May 6, 2021 and November 20, 2021 spills.

ECF No. 98 at 2. The Court does not read the stipulation as admitting to any standard of care breach *after* the May and November spills. Rather, the stipulation is expressly limited to the time period between May 6, 2021 and

---

³ It appears that these topics were not discussed during any meet and confer.

November 20, 2021.  Plaintiffs' negligent undertaking claim, though, alleges wrongdoing *after* November 2021:

> 481.  Federal officers breached the duty to exercise ordinary care after an undertaking in at least the following respects:
>
> . . .
>
> g.    Officers failed to warn residents that the leaks had occurred in violation of federal and state law;
>
> h.    Officers ordered junior servicemembers to flush hazardous fuel into groundwater without a permit and in violation of federal and state law;
>
> i.    Officers knew that maintenance failures had compromised Red Hill and failed to take corrective action to prevent harm;
>
> j.    Officers failed to properly remediate affected homes;
>
> k.    Officers failed to test water samples for petroleum and destroyed water samples from affected homes;

ECF No. 121 at 182 ¶ 481.

     Comparing the time-limiting language of the stipulation to the foregoing post-spill allegations, the Court is not persuaded that the United States has admitted to these alleged standard of care breaches.  If the United States intends to admit such breaches, it should formally clarify its position in its Answer or another stipulation.  Thus, the Court rejects Defendant's argument that the stipulation precludes post-spill discovery.

Nevertheless, Plaintiffs have not established that Admiral Paparo has unique, first-hand knowledge of their proposed areas of inquiry or how each area of inquiry is essential to the negligent undertaking claim. Just by way of example, Plaintiffs do not explain how a discussion between Governor Ige and Admiral Paparo is relevant to the Plaintiffs' burden of proof on their negligent undertaking claim. The Court therefore finds that this factor weighs in favor of granting the Motion.

## IV.  Plaintiffs Have Failed to Exhaust Less Intrusive Discovery Methods

Additionally, Plaintiffs have not established that they have exhausted other less intrusive discovery methods. Though the parties disagree whether discovery regarding Plaintiffs' proposed topics is relevant, it is apparent from this record that Plaintiffs have not attempted to obtain this information from other means of discovery. Plaintiffs argue in conclusory fashion that "[o]nly Admiral Paparo knows" the answers to the question they intend to ask, ECF No. 112 at 20, but Plaintiffs do not articulate why cannot utilize requests for answers to interrogatories or a Rule 30(b)(6) deposition to obtain sworn answers to these questions. Although "a party is not normally obligated to exhaust these other discovery avenues prior to taking a deposition, here Plaintiffs are required to do so because [Admiral Paparo] is a high ranking government official." *Silva v. City & Cnty. of Honolulu,*, CIVIL No. 15-00436 HG-KJM, 2016 WL 11713387, at *3 (D. Haw. Nov. 22, 2016).

It also does not appear that Plaintiffs attempted to depose all pertinent lower ranking officials on these topics. There are at least five separate commands below Admiral Paparo with more direct oversight of Red Hill: (1) Fleet Logistics Center ("FLC"); (2) Naval Supply Systems Command ("NAVSUP"); (3) Naval Facilities Engineering Systems Command ("NAVFAC"); (4) Commander, Navy Region Hawaii; and (5) Commander, Navy Installations Command. ECF No. 101 at 4, 9–10. Red Hill is a part of Defense Fuel Support Point Pearl Harbor, which is overseen by FLC Pearl Harbor. *Id.* The FLC Pearl Harbor Commanding Officer oversees a team responsible for the day-to-day operation of Red Hill, including the FLC Pearl Harbor Executive Officer, the FLC Pearl Harbor Executive Director, the FLC Pearl Harbor Fuels Director, and the FLC Pearl Harbor Deputy Fuels Director. *Id.* The FLC Commanding Officer reports in turn to the Commander, NAVSUP. *Id.* Additionally, NAVFAC Hawaii is responsible for developing, awarding, and administering contracts in support of Red Hill maintenance and repair, as well as conducting all environmental monitoring functions. *Id.* Plaintiffs have not, to the Court's knowledge, directed discovery at any of these entities or individuals.

As this Court did in the *Silva* case, cited by both parties, the Court cautions the United States that it may not shield Admiral Paparo from deposition, yet later attempt to use his testimony on summary judgment or at trial. If, at any point, the

13

United States intends to utilize Admiral Paparo's testimony, it must promptly advise Plaintiffs and make Admiral Paparo available for deposition.

CONCLUSION

For the foregoing reasons and authorities, the Court GRANTS Defendant's Motion for Protective Order to Quash the Deposition Notice to Admiral Samuel J. Paparo (ECF No. 101).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 22, 2023.

Kenneth J. Mansfield
United States Magistrate Judge

*Feindt v. United States of America*, Civil No. 22-00397 LEK-KJM; Order Granting Defendant's Motion for Protective Order to Quash the Deposition Notice to Admiral Samuel J. Paparo