```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF HAWAII
```

| | |
|---|---|
| PATRICK FEINDT, JR., Individually and as next of Fried to his minor children P.G.F. and P.R.F., ET AL., | Case No. 22-CV-00397LEK-KJM<br>September 19, 2023<br>10:05 a.m. |
| Plaintiff, | |
| vs. | U.S. District Court<br>300 Ala Moana Boulevard |
| THE UNITED STATES OF AMERICA, | Honolulu, HI 96850 |
| Defendant. | |

TRANSCRIPT OF UNITED STATES' PARTIAL MOTION TO STRIKE PLAINTIFFS'
EXPERT DISCLOSURES
BEFORE THE HONORABLE KENNETH J. MANSFIELD
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Feindt Plaintiffs: | Kristina Baehr, Esq.<br>Mary M. Neusel, Esq.<br>Just Well Law, PLLC<br>2606 W. 8th Street, Unit 2<br>Austin, TX  78702 |
| For the Feindt Plaintiffs: | Lyle S. Hosoda, Esq.<br>Hosoda Law Group<br>Three Waterfront Plaza, Suite 499<br>500 Ala Moana Boulevard<br>Honolulu, HI  96813 |
| For the Defendant: | Caroline Stanton, Esq.<br>Department of Justice<br>Civil Division<br>175 N Street NE<br>11.123CON<br>Washington, D.C.  20002 |

APPEARANCES: (Continued)

| | |
|---|---|
| For Defendant: | Harry Yee, Esq.<br>U.S. Attorney's Office<br>300 Ala Moana Boulevard, #6100<br>Honolulu, HI  96850 |
| Transcription Service: | Jessica B. Cahill, CER/CET-708<br>Maukele Transcribers, LLC<br>467 Maukele Place<br>Wailuku, Maui, HI  96793<br>Telephone: (808)244-0776 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
 1   SEPTEMBER 19, 2023                                    10:05 A.M.
 2           THE CLERK:  All rise.  The United States District Court
 3   for the District of Hawaii with the Honorable Kenneth J.
 4   Mansfield, United States Magistrate presiding is now in session.
 5   The gallery may be seated.
 6           Civil number, 22-00397LEK-KJM Patrick Feindt, Jr., et
 7   al. v. United States of America.  This hearing has been called on
 8   the United States' motion -- United States' partial motion to
 9   strike Plaintiffs' expert disclosures.
10           Counsel, please make your appearances for the record,
11   starting with the Plaintiff.
12           MR. HOSODA:  Good morning, Honor.  Lyle Hosoda.  This
13   is Kristina Baehr, whom you have met before, and Maggie Neusel
14   appearing on behalf of the Plaintiffs.  May the record also
15   reflect the presence of Major Amanda Feindt and many of our other
16   clients.
17           THE COURT:  All right.  Good morning to all of you, and
18   welcome, everybody.
19           MS. STANTON:  Good morning, Your Honor.  Caroline
20   Stanton for the United States, joined by Harry Yee from the
21   United States Attorney's Office.
22           THE COURT:  Okay.  Good morning to you as well.
23   Everyone can be seated.  Thank you.  I have reviewed the papers
24   carefully.  It's the Government's motion.  Go ahead.
25           MS. STANTON:  Good morning, Your Honor.  This dispute
```

1  is relatively straightforward.  Plaintiffs have filed five
2  different versions of their complaint.  In March 2023, they
3  sought leave to amend, in their words, to clarify which
4  Plaintiffs assert medical negligence claims. The resulting third
5  amended complaint and the fourth amended complaint, which is now
6  the operative complaint, both contained enumerated lists of
7  Plaintiffs asserting medical negligence.  Plaintiff Patrick
8  Feindt, Jr., and his minor children were not included in that
9  list.  The United States litigated the claims on the basis of
10 that plain language.
11         Plaintiffs don't dispute that the Feindts are not
12 included in paragraph 501.  Instead, they argue that the factual
13 allegations that the Feindts presented for testing and did not
14 receive it give rise to a medical negligence claim.  But those
15 same factual allegations are made on behalf of 42 other
16 Plaintiffs, that Plaintiffs do not assert medical negligence
17 claim on behalf of.
18         The United States position is that the complaint did
19 not plead medical negligence on behalf of the Feindts.  If the
20 Feindts wish to plead medical negligence, they should seek leave
21 to amend the complaint and a commensurate extension of the case
22 schedule.
23         THE COURT:  Let me ask you at least one question.  The
24 Government has known about this issue since, I think, at least
25 July 24th, when it received that expert report.  Is that

```
 1   accurate?
 2             MS. STANTON:  That's accurate, Your Honor.
 3             THE COURT:  What, if anything, has the Government done
 4   to -- other than this motion, to put itself in a position to
 5   obtain its own expert report since then?
 6             MS. STANTON:  So the United States has worked to
 7   identify an expert who could respond to the emergency room
 8   standard of care.  As you know, the process for the Government to
 9   retain outside experts is a cumbersome contracting process.  But
10   we have recently completed it, and we have retained an expert for
11   the ER standard of care.
12             However, one of the issues is that Dr. Keifer's report
13   addresses two emergency room visits.  Major Feindt's deposition
14   testimony said they're asserting medical negligence over every
15   visit from December through May, which would encompass a variety
16   of providers and a variety of specialties with differing
17   standards of care.
18             So we have obtained an expert.  We are beginning -- but
19   we do not have the discovery we would need to provide that
20   expert.
21             THE COURT:  So let me drill down on that.  Do you have
22   all of the Feindts medical records from the treating physicians
23   at least referenced in the report?  I think I counted four maybe
24   -- it was four or five treating physicians identified.
25             MS. STANTON:  Yes, we have those.
```

1       THE COURT:  Okay.  Have you deposed those physicians?

2       MS. STANTON:  So those physicians are Government

3  employees, so we haven't deposed them.  We have begun the process

4  of interviewing them.

5       THE COURT:  Okay.

6       MS. STANTON:  They're all current practicing medical

7  providers, and so obtaining time on their schedules has been

8  difficult.  But we have prioritized them and have interviewed at

9  least some of them.

10      THE COURT:  So aside from scheduling, they're sort of

11 at your disposal to interview them, ask them why they did what

12 they did, why they didn't do what Plaintiffs said they should

13 have done, and provide all that information to your own expert,

14 right?

15      MS. STANTON:  Yes.

16      THE COURT:  Okay.  I don't have any other questions.

17      MS. STANTON:  Thank you, Your Honor.

18      MS. BAEHR:  Your Honor, this is a very familiar story.

19 Mandy Feindt went to the emergency room, and she was given the

20 standard of care that the Army has for jet fuel exposure.  She

21 was given the labs, she was given all the testing, she was given

22 an EKG, and she was advised of the risks.

23      Palmer Feindt, who was also here this morning, received

24 none of that.  Her mom asked for basic labs and she was denied.

25 She was given an Otter Pop and told it's in and out of your body.

```
 1   It'll be out in 48 hours.  You're going to be fine.  Two years
 2   later, thousands of people are still sick.
 3           So that has been the premise of our case since the very
 4   beginning.  The Government poisoned the water, but then when
 5   people came to get medical care, they didn't receive the care
 6   that they needed.  Patrick Feindt asserted that in the SF95,
 7   first complaint, amended complaint, third amended complaint,
 8   fourth amended complaint.  The exact same paragraph that's in
 9   there now about how Mandy received the standard of care, Major
10   Feindt and the rest of them did not.
11           THE COURT:  So I agree with you on the factual
12   allegation.
13           MS. BAEHR:  Yes.
14           THE COURT:  But the cause of action has changed over
15   the course of the five versions of the complaint, right?
16           MS. BAEHR:  That's true.
17           THE COURT:  It's changed materially.
18           MS. BAEHR:  That's true.  And, you know, paragraph 501,
19   mea culpa, Your Honor, it should absolutely have the Feindts name
20   in it.
21           THE COURT:  So why haven't you tried to fix it?  That's
22   what I can't grasp.
23           MS. BAEHR:  So --
24           THE COURT:  You've known about this for a long time.
25   By my calculation, when the Government filed this motion to
```

1  dismiss is the latest you should have known of this.  That was
2  June 27th?
3           MS. BAEHR:  That's true.  So --
4           THE COURT:  And you've done -- you haven't tried to fix
5  it.  It's almost three months.
6           MS. BAEHR:  So in May -- and that's when we filed our
7  third amended complaint.  We filed it in May and that same week,
8  and I say this under Rule 408(b), not 48(b) because the question
9  is about undue delay, we sent the Government a demand that
10 included the Feindts medical negligence claim.  We've been
11 litigating this claim all along.
12          THE COURT:  But the pleadings control, not a settlement
13 demand.
14          MS. BAEHR:  No, that's true.
15          THE COURT:  Not a prior version of a complaint, not an
16 administrative claim.  The most current pleading controls, and I
17 know you know that.
18          MS. BAEHR:  I do know that.  And there was a motion to
19 dismiss that's on file, and we're responding to that motion to
20 dismiss, and it hasn't been due yet.  So I agree, we absolutely
21 should have filed a motion to amend.  This particular issue
22 wasn't at the forefront because we were -- both parties were
23 litigating it.  We had depositions, and there were other issues
24 in the motion to dismiss that we were also litigating.
25          So, Your Honor, I admit that that is a mistake.  We

1   should have moved to -- we should have moved to amend earlier.
2   We were waiting to respond to the motion dismiss, and we
3   shouldn't have waited.  We were litigating the claims --
4           THE COURT:  On the diligence inquiry, right.  You made
5   a strategic litigation decision to not show your cards until you
6   had to.  So you had to a little bit with this opp, and you're
7   going to have to opposing the motion to dismiss, but otherwise
8   you still haven't moved to amend.  You ask me in the opp, but
9   that's not proper.  If you want a court to do something, you file
10  a motion.  You haven't done that.
11          MS. BAEHR:  We have not -- you're right.  We filed a
12  cross motion, and we can file a corrected --
13          THE COURT:  It's a cross motion?  Did I misread it?
14          MS. BAEHR:  Well, I think it's an opposition and
15  motion, but we should file a separate pleading, you're right, and
16  that's true we should absolutely file a motion.
17          You know, this is -- we really didn't -- and I don't
18  believe them when they say that they were surprised because we've
19  litigated this all along.  When I deposed the Feindts and I
20  deposed -- I'm sorry, when I deposed Dr. Oh -- and I deposed four
21  Government doctors, and every one of them we asked about the
22  standard of care.
23          What is interesting --
24          THE COURT:  That was the treating physicians, right?
25          MS. BAEHR:  I'm sorry.  I didn't depose the treating

1    physicians.

2            THE COURT:  So to me, that would be more consistent
3    with I'm pursuing a medical negligence claim, and I'm going to
4    depose each of these doctors who treated the family and find out
5    why they did what they did and why they didn't do what our expert
6    thinks they should have done.  You didn't do that.

7            MS. BAEHR:  We didn't depose the treating physicians
8    for the Feindt family.  What we were getting at with the treating
9    -- with the physicians like Dr. Oh, who's the head of the
10   Environmental Division for the Defense Health Agency, what we
11   were getting at with him is what is the standard of care when
12   someone comes to an emergency room?

13           THE COURT:  Sure.

14           MS. BAEHR:  And, you know, that question -- so there's
15   a dispute about whether the Feindts were asserting this
16   particular breach, but there's no dispute that on behalf of
17   thousands of people, we were claiming that the emergency room
18   response was insufficient.  That's not a dispute.

19           So I'm surprised that they didn't have an expert to
20   address that issue.  You know, they said, for example, that there
21   are lots of other people in the complaint who have that
22   allegation.  So --

23           THE COURT:  Right.  How do you respond?  So they're
24   saying the argument you're making for the Feindts, look at
25   paragraph 89.  Forget about 501 and 502.  Eighty-nine is enough.

1    You have similar paragraphs for other families that are not
2    listed in 501.  So how do you respond to their argument?  Are
3    they asserting med mal claims or not?
4            MS. BAEHR:  So I saw that argument for the first time
5    in their reply, and I went back and I dug deep as to that
6    paragraph.  And what I found was the clerical error came from we
7    had those allegations in the complaint about the people who went
8    and asked for labs and were denied.  We had that paragraph for
9    many, many people.  Those were actually the people that the
10   Government was not moving to dismiss for.
11           So when the Government filed their motion dismiss, they
12   did not move to dismiss those people because in their view, my
13   understanding, is that they believed that those were actually
14   properly pled.  They were dismissing for everybody -- for the
15   other people who didn't have that paragraph in the complaint.
16   And so that's where that paragraph came from.  So when we --
17           THE COURT:  So to answer my question, are all the other
18   families who are -- who have factual allegations supporting a
19   medical negligence claim but don't appear in paragraph 501, are
20   they asserting claims or not?
21           MS. BAEHR:  They are asserting claims, and that
22   paragraph will be corrected for the non-bellwether families.
23           THE COURT:  So there's more than this one mistake?
24           MS. BAEHR:  That's right.
25           THE COURT:  How many are there?

1              MS. BAEHR:  I don't have the answer to that off the top
2     of my head.  They're not bellwethers.  For the bellwether family
3     -- you know, the bellwether process, in our view, is about giving
4     an example.  And we gave the Feindts as an example because Major
5     Feindt got the care, her kids did not.  And that's why we chose
6     them to give this particular exemplar.  But the other ones are
7     not at issue in this particular discovery.
8              THE COURT:  How about the Jessup family, for whom I
9     understand there is not an expert report?
10             MS. BAEHR:  That's right.  So the Jessups are not named
11    Plaintiffs in the complaint, so there wasn't a big description of
12    them.  They are not asserting medical negligence claims.
13             THE COURT:  Have you told the Government that?
14             MS. BAEHR:  Yes.
15             THE COURT:  Okay.  Because I had understood, at least
16    from the briefing, that the Jessup family was pursuing a medical
17    negligence claim.
18             MS. BAEHR:  The Jessup family is not pursuing medical
19    negligence claims.
20             THE COURT:  Are they named in 501?  I don't have it in
21    front of me.
22             MS. BAEHR:  They are named in 501 as asserting --
23             THE COURT:  A medical negligence claim.
24             MS. BAEHR:  -- a medical negligence claim.
25             THE COURT:  But now you're telling us they're not?

1           MS. BAEHR:  I'm saying that when we narrowed the claims
2  with Dr. Keifer, we chose the Feindt family for the bellwether
3  Plaintiffs to be represented for medical negligence.
4           THE COURT:  And how did you tell the Government that
5  you were no longer asserting a medical negligence?
6           MS. BAEHR:  When they raised the issue about Dr.
7  Keifer, we said the Feindt family are the ones who are pursuing
8  medical negligence for purposes of the Bellwether families.  But
9  I think the question before the Court is, I recognize this is an
10 error, I own that.  So now what?
11          And I have been very accommodating to say, what
12 discovery do you need?  Do you need more time for your expert
13 report?  We can give you that.  However much time you need.
14 Forty-five days?  You're welcome to it.  That's what I suggested.
15 Do you need another deposition?  They said, no, we have access to
16 these Government doctors.  How about interrogatories?  We'll
17 answer any interrogatories you want.  No, they don't need that.
18          And so I can't get to the bottom of what exactly they
19 do need that would require a three month trial delay.  I don't
20 think that there's anything that would need us to reopen the
21 discovery in this case.  I wouldn't -- you know, there is -- if
22 we reopen the discovery in this case, then I would be asking the
23 court for additional --
24          THE COURT:  I'm sure you would.
25          MS. BAEHR:  -- additional discovery, because we limited

1  our discovery.
2           THE COURT: I recall that.
3           MS. BAEHR: And there's much more to discover. You
4  know, we filed a motion a day. They deleted the cell phones of
5  two of the major players. There's much more discovery that we
6  could have taken. And we made a decision, and my clients made a
7  decision on behalf of not only themselves, but the broader
8  community -- we had an event this week with Sierra Club and Oahu
9  Water Protectors, and this case is about a broader community that
10 needs justice soon.
11          If it were just any other case, sure, three more months
12 would be fine, but this is a whole community that's waiting with
13 bated breath, and we have that trial date. And if there's
14 anything else, any other accommodation that can be made to
15 correct this error, we're happy to make it.
16          THE COURT: And it would have been much easier if you
17 had raised this issue when you first learned of it. This would
18 have been easier to fix in late June than it is now.
19          MS. BAEHR: Yes, I agree with that.
20          THE COURT: Okay. Thank you.
21          MS. BAEHR: Thank you.
22          MS. STANTON: Your Honor, may I respond?
23          THE COURT: Yes.
24          MS. STANTON: Thank you. Just with regard to a couple
25 of points counsel raised, particularly, paragraph 501. The 42

```
 1   Plaintiffs that are not listed in 501, that counsel now says are
 2   asserting a medical negligence claim that includes two more
 3   bellwether families, the Freemans and the Witts.  And today is
 4   the first we have heard that they are, in fact, asserting medical
 5   negligence claims.
 6               THE COURT:  Which families are those?
 7               MS. STANTON:  The Freemans and Elizabeth Witt.
 8               THE COURT:  Okay.
 9               MS. STANTON:  Today is also the first we have heard
10   that the Jessups are no longer pursuing their medical negligence
11   claim.
12               THE COURT:  So counsel just told me she or someone on
13   her team told the Government during a meet and confer.
14               MS. STANTON:  So Ms. Baehr was not on the meet and
15   confer regarding this.  Counsel I spoke with said that -- he
16   clarified that Dr. Keifer was not opining on behalf of the
17   Jessups, but the Jessups were, in fact, asserting a medical
18   negligence claim.
19               With regard to accommodations, the United States agrees
20   that we need interrogatories, requests for admissions, time to
21   speak to our providers.  The problem is that moving one deadline,
22   moving the deadline to respond to Mr. Keifer doesn't afford --
23   it's not clear how the rest of that would work.  We are happy to
24   discuss alternatives and ways to work it but making the
25   dispositive motion deadline due six days after Dr. Keifer's
```

```
 1   report would be due is inefficient for the Court or any of the
 2   parties.
 3           And then lastly, with regard to counsel's aside
 4   regarding the motion she filed this morning, it was just filed.
 5           THE COURT:  I haven't read of it.  I'm not aware of it.
 6           MS. STANTON:  Yeah.  We haven't read it.
 7           THE COURT:  I'm not asking for any comment on it.
 8           MS. STANTON:  So that's it.  But otherwise, thank you,
 9   Your Honor.
10           THE COURT:  Okay.  Thank you.  We'll get a written
11   order out as quickly as we can.
12           My strong suggestion is that, counsel, you have the
13   room, you guys have a realistic discussion about the state of
14   your complaint.  It seems like, at a minimum, we're moving on to
15   number six, if 501 is as jumbled as I'm hearing it is, and a
16   realistic discussion about the schedule.
17           So I'm going to rule on the motion before me.  I'm not
18   ruling on anything else, but I think you folks need to have a
19   sensible discussion about all of that.  All right.  Thank you.
20           MS. BAEHR:  Your Honor, can I just answer -- can I just
21   clarify the claims that we are asserting?
22           THE COURT:  Sure.
23           MS. BAEHR:  So the Freemans and the Jessups are not
24   asserting medical negligence claims. So for the Bellwether
25   Plaintiffs, we have chosen to assert the claims only for the
```

```
 1   Feindt family --
 2           THE COURT:  Okay.
 3           MS. BAEHR:  -- and no other bellwethers are at issue.
 4   So as this case moves towards trial, the only medical negligence
 5   claims are the Feindt family's emergency claims.
 6           THE COURT:  And whatever this is, it shouldn't be
 7   happening in meet and confers.  It shouldn't be happening in sur-
 8   rebuttal at a hearing.  It should be a stipulation.  It should be
 9   your sixth complaint.  It should be something.  But you should be
10   precise about this.  Absolutely precise about it.  There should
11   be no misunderstanding.  That's my only thought.  Thank you.
12           MS. BAEHR:  Thank you.
13           MS. STANTON:  Thank you, Your Honor.
14           MR. YEE:  Thank you, Your Honor.
15           THE CLERK:  All rise.  Court stands adjourned.
16      (Proceedings concluded at 10:23 a.m.)
17
18
19
20
21
22
23
24
25
```

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: September 22, 2023

_____
Jessica B. Cahill, CER/CET-708