IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., individually and as Next Friend to his minor children P.G.F. and P.R.F., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil No. 22-00397 LEK-KJM <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR DISCOVERY SPOLIATION SANCTIONS |

ORDER DENYING PLAINTIFFS' MOTION FOR
<u>DISCOVERY SPOLIATION SANCTIONS</u>

Plaintiffs[1] filed a Motion for Discovery Spoliation Sanctions ("Motion") on September 19, 2023.  ECF No. 171.  Plaintiffs seek sanctions for lost text messages from two Navy officials involved in the response to the fuel leaks at the Red Hill Bulk Fuel Storage Facility.  Defendant United States of America (the "Government") filed an Opposition to the Motion ("Opposition") on October 19, 2023.  ECF No. 186.  Plaintiffs filed a Reply on October 26, 2023.  ECF No. 191.

Plaintiffs requested leave to file additional exhibits in support of the Motion on November 9, 2023, ECF No. 194, which the Court granted on November 13,

---

[1] There are 296 Plaintiffs alleging claims in the Fifth Amended Complaint, ECF No. 210-1, but only some are proceeding to trial at this time in the bellwether-trial process, ECF No. 192 at 6–7.

2023, ECF No. 195.  Plaintiffs filed the additional exhibits to the Motion on November 16, 2023.  ECF No. 196.  The Government responded to the additional exhibits on November 20, 2023.  ECF No. 197.

The Court held a hearing on the Motion on November 13, 2023.  Lyle S. Hosoda, Esq., Kristina S. Baehr, Esq., and James Baehr, Esq., appeared for Plaintiffs.  Rosemary C. Yogiaveetil, Esq., and Dana Barbata, Esq., appeared for the Government.

After careful consideration of the Motion, supporting and opposing memoranda, applicable law, record in this case, and arguments of counsel, the Court DENIES the Motion for the reasons set forth below.

BACKGROUND

The parties and the Court are familiar with the facts and issues in this case. The Court will therefore only recite those relevant to this Motion.

This case arises out of the May 6 and November 20, 2021 fuel leaks from the Red Hill Bulk Fuel Storage Facility on Joint Base Pearl Harbor-Hickam.  *See* Fifth Amended Complaint, ECF No. 210 at 21 ¶ 4.  The Government allegedly failed to warn and timely disclose the leaks to affected parties, including the Plaintiffs, who claim that they suffered various adverse physical and mental health issues as a result of exposure to water contaminated from the fuel leaks.  *Id*.

Nine months after the November 2021 fuel leak, in August of 2022, Plaintiffs commenced this litigation.  ECF No. 1.  The parties subsequently agreed that the bellwether-trial process was the most efficient, fair, and practical method for litigating Plaintiffs' claims.  *See* ECF No. 51 at 4 ¶ 6(a).

A bench trial for the bellwether plaintiffs is currently set for April 22, 2024, before District Judge Leslie E. Kobayashi.  ECF No. 192 at 5 ¶ 1.  The parties have proceeded to conduct discovery in preparation for trial.

## A.   Discovery in the Bellwether-Trial Process

Discovery during the bellwether process has included full discovery from the bellwether plaintiffs.  ECF No. 51 at 5 ¶ 6(d).  All other plaintiffs were subject to limited discovery.  *Id.*  Discovery has also included limited discovery from the Government, ECF No. 119, including but not limited to producing relevant documents from five Government custodians, ECF No. 186-2.

Plaintiffs identified Navy Captains Erik Spitzer and James "Gordie" Meyer as two of the five custodians subject to document discovery.  *Id.*  The lost text messages at issue in the Motion are those from Captain Spitzer's and Captain Meyer's government issued command cellular phones.

## B.   Captain Spitzer

Captain Spitzer was the Joint Base Commander of Joint Base Pearl Harbor Hickam from the summer of 2020, until June 14, 2022.  ECF No. 186 at 7.  His

3

command was Command Navy Region Hawaii.  He often received information

from his chief of staff, Captain Darren Guenther.  Spitzer Dep., ECF No. 186-3 at

11:7-21.  Captain Spitzer emailed residents on November 29, 2021, in the first

public messaging regarding the fuel spills, and assured residents that there were no

immediate indications that the water was unsafe to drink.  ECF No. 171-1 at 8;

ECF No. 171-5 at 5 (Captain Spitzer's email sent on November 29, 2021).

On The Government admits that the cellular phone assigned to Captain Spitzer

was reset twice: first, in early 2022, when the device was transitioning to the

Navy's mandatory Flank Speed Mobile Device Management Software ("Flank

Speed"); and second, in June 2022, when the device was reassigned from Captain

Spitzer to his successor.  ECF No. 186 at 8.  The Government also admits that

during each reset, any prior voicemails and text messages stored on Captain

Spitzer's cellular phone were lost.  *Id.*  Although the Government's litigation hold

was issued in May 2022, the phone was inadvertently reset the following month

pursuant to standard Navy practice upon reassignment.  *Id.*; *see also* Declaration of

Donald Parris, ECF No. 186-6 at 3 ¶ 7.

On or about July 19, 2023, the Government informed Plaintiffs of the lost

cellular phone evidence.  ECF No. 171-10.  The parties do not dispute that the

Government produced all other documents in Captain Spitzer's possession,

custody, or control.  ECF No. 186 at 7 (explaining that the Government has

4

produced more than 4,600 responsive documents from Captain Spitzer) (citing ECF No. 171-10)).

## C.   Captain Meyer

Captain Meyer was the Commanding Officer of Naval Facilities Engineering Systems Command Hawaii from 2020 through June 16, 2022.  ECF No. 186 at 8. Captain Meyer often received communications from those under him.

According to sworn testimony from water distribution system supervisor, Joseph Nehl, Captain Meyer visited the fuel storage tanks on November 28, 2021. Nehl Dep., ECF No. 171-4 at 16:7-8.  According to Mr. Nehl, they discussed the complaints of the smell of fuel in the water that day.  Nehl Dep., *id.*, at 16:5-24. Mr. Nehl also testified that on that same day, Captain Meyer stated, "[w]e need to let the people know" about the water contamination.  Nehl Dep., *id.*, at 17:23-25.

As part of the Navy's investigation into the Red Hill spills, Captain Meyer collected key text messages from his command phone related to the November 2021 spill.  ECF No. 186 at 9; ECF No. 171-8 (Captain Meyer's text messages). Those messages were produced to Plaintiffs during discovery.  ECF No. 186 at 9.

After Captain Meyer provided the key text messages as part of the Navy's investigation into the fuel spill, Captain Meyer's phone experienced technical difficulties while interfacing with Flank Speed in the spring of 2022.  ECF No. 186 at 9.  To recover and continue using the device, Captain Meyer was forced to

perform a "hard reset," which restored functionality but inadvertently resulted in the loss of his voicemails and text messages.  *Id.*

On or about August 11, 2023, the Government informed Plaintiffs of the lost cellular phone evidence.  ECF No. 171-7 (letter from the Government to Plaintiffs dated August 11, 2023).  The parties do not dispute that the Government produced all other documents in Captain Meyer's possession, custody, or control.  ECF No. 186 at 9 (explaining that the Government has produced more than 5,000 responsive documents from Captain Spitzer) (citing ECF No. 171-7)).

### D.    Motion for Discovery Spoliation Sanctions

After finding out about the lost evidence, Plaintiffs filed this Motion for spoliation sanctions on September 19, 2023.  ECF No. 171.  The Motion alleges that the Government failed to preserve and destroyed messages from Captain Spitzer's and Captain Meyer's command cellular phones before this litigation commenced.  *See generally id.*  Plaintiffs claim they are prejudiced because the lost messages harm their ability to demonstrate the Government's knowledge of the water contamination as early as November 28, 2021.  ECF No. 171-1 at 17–18.  Plaintiffs' Motion thus seeks sanctions against the Government in the form of "a mandatory adverse inference that constitutes a finding of fact that the Government knew of the water contamination by the afternoon of November 28, 2021, but failed to warn [Plaintiffs.]"  ECF No. 171-1 at 19–20.

For the reasons discussed below, the Court DENIES the Motion.

DISCUSSION

Federal Rule of Civil Procedure 37(e) governs Plaintiffs' request for sanctions pertaining to electronically stored information ("ESI") such as text messages. Rule 37(e) was adopted in 2006 and amended in 2015 to address the "continued exponential growth" of ESI. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The current version of Rule 37(e) "'specifies measures a court may employ if [electronically stored] information that should have been preserved is lost' – including terminating sanctions – 'and specifies the findings necessary to justify these measures.'" *Newberry v. Cnty. of San Bernardino,* 750 F. App'x 534, 537 (9th Cir. 2018) (brackets in original) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).

Under Rule 37(e), a district court may issue sanctions when ESI that (i) "should have been preserved in the anticipation or conduct of litigation[,]" (ii) "is lost because a party failed to take reasonable steps to preserve it," and (iii) the information "cannot be restored or replaced through additional discovery." *Winecup Gamble, Inc. v. Gordon Ranch LP*, 850 F. App'x 573, 574 (9th Cir. 2021) (quoting Fed. R. Civ. P. 37(e)) (quotation marks altered and brackets omitted). The Court may impose sanctions only if all three criteria are met. *Id.*

7

Courts in the Ninth Circuit have indicated that a preponderance of the evidence standard of proof is applicable to spoliation sanctions.  *See, e.g.*, *Lopez v. Cardenas Markets, LLC*, No. 221CV01915JCMBNW, 2023 WL 3182658, at *2 (D. Nev. May 1, 2023); *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022); *Spencer v. Lunada Bay Boys*, 2017 WL 10518023, at *5 (C.D. Cal. Dec. 13, 2017), *adopted by,* 2018 WL 839862 (C.D. Cal. Feb. 12, 2018), *aff'd* 806 F. App'x 564 (9th Cir. 2020); *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017).

"Under the preponderance of the evidence standard, the relevant facts must be shown to be more likely true than not."  *United States v. Montano*, 250 F.3d 709, 713 (9th Cir. 2001) (quotation marks and citations omitted).

Plaintiffs contend that all text messages from Captain Spitzer's and Captain Meyer's command cellular phones should have been preserved in anticipation of litigation.  ECF No. 171-1 at 15–16.  The Court has identified three categories of text messages that Plaintiffs generally allege are lost: 1) text messages sent between the Captains; 2) text messages sent among the Captains and known third parties; and 3) text messages sent among the Captains and unknown third parties. The Court will discuss each of these categories below.

### A.   Text Messages Among the Captains and Known Third Parties

Plaintiffs make the general allegation that all of the text messages from
Captain Spitzer's and Captain Meyer's phones are lost.  *See* ECF No. 191 at 10
("For all practical purposes, the data is unavailable from other sources.").  At oral
argument, however, Plaintiffs acknowledged that the Government recovered some
text messages through alternate custodians.  These were the text messages sent
among the Captains and known third parties.  Because the text messages among
the Captains and known third parties can be reproduced, the issue that arises is
whether the recoverable messages are lost within the meaning of Rule 37(e) and
whether Rule 37(e) sanctions are available.

Rule 37(e) applies only when there is an actual loss of ESI.  Fed. R. Civ. P.
37(e) advisory committee's note to 2015 amendment.  "Information is 'lost' for
purposes of Rule 37(e) only if it is irretrievable from another source, including
other custodians."  *Envy Hawaii LLC v. Volvo Car USA LLC*, No. CV 17-00040
HG-RT, 2019 WL 1292288, at *2 (D. Haw. Mar. 20, 2019) (citation omitted).
Unlike tangible evidence, ESI often exists in multiple places and therefore "loss
from one source may often be harmless when substitute information can be found
elsewhere."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.
"For example, Rule 37 sanctions are not available when e-mails are lost because
one custodian deletes them, but they remain available in the records of another

custodian.  Logically, the same principle holds true for text messages." *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 235 (D. Minn. 2019) (quotation marks and citation omitted).

Here, although the text messages may not be available from the Captains, they are available from other custodians who were the recipients of the text messages.  Plaintiffs do not dispute that the Captains identified who they texted with during their oral depositions.  ECF No. 191 at 10.  The Government has been working to produce relevant communications from these alternate custodians, such as Captain Darrel Frame, Captain Randall Harmeyer, and Captain Darren Guenther.  ECF No. 186 at 17–18.  Plaintiffs have also filed some of the recovered text messages in support of this Motion.  ECF No. 196.

Because Captain Spitzer's and Captain Meyer's text communications with third parties are clearly recoverable from alternate sources, there is no actual loss of ESI.  Rule 37(e) therefore does not apply for the text messages between the Captains and known third parties, and spoliation sanctions under Rule 37(e) are not available in relation to this category of text messages.  *See Envy Hawaii LLC*, 2019 WL 1292288, at *2 ("Spoliation sanctions are not available pursuant to the 2015 Amendment to Rule 37(e) when information is not lost."); *see also Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 2017 WL 1214424, at *2 (D.D.C. Mar. 30, 2017) (finding e-mails were lost only if not turned over to movant by a third

party); *Living Color Enters., Inc. v. New Era Aquaculture, Ltd*., 2016 WL 1105297, *5 (S.D. Fla. Mar. 22, 2016) (text messages provided to movant by another party were not "lost" for purposes of Rule 37(e)); *CAT3, LLC v. Black Lineage, Inc*., 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) ("[R]elief would not be available under the amended rule[, Rule 37(e),] where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian.").

## B.   Text Messages Between the Captains and Text Messages Among the Captains and Unknown Parties

Unlike the category of text messages discussed above, the issues of whether Rule 37(e) applies to the text messages sent (i) between the Captains, and (ii) among the Captains and unknown parties, and whether Rule 37(e) sanctions are available for these categories of messages, are not so straightforward.

### 1.   Threshold Requirements

Plaintiffs argue that the Government's deletion of the Captains' texts satisfies the threshold requirements for sanctions.  ECF No. 171-1 at 15–17. Plaintiffs contend that the Captains' cellular phones should have been preserved in anticipation of litigation, *id*. at 15–16, that the ESI is lost because the Government failed to take reasonable steps to preserve the ESI, *id*. at 16, and that the evidence cannot be restored, *id*. at 16–17.

The Government is silent as to the first criterion, and the parties appear to agree as to the third—that the evidence cannot be restored.  The main dispute between the parties with respect to Rule 37(e)'s threshold requirements is thus, the second criterion, whether the Government did indeed take reasonable steps to preserve all potentially relevant text messages.  The Court is inclined to agree with the Government that its preservation steps were not unreasonable.

The Court acknowledges that, on one hand, the text messages at issue were for two high ranking officials involved in the Government's response to the Red Hill fuel spills.  These were two key Navy leaders leading the Government's response, and the Government should have done more to make sure that their phone communications were preserved.  Given the severity of the Red Hill fuel spills, the Government should have anticipated pending litigation and could have planned to back up the cellular phones prior to the Flank Speed software transition, even if it was just a partial back up.  The Government's attorneys could have done more to ensure strict compliance with the litigation hold.  *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (explaining that implementation of a litigation hold is "only the beginning" and "[c]ounsel must oversee compliance with the litigation hold[]").

On the other hand, it is easy to point out the Government's failures when viewing this discovery dispute in a vacuum and with the benefit of hindsight.  It is

important to recognize, however, that Rule 37(e) only applies when ESI that *should have been preserved* in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Many court decisions hold that potential litigants have a duty to preserve *relevant* information when litigation is reasonably foreseeable," and that the duty arises from the common-law duty; "it does not attempt to create a new duty to preserve." (emphasis added)). Accordingly, the Court must examine the scope of the Government's duty to preserve the allegedly spoliated evidence when considering the reasonableness of the Government's preservation efforts.  *See* Fed. R. Civ. P. 26(b)(1) (providing the scope of discovery which includes, among other things, "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *see also Fast*, 340 F.R.D. at 334 ("Spoliation arises from the failure to preserve relevant evidence once a duty to preserve has been triggered." (citation omitted)).

Here, the Court recognizes that because the ESI at issue no longer exists, the Government cannot assert any presumption of irrelevance as to the lost text messages, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); however, there is sufficient evidence in the record to support the Government's contention that the phones contained a limited amount of relevant text messages, ECF No. 186

at 7–9, and thus, the Government took reasonable steps to preserve the limited amount of relevant text messages on the Captains' cellular phones.

First, both Captains testified during their depositions that they were not prolific texters. Captain Meyer testified that he is "not a large text message person." Meyer Dep., ECF No. 171-3 at 16:11-12. Captain Spitzer testified that he is "not a good texter, typer[.]" Spitzer Dep., ECF No. 186-3 at 12:6-7. To this end, Captain Spitzer testified that he would use his cellular phone to text people quick notifications. Spitzer Dep., *id.* at 8:4-7.

Captain Spitzer's sworn deposition testimony also reflects that he rarely used his cellular phone for substantive communications, relying primarily on email or phone calls. Spitzer Dep., *id.* at 19:8–20:6. Captain Spitzer testified that he texted primarily with only one individual, his chief of staff, Captain Darren Guenther. Spitzer Dep., *id.* at 11:7-21.

Second, the Captains denied that they frequently communicated with each other via text. Captain Spitzer testified under oath that he "seldom texted Captain Meyer." Spitzer Dep., *id.* at 15:5-6. When Captain Meyer was asked whether he texted with Captain Spitzer, Captain Meyer responded, "No, I have not. The only caveat I give on that is he may have been in a larger text chain that I wasn't specifically tracking." Meyer Dep., ECF No. 171-3 at 18:7-12. This testimony is, to some extent, corroborated by the fact that the text messages from Captain Meyer

14

collected during the Navy's investigation, ECF No. 171-8, do not contain any text messages sent directly between the Captains.

Third, the Captains' sworn testimony that they hardly communicated via text is credible because they often saw each other in person at various times in the day and communicated in person.  Captain Spitzer explained during his deposition that he "personally saw Captain Meyer usually more than once a day in person at various touch points and venues."  Spitzer Dep., ECF No. 186-3 at 15:19-22.  Captain Spitzer further explained that any discussions would usually take place in person: "So at that time, anything that we discussed on any matter did not require a text or a phone call.  It was in person."  Spitzer Dep., *id.* at 15:22-16:2.

Fourth, as the Government pointed out during oral argument, the Captains were the commanding officers of different commands, and communicated primarily with members of their own commands.  The Government maintains that there would be little reason for the Captains to text extensively with members outside of their own command.  *See* ECF No. 197 at 5.

The additional exhibits submitted by Plaintiffs in support of the Motion, ECF No. 196, do not change the Court's analysis.  These additional exhibits contain text messages produced by the Government as curative discovery.  ECF No. 196.  Plaintiffs contend that these additional text messages "show that it is more likely that Spitzer and Meyer communicated together often and that

important text messages by either or both of them are missing irretrievably because the Government failed to preserve evidence as required." ECF No. 194 at 9. The Court disagrees.

The Court finds convincing the Government's arguments that the additional exhibits in ECF No. 196 align with the Captains' deposition testimony about their texting habits and do not support Plaintiffs' speculation that further text messages exist between the Captains. ECF No. 197 at 4–5.

Accordingly, even with all of the information produced in discovery thus far, such as computer files, emails, and text messages produced as curative discovery, Plaintiffs cannot identify any reason for this Court to believe that relevant text messages sent directly between the Captains and among the Captains and third parties, other than those already identified by the Captains, ever existed.

Rather, Plaintiffs' claims that relevant ESI existed on the Captains' phones are purely speculative. "Speculative assertions as to the existence of documents do not," however, "suffice to sustain a motion for spoliation of evidence." *Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 202 (S.D.N.Y. 2014) (quoting *Tri–County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp.2 d 161, 177 (E.D.N.Y. 2007) (other citation omitted)); *see also Weinstein v. Meritor, Inc.*, 845 F. App'x 686, 688 (9th Cir. 2021) (holding that the district court did not abuse its discretion in denying a motion for sanctions because the claim of spoliation was speculative); *Scalia v.*

*Cnty. of Kern*, 576 F. Supp. 3d 703, 716 (E.D. Cal. 2021) ("[A] party seeking

spoliation sanctions must do more than speculate evidence exists and must present

evidence to the Court that the evidence existed at one time." (citations omitted));

*c.f. Ryan v. Editions Ltd. W., Inc*., 786 F.3d 754, 766 (9th Cir. 2015) (affirming, in

a pre-2015 amendment decision, the district court's denial of a motion for

spoliation sanctions because the documents at issue were irrelevant, the moving

party obtained the documents from other sources, and the remaining claims of

spoliation were speculative).

Given the dearth of evidence that relevant texts ever existed, the Court is

hard pressed to find that the steps the Government took to preserve relevant ESI

were not reasonable. "Due to the ever-increasing volume of electronically stored

information and the multitude of devices that generate such information, perfection

in preserving all relevant electronically stored information is often impossible."

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Rule 37(e)

"recognizes that 'reasonable steps' to preserve suffice; it does not call for

perfection." *Id.*

The Government explains that as the Navy continued to investigate the 2021

Red Hill jet fuel spills, the litigation hold was distributed to 862 custodians and

both the Captains received and acknowledged the litigation hold. ECF No. 186 at

14–15. The Government contends that, consequently, the "United States

17

preserved, collected, and produced computer files and emails from [the Captains]." *Id*. at 15. The Government also describes the circumstances surrounding the loss of the Captains' messages, which included the loss of data because of an inadvertent reset due to a software migration (Flank Speed) that was necessary for the Captains to fulfill their duties and responsibilities as officers of the Navy. *Id*. at 15–16.

Based on this record, the Court cannot find that the Government failed to take reasonable steps to preserve the text messages. Any loss was inadvertent, and not as a result of any malfeasance. *See Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) ("Nothing in the record indicates that the government destroyed the records pertaining to the grenade in response to this litigation. Thus, its destruction of the records does not suggest that the records would have been threatening to the defense of the case, and it is therefore not relevant in an evidentiary sense."). Rule 37(e) calls only for "reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Government sent out litigation holds, collected relevant messages from certain custodians such as Captain Meyer, yet some information was inadvertently lost.

The Advisory Notes also urge courts to consider proportionality in evaluating the reasonableness of preservation efforts and to be "sensitive to party

resources" because "aggressive preservation efforts can be extremely costly, and parties (including governmental parties) may have limited staff and resources to devote to those efforts."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

As the Government's counsel explained during oral argument, preserving evidence from government issued cellular phones enrolled in Flank Speed requires shipping the phones to a contractor located on the mainland who takes images of every single screen with a specialized camera.  The Government asserts that this is not an easy process and is not feasible for officers like Captain Spitzer and Captain Meyer who were responding to an emergency such as the Red Hill spills.

Moreover, unlike the majority of cases cited by Plaintiffs in support of their contention that the Government should have done more, ECF No. 191 at 7–10, this case involves mass tort claims against a governmental entity with over 800 custodians that possibly possessed relevant information.  The Government's actions must be viewed in this context even though the dispute currently before the Court only pertains to lost evidence from two custodians.  There is no evidence that the Captains' phones contained relevant texts, not even circumstantial evidence.  Under these circumstances, the Court cannot find that the Government's preservation efforts with respect to the Captains' phones were unreasonable.

Notwithstanding the Court's reticence to conclude that the Government's preservation efforts were unreasonable, the significant reason why Plaintiffs are not entitled to the sanctions they seek is because there is no evidence that the Government acted with the intent to deprive Plaintiffs of the ESI's use.

2.   Sanctions

As a result of the lost text messages, Plaintiffs seek sanctions under Rule 37(e) in the form of a mandatory adverse inference, in the form of a finding of fact, that the Government knew of the water contamination at Red Hill by the afternoon of November 28, 2021, but failed to warn Plaintiffs. ECF No. 171-1 at 19–20. Plaintiffs contend that because the Captains' phones were wiped, this Court should presume the destroyed evidence went to the merits of this action, and that it was adverse to the Government. ECF No. 171-1 at 19 (citing *Botell v. United States*, No. 2:11-cv-1545 GEB GGH, 2013 U.S. Dist. LEXIS 38925, at *20–21 (E.D. Cal. Mar. 20, 2013)). The Court disagrees that it is obliged to make such a presumption. The case cited by Plaintiffs for this proposition, *Botell v. United States*, is not binding on this Court and is based on outdated case law given the 2015 amendments to Rule 37(e).

The Court's authority to issue sanctions under Rule 37(e) is not unfettered. There are two categories of sanctions under Rule 37(e): lesser sanctions under Rule 37(e)(1) and more severe sanctions, such as dismissal or an adverse evidentiary

20

presumption, under Rule 37(e)(2).  *Newberry,* 750 F. App'x at 537.  Courts can only award Rule 37(e)(1) sanctions "where the district court finds that the loss of information has prejudiced the moving party[.]"  *Id.*  Courts can only award Rule 37(e)(2) sanctions "where the district court finds that the offending party 'acted with the intent to deprive another party of the information's use in the litigation[.]'"  *Id.* (quoting Fed. R. Civ. P. 37(e)(2)).

Here, although Plaintiffs expressly mention Rule 37(e)(1) in their Motion, ECF No. 171-1 at 19, Plaintiffs appear to argue that the sanction of an adverse inference that they seek is warranted under either subdivision (e)(1) or (e)(2) because findings of prejudice and intent to deprive are justified under the circumstances, ECF No. 191 at 16–19.

As further discussed below, even if Plaintiffs could satisfy the three threshold requirements under Rule 37(e), the Court would still be precluded from issuing sanctions pursuant to Rule 37(e)(1) or Rule 37(e)(2).

a.     *Rule 37(e)(2) Sanctions*

Rule 37(e) explicitly requires that the Court find that a party acted with "intent to deprive another party of the information's use in the litigation" *before* it may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."  Fed. R. Civ. P.

21

37(e)(2). Adverse-inference jury instructions, in particular, are "very severe measures to address or deter failures to preserve electronically stored information . . . ." *Hannan Ribiyou Kabushikigaisha v. Agu Ramen, LLC*, No. CV 19-00379 JMS-KJM, 2022 WL 252105, at *4 (D. Haw. Jan. 11, 2022) (quoting Fed. R. Civ. P. 37(e)(2) advisory committee's notes to 2015 amendment). "That is why a court may impose such measures 'only on a finding that the party that lost the information acted with the intent to deprive another of the information's use in litigation.'" *Id.* (quoting Fed. R. Civ. P. 37(e)(2) advisory committee's notes to 2015 amendment).

Plaintiffs ask this Court to find an intent to deprive because of the Government's "cavalier approach to preservation," ECF No. 191 at 5, and because the Government's wiping of the phones was "simply irresponsible," ECF No. 191 at 19. "Negligent or even grossly negligent behavior," however, "does not logically support" an adverse inference instruction. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) (holding that a showing of negligence is not sufficient for sanctions under Rule 37(e)(2)).

Here, there is no evidence, not even circumstantial evidence, supporting intent. The cases cited by Plaintiffs in support of their intent arguments are wholly distinguishable from the facts in this case. The courts in those decisions had far

22

more than simple negligence in finding intent. *See Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 236–37 (D. Minn. 2019) (opining that, were the missing ESI only the result of the disposing parties' failure to disengage the auto-delete function on their phones, then the Court might consider the loss of evidence to be the result of mere negligence; however, the parties not only wiped their phones, they discarded their phones (twice, in one of the parties' case) after the plaintiffs had filed suit); *O'Berry v. Turner*, No. 7:15-CV-00064-HL, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016) (finding intent because the spoliating party had no document preservation policy, failed to ensure documents were maintained while in the spoliating party's sole possession, the documents were moved from one place to another, during which individuals unaware of their importance had access to and control over the information, and neither the spoliating party nor its law firm contacted or requested the documents from the relevant custodian despite numerous requests for them by the plaintiffs' attorney).

There is nothing in the record to support Plaintiffs' allegation that the Government acted intentionally to deprive Plaintiffs of the lost messages or their use in this litigation. Without some indication that the Government intentionally lost or destroyed the text messages specifically to deprive Plaintiffs of its use, the Court cannot sanction the Government with an adverse inference. The punishment must fit the crime. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015

amendment ("The remedy should fit the wrong, and the severe measures authorized by [] subdivision [(e)(2)] should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.").

Accordingly, even if Plaintiffs were able to meet all three of the threshold requirements under Rule 37(e), the Court nonetheless finds that the severe sanction that Plaintiffs seek is unwarranted under Rule 37(e)(2) because there is no evidence of an intent to deprive.  The Court thus DENIES Plaintiffs' request for an adverse inference sanction in the form of a finding of fact against the Government for the loss of the foregoing text messages.

      b.    *Lesser Sanctions under Rule 37(e)(1)*

"Under Rule 37(e), upon a finding of prejudice, a court is authorized to employ measures 'no greater than necessary to cure the prejudice.'" *Spencer*, 2018 WL 839862, at *1 (quoting Fed. R. Civ. P. 37(e)(1)).  "'The range of measures is quite broad if they are necessary for this purpose,' and '[m]uch is entrusted to the court's discretion.'" *Id.* (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment) (brackets in original).  "The only express limitation to curative measures under Rule 37(e)(1) is that they 'do not have the effect of measures that are permitted under subdivision (e)(2).'" *Id.* (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).  This is because sanctions

24

under subdivision (e)(2) can only be imposed on a finding of intent to deprive another party of the lost information's use in the litigation.  Fed. R. Civ. P. 37(e)(2).

Here, the Court cannot issue the adverse inference in the form of a finding of fact that Plaintiffs seek under subdivision (e)(1) because it would have the effect of a curative measure only allowed under subdivision (e)(2) on a finding of the Government's intent to deprive, which is not present here.

Even if the requested jury instruction did not have the effect of a curative measure under subdivision (e)(2), the Court could still not impose Rule 37(e)(1) sanctions because the Court cannot find the requisite prejudice.

Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other" and instead "leaves judges with discretion to determine how best to assess prejudice in particular cases."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation."  *Id.*

Plaintiffs contend that they are prejudiced because the lost text messages harm their ability to demonstrate the Government's knowledge of the water contamination as of November 28, 2021.  ECF No. 171-1 at 17–18.  Plaintiffs allege they cannot support water distribution system supervisor, Joseph Nehl's

testimony that Captain Meyer said that "[w]e need to let the people know" about the water contamination on November 28, 2021, without the lost text messages. *Id.* The Court disagrees.

In exercising its discretion to assess prejudice, the Court is not convinced that Plaintiffs have suffered any prejudice resulting from the lost text messages. As stated earlier, there is insufficient evidence that relevant text messages existed and were subsequently lost. Plaintiffs can nevertheless still argue and attempt to prove at trial that the Government was aware of the water contamination as early as the afternoon of November 28, 2021, but failed to warn Plaintiffs. Most pointedly, Plaintiffs can present the sworn testimony of water distribution system supervisor, Joseph Nehl, who testified under oath that Captain Meyer stated on November 28, 2021, that "[w]e need to let the people know" about the water contamination. Plaintiffs can also cross-examine Captain Meyer, who allegedly denied saying this at his deposition. Plaintiffs can also question Captain Spitzer and Captain Meyer about their text communications on November 28, 2021, before Captain Spitzer sent out the November 29, 2021 email assuring residents that there were no immediate indications that the water was unsafe to drink, ECF No. 171-5 at 5. The district judge can subsequently make her credibility determinations at trial.

Accordingly, even if Plaintiffs were able to meet all three of the threshold requirements under Rule 37(e), and even if the requested sanction was proper under Rule 37(e)(1), the Court could still not sanction the Government because the Court cannot find the requisite prejudice.  The Court thus DENIES Plaintiffs' request for an adverse inference sanction in the form of a finding of fact against the Government.

CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Discovery Spoliation Sanctions.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, December 14, 2023.

Kenneth J. Mansfield
United States Magistrate Judge

Civil No. 22-00397 LEK-KJM; *Feindt, et al. v. United States of America;*
Order Denying Plaintiffs' Motion for Discovery Spoliation Sanctions