UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., et al., | CIV. NO. 22-00397 LEK-KJM |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS FOURTH
AMENDED COMPLAINT [ECF NO. 121], [FILED 6/27/23 (DKT. NO. 129)]**

Before the Court is Defendant United States of
America's ("Defendant" or "United States") reinstated Partial
Motion to Dismiss Fourth Amended Complaint [ECF No. 121], filed
on June 27, 2023 ("Motion").[1] [Dkt. no. 129.]  On November 9,
2023, Plaintiffs filed their memorandum in opposition to the
Motion ("Opposition").  [Dkt. no. 193.]  On November 21, 2023,
Defendant filed its reply in support of the Motion ("Reply").
[Dkt. no. 199.]  On November 29, 2023, a stipulation was
approved and filed stating that the Motion, Opposition, and

---

[1] The Motion was originally denied, without prejudice to
refiling due to the then-pending Plaintiff's Opposed Motion to
Correct Their Fourth Amended Complaint.  [EO: Court Order
Denying Defendant United States of America's Partial Motion to
Dismiss Fourth Amended Complaint, filed 9/26/23 (dkt. no. 178);
Plaintiff's Opposed Motion to Correct Their Fourth Amended
Complaint, filed 9/22/23 (dkt. no. 176).]  On October 26, 2023,
this Court issued an order reinstating Defendant's Motion.  [Dkt.
no. 190.]

Reply would apply to the Fifth Amended Complaint and no additional briefing was required.  [Dkt. no. 201.]  On December 1, 2023, Plaintiffs' Fifth Amended Complaint was filed. [Dkt. no. 210.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  Defendant's Motion is hereby granted in part and denied in part.  The Motion is granted insofar as the failure to warn claims contained in Counts II and IV are dismissed with prejudice.  The Motion is denied as to Defendant's request to dismiss the failure to warn claim and Defendant's request to dismiss some of the plaintiffs' medical negligence claim in Count IV.

## <u>BACKGROUND</u>

This case arises out of the May 6 and November 20, 2021 fuel leaks from the U.S. Navy's Red Hill Bulk Fuel Storage Facility on Joint Base Pearl Harbor-Hickam ("Red Hill" and "JBPHH").  [Fifth Amended Complaint at pgs. iii, 1; <u>id.</u> at ¶¶ 4, 9.]  Relevant to the instant Motion, Plaintiffs allege that Defendant owns and operates Red Hill and the water system that serves JBPHH, as well as the housing that Plaintiffs lease and reside upon.  [<u>Id.</u> at ¶¶ 6, 9, 530.]  Defendant was allegedly negligent in releasing fuel into the water supply, and it failed to disclose the leaks to affected parties as required, including

2

Plaintiffs.  [Id. at ¶¶ 4, 26, 73, 538, 542.]  Plaintiffs contend Defendant failed to warn residents of the danger, and only admitted on December 2, 2021 that the November 2021 spills contaminated the water for some Plaintiffs.  [Id. at ¶ 39.] Plaintiffs allege that they suffered health issues, economic harm and fear as a result of the spills and their aftermath. [Id. at ¶¶ 82-86.]

Plaintiffs allege the following claims against Defendant: (1) a negligence claim (Count I); (2) a negligent undertaking claim (Count II); (3) a nuisance claim (Count III); (4) a medical negligence claim alleging failure to treat and delayed care (Count IV); (5) an infliction of emotional distress claim (Count V); and (6) a premises liability claim alleging breach of the duty to control force (Count VII).

Defendant's Motion asks this Court to dismiss the following claims from Plaintiff's Fifth Amended Complaint: (1) the failure to warn claims within Counts I, II, and IV for lack of subject matter jurisdiction because the Defendant is entitled to sovereign immunity pursuant to the Federal Tort Claims Act's ("FTCA") misrepresentation exception codified at Title 28 United States Code Section 2680(h); and (2) 77 of the 298 Plaintiffs' medical negligence claims in Count IV for lack of sufficient factual allegations.  [Motion at 2.]

**STANDARD**

I.   **Federal Rule of Civil Procedure 12(b)(1)**

Rule 12(b)(1) authorizes a defendant to move for dismissal of an action for "lack of subject-matter jurisdiction[.]"  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009) (citation and quotation marks omitted).  This district court has stated:

> a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1).  A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  A facial attack challenges the sufficiency of the allegations contained in a complaint to invoke federal jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.

Jiang v. Fang, CIVIL NO. 20-00100 JAO-KJM, 2020 WL 6889169, at *1 (D. Hawai`i Nov. 23, 2020).

"In a facial attack, the court may dismiss a complaint when its allegations are insufficient to confer subject matter jurisdiction, and a complaint's factual allegations are taken as true and construed in the light most favorable to the nonmoving party." McCoy v. Hawai`i Dep't of Hum. Serv., CIV. NO. 21-00063

4

LEK-RT, 2021 WL 5040197, at *3 (D. Hawai`i Oct. 29, 2021)

(citations omitted).

## II.  **Federal Rule of Civil Procedure 12(b)(6)**

The Ninth Circuit has described the standard applicable to a motion under Rule 12(b)(6) as follows:

> To survive a motion to dismiss for failure to state a claim after the Supreme Court's decisions in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the [plaintiff's] factual allegations "must . . . suggest that the claim has at least a plausible chance of success."  In re Century Aluminum [Co. Sec. Litig.], 729 F.3d [1104,] 1107 [(9th Cir. 2013)].  In other words, their complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. 1937).

> Following Iqbal and Twombly, . . . . we have settled on a two-step process for evaluating pleadings:

>> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

> [Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014)] (quoting

> Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.
> 2011)).  In all cases, evaluating a complaint's
> plausibility is a "context-specific" endeavor
> that requires courts to "draw on . . . judicial
> experience and common sense." Id. at 995-96
> (internal quotation marks omitted).

Levitt v. Yelp! Inc., 765 F.3d 1123, 1134-35 (9th Cir. 2014)

(some alterations in Levitt).  This Court is not required to

accept as true "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements." Iqbal, 556

U.S. at 678 (citing Twombly, 550 U.S. at 555).

## DISCUSSION

## I.   Failure to Warn Claim in Counts I, II, and IV

Defendant contends the FTCA's misrepresentation

exception bars Plaintiffs' failure to warn claims because these

claims are predicated upon alleged failures to communicate or

miscommunications, thus satisfying the misrepresentation

exception's essentiality test.  [Motion, Mem. in Supp. at 8

(citations omitted).]  Plaintiffs argue their failure to warn

claims are not subject to the misrepresentation exception

because: (1) traditionally misrepresentation was a commercial

tort that did not include failure to warn of a known hazard and

applied to pecuniary loss; (2) the failure to warn claims arise

primarily from the negligent performance of a mandatory

operational task – the issuance of a public notification; and

(3) Defendant can be held liable under the FTCA for failure to

warn of a known hazard through a premises liability theory.
[Mem. in Opp. at 7.]

"An action can be brought by a party against the
United States only to the extent that the Federal Government
waives its sovereign immunity.  If sovereign immunity has not
been waived, the court must dismiss the case for lack of subject
matter jurisdiction."  Esquivel v. United States, 21 F.4th 565,
572-73 (9th Cir. 2021) (internal quotation marks and citations
omitted).

> The FTCA generally waives the United States'
> sovereign immunity and permits tort suits for
> damages against the government "in the same
> manner and to the same extent as a private
> individual under like circumstances."  28 U.S.C.
> § 2674; Esquivel v. United States, 21 F.4th 565,
> 572-73 (9th Cir. 2021).  Specifically, the FTCA
> grants district courts jurisdiction over civil
> actions for money damages for negligent or
> wrongful acts or omissions of government
> employees acting in the scope of employment
> "under circumstances where the United States, if
> a private person, would be liable to the claimant
> in accordance with the law of the place where the
> act or omission occurred."  28 U.S.C.
> § 1346(b)(1); Esquivel, 21 F.4th at 572-73.

Agustin v. United States, Civ. No. 22-00167 JMS-WRP, 2023 WL
160076, at *3 (D. Hawai`i Jan. 11, 2023) (footnote omitted).
However, the United States did not waive sovereign immunity for
all tort claims: the misrepresentation exception of § 2680(h) is
an important exception at issue here.

The FTCA's misrepresentation exception codified in § 2680(h) absolutely bars "claims against the United States for fraud or misrepresentation by a federal officer."  Kim v. United States, 940 F.3d 484, 492 (9th Cir. 2019) (quotation marks and citation omitted).  "The misrepresentation exception shields government employees from tort liability for failure to communicate information, whether negligent, or intentional."  Lawrence v. United States, 340 F.3d 952, 958 (9th. Cir. 2003) (citation omitted).  The misrepresentation exception applies to affirmative misstatements as well as omissions.  See Green v. United States, 629 F.2d 581, 584-85 (9th Cir. 1980) (holding "the misrepresentation exception precludes liability where the plaintiff suffers economic loss as a result of a commercial decision which was based on a misrepresentation by government consisting either of false statements or a failure to provide information which it had a duty to provide").

Plaintiffs' failure to warn claims in Counts I, II and IV involve in the type of failure to communicate information within the scope of the misrepresentation exception.  As to Counts I and II, Plaintiffs allege "[o]fficers failed to warn residents that the leaks had occurred in violation of federal and state law," as one of many theories of negligence.  [Fifth Amended Complaint at ¶¶ 467.g, 481.g.]  As to Count IV, Plaintiffs allege "[t]he United States failed to clearly

communicate the important facts regarding the Red Hill Bulk Fuel
Storage Facility fuel leaks to these plaintiffs or their medical
care providers, allowing them to become ill, with no
transparency in communicating the origin of the harm."  [<u>Id.</u> at
¶ 508.]

A.   **The Misrepresentation Exception
     <u>Is Not Limited to Commercial Cases</u>**

Plaintiffs contend the misrepresentation exception
applies to the commonly understood definition of a
misrepresentation claim, namely the invasion of financial or
commercial interests, and not to personal injury cases.  [Mem.
in Opp. at 18-21.]  Plaintiffs' argument fails.  The Ninth
Circuit has explicitly rejected this argument:

> The [plaintiffs] contend, however, that the
> [misrepresentation] exception does not apply
> because their claim seeks damages for personal
> injury.  They insist that, decades ago, our court
> limited the exception only to cases where the
> "plaintiff is seeking to recover for **economic
> loss** suffered as a result of a **commercial
> decision** the plaintiff made in reliance on a
> government misrepresentation."
>
> Our cases impose no such limitation.  The
> [plaintiffs] are correct that some cases have
> observed that the exception primarily applies to
> claims of economic loss flowing from commercial
> transactions.  <u>See, e.g.</u>, <u>United States v.
> Neustadt</u>, 366 U.S. 696, 711 n.26, 81 S. Ct. 1294,
> 6 L. Ed. 2d 614 (1961) (observing that the torts
> covered by the exception are "confined very
> largely to the invasion of interests of a
> financial or commercial character, in the course
> of business dealings" (internal quotation marks
> omitted)); <u>Green v. United States</u>, 629 F.2d 581,

> 584 (9th Cir. 1980) ("[T]he misrepresentation
> exception precludes liability where the plaintiff
> suffers economic loss as a result of a commercial
> decision which was based on a misrepresentation
> by [the] government . . . ."). But such cases do
> not hold that the exception **cannot** apply in other
> contexts. . . .

Kim, 940 F.3d at 492–93 (emphases and some alterations in Kim).

The Ninth Circuit again rejected the same argument that

Plaintiffs make here in Andrade v. United States, 845 F. App'x

594 (9th Cir. 2021):

> Andrade tries to cabin the "misrepresentation"
> exception only to the "duty to use due care in
> obtaining and communicating information upon
> which that party may reasonably be expected to
> rely in the conduct of his **economic** affairs"
> Neustadt, 366 U.S. at 706–07, 81 S. Ct. 1294
> (internal quotation marks omitted) (emphasis
> added). While the misrepresentation in Nuestadt
> led to the loss of a job, nothing in the opinion
> suggests that the holding is limited to "economic
> affairs."

845 F. App'x at 596 (emphasis in Andrade). The Ninth Circuit

has applied the misrepresentation exception to "claims of

personal injury resulting from non-fraudulent failures to warn."

Kim, 940 F.3d at 493 (citing Doe v. Holy See, 557 F.3d 1066,

1084 n.10 (9th Cir. 2009) (per curiam); Lawrence v. United

States, 340 F.3d 952, 958 (9th Cir. 2003)).[2] Thus, the

misrepresentation exception is not limited to commercial cases.

---

[2] In Holy See, the Ninth Circuit stated that, even if the
failure to warn claim stemming from a priest's known sexual
abuse of children were not barred by the discretionary function
                                        (. . . continued)

B.   __Safe Drinking Water Act Public Notification__

Plaintiffs contend the misrepresentation exception does not apply because the failure to warn claims arise primarily from the negligent performance of an operational task, and misrepresentations are only collaterally involved. Plaintiffs argue the gravamen of their failure to warn claims is not misrepresentation but the violation of a mandatory operational requirement – the requirement to notify the public within twenty-four hours that the water was not safe to drink pursuant to Title 42 United States Code Sections 300f-300j ("Safe Drinking Water Act" or "SDWAA") and Title 40 Code of Federal Regulations Sections 141.201, 141.202(b) (EPA regulations).  Plaintiffs also argue the United States has waived sovereign immunity under the SDWA.  [Mem. in Opp. at 9-11.]  Defendant contends Plaintiffs' argument defies the holding in Green v. United States, 629 F.2d 581, 584 (9th Cir. 1980), that the existence of a duty on the part of the government to provide information to the plaintiffs did not render the misrepresentation exception inapplicable.  Further, Defendant

exclusion, it would be barred by the misrepresentation exception.  557 F.3d at 1069-71, 1084 n.10.  In Lawrence, the Ninth Circuit held that the misrepresentation exception applied to two federal agents' failure to communicate information about a former convicted felon at an exemption hearing, which resulted in the convicted felon being hired at a juvenile residential care facility and sexually abusing a minor.  340 F.3d at 953-55, 958.

argues there is no private right of action for damages arising from a violation of the SDWA, and violations of the SDWA cannot sustain a cause of action under the FTCA.  [Reply at 6-7.]

Plaintiffs' argument turns on whether failing to issue a public notification as required by the SDWA constitutes a failure to perform an "operational task" or is more properly characterized as a failure to communicate information.  The Court finds Plaintiffs' failure to warn claims are more properly characterized as a failure to communicate information, rather than as a negligent performance of an operational task. Plaintiffs rely on the distinction summarized in United States v. Fowler:

> To determine whether a claim is one of misrepresentation or negligence the court examines the distinction
>
> > between the performance of operational tasks and the communication of information.  The Government is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved.  It is not liable, however, for injuries resulting from commercial decisions made in reliance on government misrepresentations.
>
> [Guild v. United States, 685 F.2d 324,] 325 [(9th Cir. 1982)].

913 F.2d 1382, 1387 (9th Cir. 1990).  In Fowler, the Ninth Circuit found that the claim was one of misrepresentation because the plaintiffs were injured by the government's

12

representation it would pay for flood damage, when it would not, and the plaintiffs were not damaged as a result of the negligent handling of their insurance claim.  Therefore, the plaintiffs' claim fit in the category of negligent misrepresentation, and was barred by Title 28 United States Code Section 2680(h).  See id. at 1387-88.  So too here.  Plaintiffs' damages in their failure to warn claims are due to the alleged failure of the government to issue a notification that the water was unsafe to drink, allowing them to become ill, and resulting in injuries and damages.  See Fifth Amended Complaint at ¶¶ 468-71, 482-85, 508, 510.  At heart, these are claims about communication of information.  See Neustadt, 366 U.S. at 706-11 (holding that the action was one of misrepresentation because the focus of the claim was on the plaintiff's reliance upon misinformation communicated to him by the government).  This lack of communication or miscommunication is in no way collateral to the failure to warn claims.  See Guild, 685 F.2d at 326 (holding that the misrepresentation exception was inapplicable because "[a]ny communication of misinformation was collateral"); see also Mundy v. United States, 983 F.2d 950, 952-53 (9th Cir. 1993) (holding that the misrepresentation  was inapplicable because the focus of the claim was on the processing of a requested security clearance – an operational task – and the

13

communication of the result of this task "was only collaterally involved" in the injury).

Further, Defendant is correct that <u>Green</u>, 629 F.2d at 583-84, forecloses Plaintiffs' argument.  <u>Green</u> held that a duty on the part of the government to provide plaintiffs information does not "render the [misrepresentation] exception inapplicable."  <u>Id.</u> at 584.  In <u>Green</u>, the Ninth Circuit examined <u>Neustadt</u>, in which the United States Supreme Court found the misrepresentation exception precluded a home buyer's claim based on an inaccurate Federal Housing Administration appraisal, despite acknowledging the government's apparent duty to obtain and communicate information carefully.  <u>Id.</u> (quoting <u>Neustadt</u>, 366 U.S. at 710, 81 S. Ct. 1302).  Similarly, here, even if Defendant possesses a duty to issue a public notification pursuant the SDWA and Title 40 Code of Federal Regulations Sections 141.201 and 141.202(b), the misrepresentation exception still applies because the focus of the failure to warn claims is on the communication of information.

Finally, the United States has not waived its sovereign immunity for the failure to warn claims in the instant case pursuant to the Safe Drinking Water Act.  The Fifth Amended Complaint cites to the waiver of sovereign immunity in Title 42 United States Code Sections 300f-300j, [Fifth Amended Complaint

14

at ¶ 27,] which states in relevant part that certain United States government entities are subject to certain substantive and procedural requirements "in the same manner and to the same extent as any person is subject to such requirements," and waives United States sovereign immunity "with respect to any such substantive or procedural requirement."  42 U.S.C. § 300j-6(a).  Plaintiffs appear to argue the notification requirement of Title 40 Code of Federal Regulations Sections § 141.201 and 141.202(b) is one such requirement.  See Mem. in Opp. at 10-12.  Even assuming the waiver of sovereign immunity in § 300j-6(a) applies to the notification requirement of Sections 141.201 and 141.202(b), Plaintiffs seek damages, and the Safe Drinking Water Act does not create a private civil action under which damages can be recovered for violation of a provision of the Safe Drinking Water Act.  See Mays v. Flint, 871 F.3d 437, 450 (6th Cir. 2017) (citing Harding-Wright v. D.C. Water & Sewer Auth., 350 F. Supp. 2d 102, 107 (D.D.C. 2005)).  Because a person is not subject to a suit for damages under Title 42 United States Code Section 300j-6, neither is the United States government.  See Molsbergen v. United States, 757 F.2d 1016, 1020 (9th Cir. 1985) ("The government may be held liable for claims brought pursuant to the FTCA only if a private person would, under similar circumstances, be liable pursuant to the law of the place where the act or omission occurred.").  Alleged violations

of federal law – including alleged violations of the SDWA - "cannot sustain a cause of action under the FTCA." Delta Sav. Bank v. United States, 265 F.3d 1017, 1026 (9th Cir. 2001) (citations omitted).

Therefore, because the communication of information (or lack thereof) was not "collaterally involved" in the injury giving rise to the failure to warn claims in Counts I, II, and IV, Plaintiffs' argument that the misrepresentation exception under § 2680(h) does not apply on this basis fails.

C.   **Premises Liability**

Plaintiffs argue the failure to warn claims can move forward based on a premises liability theory for failure to warn of a known hazard, because Defendant owned and operated the Red Hill facility, the water system, and the land upon which Plaintiffs reside.  [Mem. in Opp. at 15-16.]  Defendant notes that the magistrate judge determined that Plaintiffs only stated a premises liability claim under Restatement (Second) of Torts § 361 in his Order Granting Plaintiffs' Motion to Amend Complaint, [filed 5/19/23 (dkt. no. 100) ("5/19 Order"),] and § 361 does not include a warning component.  Defendant notes Plaintiffs' other premises liability theories with a warning component, such as Restatement (Second) of Torts § 358, are inapplicable to this case.  [Reply at 8-9.]

16

Preliminarily, the magistrate judge in the 5/19 Order did not determine that Plaintiffs exclusively stated a § 361 claim.  The 5/19 Order simply determined that § 361 provides a basis for Plaintiffs' premises liability claim.  See 5/19 Order at 10.

Plaintiffs' claims in Count II and IV do not implicate a premises liability theory.  As to Count II, Plaintiffs allege Defendant owed a duty to Plaintiffs on the Navy water line based on the voluntary assumption of a duty recognized in Hawai`i law, and pursuant to federal law and regulations.  [Fifth Amended Complaint at ¶¶ 474-76.]  These allegations do not implicate a premises liability theory.  Similarly, in Count IV Plaintiffs do not make any allegations related to Defendant's control or ownership of land that would implicate a premises liability theory – instead the claim relates to medical negligence.  See id. at ¶¶ 503-10.  Plaintiffs' premises liability argument therefore fails as to Counts II and IV.

Count I implicates a premises liability theory. Plaintiffs allege the Government had a "duty to exercise reasonable care in the operation and maintenance of the Red Hill Bulk Fuel Storage Facility," which federal officers violated by "fail[ing] to warn residents that the leaks had occurred." [Fifth Amended Complaint at ¶¶ 466, 467.g.]  Plaintiffs allege Defendant is the "occupier, owner, and possessor" of "the water

system, and the housing which Plaintiffs leased and resided upon." [Id. at 530.]  Plaintiffs allege Defendant "contaminated plaintiffs' water system."  [Id. at ¶ 537.]

Generally, a defendant lessor cannot be held liable under a theory of premises liability to a lessee under Hawai`i law after a lessee has taken possession.  Mitchell v. United States, Civ. No. 11-00088 HG-KSC, 2011 WL 4048986, at *4 (D. Hawai`i Sept. 12, 2011) (citing Hao v. Campbell Estate, 869 P.2d 216, 218 (Haw. 1994)).[3]  Under Restatement (Second) of Torts § 355, generally, "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."

However, under Hawai`i law "a lessor has a duty to warn a lessee of dangerous conditions known to the lessor but not known or obvious to the lessee, even when the dangerous condition exists in an area not controlled by the lessor."  Hao, 76 Hawai`i at 81, 869 P.2d at 220 (1994) (some citations omitted) (citing Kole v. AMFAC, Inc., 69 Haw. 530, 750 P.2d 929

_____

[3] In Hao, the Hawai`i Supreme Court stated: "At common law a nonpossessory lessor generally had no duty to protect a lessee or others on the land against harm from dangerous conditions existing at the time of the lease."  76 Hawai`i at 80, 869 P.2d at 219 (some citations omitted) (citing Restatement (Second) of Torts § 356 comment a (1965)).

(1988)).  In <u>Kole</u>, owners of a condominium unit owed their lessees a duty to warn of the known hazardous condition in the condominium's common area – an area not under the control of the condominium owners.  While in <u>Kole</u> the dangerous condition appears to have existed at the time the lessees entered into the lease, this temporal distinction does not appear to be the most salient factor.  <u>See</u> <u>Kole</u>, 69 Haw. at 530-33, 750 P.2d at 930-31.  As the Hawai`i Supreme Court points out in <u>Hao</u>, the salient factor appears to be lessor's knowledge of the dangerous condition that is not obvious to lessee.  Here, Defendant is alleged to be the owner of the water system and housing that Plaintiffs leased – a parallel relationship to the owners and lessees in <u>Kole</u>.  <u>See</u> Fifth Amended Complaint at ¶ 530.  As in <u>Kole</u>, in the instant case, Defendant possessed greater knowledge of the dangerous condition, given that Defendant owns and operates the water system, and had more information about the leaks, given that the leaks were allegedly caused by negligent errors of United States personnel.  [<u>Id.</u> at ¶¶ 4, 5, 9.] Further, contamination in water is likely less apparent than the danger of golf balls entering a swimming pool from a neighboring golf course as in <u>Kole</u>.  Therefore, the Court concludes that Defendant may be liable under a premises liability theory for the failure to warn claims in Count I.

Therefore, the misrepresentation exception does not apply to the failure to warn claims alleged in Count I, and Defendant does not retain sovereign immunity over that portion of Count I.  See Molsbergen, 757 F.2d at 1020. ("The government may be held liable for claims brought pursuant to the FTCA only if a private person would, under similar circumstances, be liable pursuant to the law of the place where the act or omission occurred.").  Defendant's Motion is granted as to the failure to warn claims within Counts II and IV, but denied as to the failure to warn claim within Count I.

D.   **No Leave to Amend**

Because amendment cannot cure the defect in the failure to warn claims in Counts II and IV, the failure to warn portions of those claims must be dismissed with prejudice.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (quotation marks and citation omitted)).  The Court makes no inclinations or conclusions regarding any other aspect of Counts II and IV or the accompanying theories of liability alleged in those claims.

## II.  Denial of Request to Dismiss
## Certain Plaintiffs from Count IV

Defendant contends the Fifth Amended Complaint does not state a claim of medical negligence on behalf of the seventy-seven Plaintiffs listed in Table 1 because the Fifth Amended Complaint: (1) as to Audrey Lamagna ("Lamagna") contains no allegations she received medical care from a United States medical provider; and (2) contains only "conclusory boilerplate allegations that provide no information regarding when, where, or from whom Plaintiffs received the medical care they allege was negligent."  Motion, Mem. in Supp. at 17, see also id. at 18-20 (Table 1).  Plaintiffs argue the general allegations in the Fifth Amended Complaint stating that

> the United States failed to provide proper
> medical care to Plaintiffs by negligence in
> treating medical conditions resulting from the
> contamination, failing to monitor the Plaintiffs'
> health, failing to perform required medical
> tests, not adhering to accepted standards of
> care, not addressing health conditions in a
> timely manner, and in some cases, not providing
> treatment at all

[Mem. in Opp. at 23,] together with the specific allegations for each Plaintiff asserting medical negligence are sufficient to survive a motion to dismiss.  [Id. at 23-24.]

The Court agrees with Plaintiffs.  Plaintiffs' allegations are sufficient to allege medical negligence as to the seventy-seven Plaintiffs listed in Table 1.

> To make a claim for negligence/medical
> malpractice, Plaintiffs must show (1) the duty
> and standard of care, (2) negligent breach of the
> standard of care, and (3) injuries proximately
> caused by the negligence. See, e.g., Birmingham
> v. Fodor's Travel Publications 73 Haw. 359, 833
> P.2d 70, 74 (1992) (noting the elements of a
> negligence action); Bernard v. Char, 79 Hawai`i
> 371, 903 P.2d 676 (1996) ("Bernard I") aff'd 79
> Hawai`i 362, 903 P.2d 667 (1996) ("Bernard II").

Bynum v. Magno, 125 F. Supp. 2d 1249, 1258 (D. Hawai`i 2000).

Allegations in a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr, 652 F.3d at 1216. Plaintiffs allege "[t]he United States has negligently failed to treat these plaintiffs' medical conditions caused by the Red Hill Bulk Fuel Storage Facility fuel leaks," "has failed to monitor these plaintiffs' conditions, perform required medical tests, or treat the illnesses caused by the negligent conduct relating to the Red Hill Bulk Fuel Storage Facility fuel leaks," "has failed to adhere to the accepted standards of care for these plaintiffs," "has failed to timely address the health conditions of each of these plaintiffs or perform the standard of care in a timely manner, including appropriate referrals," and in some instances, "has failed to treat these plaintiffs altogether, refusing appropriate tests or treatment." [Fifth Amended Complaint at ¶¶ 503-07.] Plaintiffs also provide specific allegations as to each Plaintiff. This is

sufficient to give fair notice to Defendant and to allow
Defendant to defend itself effectively.  See Starr, 652 F.3d at
1216.  Plaintiffs are not required to state which specific
doctors they sought care from, nor which specific dates they
sought care.

For example, Defendant cites the allegations regarding
Cheryl Burness's medical negligence claim, [Motion, Mem. in
Supp. at 17 n.4] which state in part:

> The family sought care from government medical
> providers, but the care was deficient.
> Government medical providers knew or reasonably
> should have known about the fuel leaks and the
> threat to public health they posed.  Through
> their training and protocols, military medical
> providers possess an understanding of risk
> assessment and treatment for toxic exposure.
> Toxicological testing was not performed in a
> timely and proactive manner, nor was suitable
> treatment given, to ensure health after a known
> exposure to fuel-contaminated water.

[Fifth Amended Complaint at ¶ 258.]  These allegations are
sufficient to state a plausible medical negligence claim.  See
Iqbal, 556 U.S. at 678.  The allegations for the other seventy-
six Plaintiffs listed in Table 1 are similar and also
sufficient.

As to Defendant's argument that Audrey Lamagna's
medical negligence claim is not sufficiently alleged [Motion,
Mem. in Supp. at 17], this argument also fails.  Plaintiffs
allege "[s]tomach pains, nausea, and skin irritation symptoms

were brushed off by the doctors in the fall of 2021.  Audrey suffered an ectopic pregnancy and the surgeons had to remove one of her fallopian tubes after having a lack of adequate health care that led to weeks of spotting, abdominal pain, and mental anguish from the miscarriage."  [Fifth Amended Complaint at ¶ 160.]  These allegations, coupled with the general allegations of medical negligence committed by Defendant, including that Defendant "failed to treat these plaintiffs' medical conditions caused by the Red Hill Bulk Fuel Storage Facility fuel leaks," and failed to adhere to accepted standards of care and to address health conditions in a timely manner, among other allegations, sufficiently allege a plausible medical negligence claim on behalf of Audrey Lamagna.  See id. at ¶¶ 503-07.  Further, contrary to Defendant's contention, the general allegations make clear that Audrey Lamagna's doctor was a government doctor.  The Fifth Amended Complaint also alleges "[o]ther plaintiffs did not receive government provided medical care and do not bring medical negligence claims at this time."  [Id. at ¶ 502.]  This allegation, treated as true for purposes of the instant Motion, implies that the plaintiffs alleged in paragraph 501 of the medical negligence claim **did** receive government provided medical care.  See Iqbal, 556 U.S. at 678.

Insofar as the Motion requests dismissal of the medical negligence claims of the seventy-seven Plaintiffs listed in Table 1, the Motion is denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Partial Motion to Dismiss Fourth Amended Complaint [ECF No. 121], filed June 27, 2023 and which has been deemed to apply to the Fifth Amended Complaint, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as the failure to warn claims contained in Counts II and IV are DISMISSED WITH PREJUICE.  The Motion is DENIED as to the failure to warn claims within Count I, and as to Defendant's request to dismiss the medical negligence claims in Count IV by the seventy-seven Plaintiffs listed in Table 1 of the Motion.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 11, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

PATRICK FEINDT, JR., ET AL. VS. UNITED STATES OF AMERICA; CV 22-00397 LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT [ECF NO. 121], [FILED 6/27/23 (DKT. NO. 129)