UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., et al., | CIV. NO. 22-00397 LEK-KJM |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**ORDER GRANTING IN PART DEFENDANT'S PARTIAL
MOTION TO DISMISS FIFTH AMENDED COMPLAINT
[ECF NO. 210] AND DIRECTING FURTHER BRIEFING**

Before the Court is Defendant United States of
America's ("Defendant" or "United States") Partial Motion to
Dismiss Fifth Amended Complaint ("Motion"), filed on December 7,
2023. [Dkt. no. 213.] Plaintiffs filed their memorandum in
opposition on January 4, 2024, and Defendant filed its reply on
January 12, 2024. [Dkt. nos. 219, 228.] This matter came on for
hearing on February 2, 2024. For the reasons set forth below,
Defendant's Motion is hereby granted insofar as the portions of
Counts I and II alleging failure to properly test water samples
for petroleum is dismissed with prejudice. The Court finds the
first prong of the discretionary function exception is met
regarding the portion of Count II alleging failure to properly
remediate affected homes, and the Court directs further briefing
on the second prong of the discretionary function exception

analysis regarding the portion of Count II alleging failure to properly remediate affected homes.

## BACKGROUND

This case arises out of the May 6 and November 20, 2021 fuel leaks from the United States Navy's ("the Navy") Red Hill Bulk Fuel Storage Facility on Joint Base Pearl Harbor-Hickam ("Red Hill" and "JBPHH"). [Fifth Amended Complaint, filed 12/1/23 (dkt. no. 210), at pgs. iii, 1; ¶¶ 4, 9.] Relevant to this Motion, Plaintiffs allege federal officers failed to properly remediate affected homes [id. at ¶ 481.j], and "failed to test water samples for petroleum," [id. at ¶¶ 467.j, 481.k].

Plaintiffs allege Defendant entered into an Administrative Order on Consent ("AOC") in 2015 with the Hawai`i State Department of Health ("DOH") and the United States Environmental Protection Agency ("EPA"). Id. at ¶ 46, see also Mem. in Opp., Declaration of Lyle S. Hosoda ("Hosoda Decl."), Exh. 1 (AOC) at 29] The AOC states:

> Navy and [the Defense Logistics Agency ("DLA")], as the owner and/or operator of the Facility are subject to requirements regarding response and remediation in HRS chapter 342L and Hawaii Administrative Rules ("HAR") chapter 11-281 [40 C.F.R. § 280 Subpart E] and are subject to orders which may be necessary to protect the health of persons who are or may be users of a public water system as provided in HRS chapter 340E and the rules promulgated pursuant thereto including, but not limited to, HAR § 11-19 and 11-20, and are subject to administrative orders and civil actions which are necessary to address discharges

2

> to state waters as provided for in HRS chapter
> 342D. . . .

[Mem. in Opp., Hosoda Decl., Exh. 1 (AOC) at 6-7, ¶ 5(a)(ix)).]

The AOC also states:

> In the event that during the performance of this
> AOC, Navy and/or DLA encounters any condition or
> situation that constitutes an emergency situation
> or may present an immediate threat to human
> health or the environment, Navy and DLA shall
> immediately take all appropriate actions to
> prevent and/or minimize such emergency or threat,
> and shall immediately notify the DOH Project
> Coordinator and the EPA Project Coordinator. Navy
> and DLA shall take such immediate and appropriate
> actions in consultation with the DOH Project
> Coordinator and the EPA Project Coordinator. Navy
> and DLA shall then submit to DOH and EPA written
> notification of such emergency or threat at the
> Site within twenty-four (24) hours of such
> discovery and, if further action is required,
> submit a plan to further mitigate the threat
> within seven (7) days of sending the written
> notification of the emergency. . . .

[Id. at 12, ¶ 8(a)(ii).] The AOC further states, "[c]ompliance

by Navy and DLA with the terms of this AOC shall not relieve

Navy and DLA of their obligations to comply with applicable

local, state, or federal laws and regulations. [Id. at 26,

¶ 18(d).]

Plaintiffs allege "[t]he Navy's initial flushing

program asked residents to run their water, and flush toilets

and other devices to remove contaminants," which compounded the

harm because "[s]ome residents reported that chemical fumes

became overwhelming when they started flushing." [Fifth Amended

3

Complaint at ¶ 51.] Plaintiffs contend government personnel flushing the homes did so negligently, causing further harm by leaving water damage and toxicity behind. Plaintiffs allege most flushing teams emptied water heaters into yards, adding toxins to the soil which infiltrated ground water. [Id. at ¶ 51.] Plaintiffs further allege "[t]he Navy's flushing efforts did not include replacement of plastics or water heaters. Nor did the flushing effort include scrubbing the air of the air contaminants — a common practice in remediation." [Id. at ¶ 58.] Finally, "[o]nce [Defendant] cleared neighborhoods as 'safe,' families were forced to move back into the homes that made them sick," and upon moving back into their homes many got sick and/or reported that there was fuel sediment at the bottom of water heaters and that "they continued to get burned during showers and experience[d] other symptoms." [Id. at ¶ 59.]

As to Plaintiffs' testing claims, Plaintiffs allege that, in September 2022, reports indicated water samples were taken from 1,000 affected homes but were never tested for petroleum chemicals and were discarded. [Id. at ¶¶ 66-67.] Rather, Plaintiffs allege "the Navy did a rough screening of the samples for total organic carbon" ("TOC"), which can indicate the water was contaminated but not what the contaminants are, and "[t]he Navy then represented these tests on their online database as 'non-detect.'" [Id. at ¶ 67 (citations omitted).]

4

Defendant's Motion asks this Court to dismiss the following claims from Plaintiff's Fifth Amended Complaint for lack of subject matter jurisdiction: (1) the portion of Count II[1] alleging failure to properly remediate affected homes and (2) the portions of Counts I and II[2] alleging failure to test water samples for petroleum. Defendant argues it is entitled to sovereign immunity pursuant to the Federal Tort Claims Act's ("FTCA") discretionary function exception codified at Title 28 United States Code Section 2680(a). [Motion at 2.]

**STANDARD**

Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to move for dismissal of an action for "lack of subject-matter jurisdiction[.]" "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v.

---

[1] In Count II, Plaintiffs' negligent undertaking claim, Plaintiffs allege "[f]ederal officers breached the duty to exercise ordinary care after an undertaking" because, among other things, "[o]fficers failed to properly remediate affected homes." [Fifth Amended Complaint at ¶ 481.j.]

[2] In Count I, Plaintiffs' negligence claim, Plaintiffs allege "[f]ederal officers breached the duty to exercise ordinary care at Red Hill" because, among other things, "[o]fficers failed to test water samples for petroleum and destroyed water samples from affected homes." [Fifth Amended Complaint at ¶ 467.j.] In Count II, Plaintiffs' negligent undertaking claim, Plaintiffs allege "[f]ederal officers breached the duty to exercise ordinary care after an undertaking" because, among other things, "[o]fficers failed to test water samples for petroleum and destroyed water samples from affected homes." [Id. at ¶ 481.k.]

Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).

"A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Leite v. Crane, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation and internal quotation marks omitted). "A 'factual' attack . . . contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. (citations omitted).

> "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air, 373 F.3d at 1039. The court "need not presume the truthfulness of the plaintiff['s] allegations," White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000), and may "resolve factual disputes concerning the existence of jurisdiction," McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., Dist. No. 205, 343 F.3d 1036, 1040 (9th Cir. 2003).

Shahim v. United States, Case No. 2:21-cv-02401-ODW(AGR), 2022 WL 1644440, at *2 (C.D. Cal. May 24, 2022) (alteration in Shahim) (footnote omitted). Whether the challenge is facial or factual, the government bears the burden of proving the discretionary function exception applies. Terbush v. United States, 516 F.3d 1125, 1128 (9th Cir. 2008).

When "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits," the district court uses a summary judgment standard. Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005) (quotation marks and citation omitted). "Such an intertwining of jurisdiction and merits may occur when a party's right to recovery rests upon the interpretation of a federal statute that provides both the basis for the court's subject matter jurisdiction and the plaintiff's claim for relief." Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1094 (9th Cir. 2008) (citation omitted).

Here, Defendant attached two declarations and an exhibit to its Motion, thereby "convert[ing] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court[.]" See Safe Air for Everyone, 373 F.3d at 1039 (quotation marks and citation omitted). Further, the questions pertinent to the application of the discretionary function exception – (1) were federal employees exercising discretion in conducting in-home remediation in a way that implicated policy, and (2) were federal employees exercising discretion in conducting testing

7

the water in a way that implicated policy – are not intertwined
with the merits of the claims at issue in the Motion (whether
Defendant was negligent in conducting in-home remediation and
testing). <u>See</u> Fifth Amended Complaint at ¶¶ 467.j, 481.j, 481.k.
Therefore, the Motion may be properly brought as a Rule 12(b)(1)
motion and need not be treated as a summary judgment motion.

## DISCUSSION

"An action can be brought by a party against the
United States only to the extent that the Federal Government
waives its sovereign immunity. If sovereign immunity has not
been waived, the court must dismiss the case for lack of subject
matter jurisdiction." <u>Esquivel v. United States</u>, 21 F.4th 565,
572–73 (9th Cir. 2021) (citations and internal quotation marks
omitted).

> The FTCA generally waives the United States'
> sovereign immunity and permits tort suits for
> damages against the government "in the same
> manner and to the same extent as a private
> individual under like circumstances." 28 U.S.C.
> § 2674; <u>Esquivel v. United States</u>, 21 F.4th 565,
> 572–73 (9th Cir. 2021). Specifically, the FTCA
> grants district courts jurisdiction over civil
> actions for money damages for negligent or
> wrongful acts or omissions of government
> employees acting in the scope of employment
> "under circumstances where the United States, if
> a private person, would be liable to the claimant
> in accordance with the law of the place where the
> act or omission occurred." 28 U.S.C.
> § 1346(b)(1); <u>Esquivel</u>, 21 F.4th at 572–73.

8

<u>Agustin v. United States</u>, Civ. No. 22-00167 JMS-WRP, 2023 WL
160076, at *3 (D. Hawai`i Jan. 11, 2023) (footnote omitted).
However, the United States did not waive sovereign immunity for
all tort claims: the discretionary function exception of
Section 2680(a) is an important exception at issue here.

   "The government does not waive immunity for tort
claims if the alleged tortfeasor was performing a discretionary
function or duty when he or she injured the plaintiff. This is
true even if the employee abused that discretion." <u>Lam v. United
States</u>, 979 F.3d 665, 672 (9th Cir. 2020) (citing 28 U.S.C.
§ 2680(a)). The FTCA's discretionary function exception provides
that the FTCA does not apply to

> [a]ny claim based upon an act or omission of an
> employee of the Government, exercising due care,
> in the execution of a statute or regulation,
> whether or not such statute or regulation be
> valid, or based upon the exercise or performance
> or the failure to exercise or perform a
> discretionary function or duty on the part of a
> federal agency or an employee of the Government,
> whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception is
meant "to prevent judicial 'second-guessing' of legislative and
administrative decisions grounded in social, economic, and
political policy through the medium of an action in tort."
<u>United States v. S.A. Empresa De Viacao Aerea Rio Grandense
(Varig Airlines)</u>, 467 U.S. 797, 814 (1984). Therefore, when the
discretionary function exception applies, "the United States has

not waived its sovereign immunity, and the district court lacks
subject matter jurisdiction over a plaintiff's claim." Lam, 979
F.3d at 672 (citation omitted). Defendant has the burden to
prove the discretionary function exception applies. See id. at
673.

To determine whether the discretionary function
exception bars a claim, courts use a two-part test: (1) the
conduct must be discretionary, meaning it must "involve[] an
element of judgment or choice," Berkovitz v. United States, 486
U.S. 531, 536 (1988); and (2) the discretion must be
"susceptible to social, economic, or political policy analysis,"
Whisnant v. United States, 400 F.3d 1177, 1181 (9th Cir. 2005)
(citation omitted). Further,

> When established governmental policy, as
> expressed or implied by statute, regulation, or
> agency guidelines, allows a Government agent to
> exercise discretion, it must be presumed that the
> agent's acts are grounded in policy when
> exercising that discretion. For a complaint to
> survive a motion to dismiss, it must allege facts
> which would support a finding that the challenged
> actions are not the kind of conduct that can be
> said to be grounded in the policy of the
> regulatory regime. The focus of the inquiry is
> not on the agent's subjective intent in
> exercising the discretion conferred by statute or
> regulation, but on the nature of the actions
> taken and on whether they are susceptible to
> policy analysis.

United States v. Gaubert, 499 U.S. 315 (1991). Put slightly
differently, "to avoid dismissal, a plaintiff must allege facts

that support a finding that the government employee's negligence
was not grounded in policy judgments." <u>Lam</u>, 979 F.3d at 674.

## I.   **Discretionary Acts**

Defendant argues the Navy's decision to conduct
testing of water samples in the manner the Navy did was
discretionary, as were the Navy's efforts to remediate
Plaintiffs' homes. [Motion, Mem. in Supp. at 10-11, 13.]
Defendant is correct.

To meet the first prong, policies must "directly or
implicitly give discretion to the employee." <u>Lam</u>, 979 F.3d at
674. The first prong is not met "when a federal statute,
regulation, or policy specifically prescribes a course of action
for an employee to follow." <u>Berkovitz</u>, 486 U.S. at 536. The
portion of Counts I and II alleging failure to properly conduct
testing and the portions of Count II alleging failure to
properly remediate affected homes will be discussed in turn.

### A.   **Testing Claim**

As to whether Defendant's actions regarding testing
were discretionary, Plaintiffs make a negligence argument, which
is misplaced. <u>See</u> Mem. in Opp. at 18-19. "[N]egligence is simply
irrelevant to the discretionary function inquiry." <u>Kennewick</u>
<u>Irrigation Dist. v. United States</u>, 880 F.2d 1018, 1029 (9th Cir.
1989) (citations omitted). Plaintiffs have failed to identify
any statutes or regulations which cabin Defendant's discretion

11

or prescribe a course of action for Defendant to follow regarding testing water samples for petroleum. Therefore, Defendant's conduct in testing involved "an element of judgment or choice," see Berkovitz, 486 U.S. at 536, and prong one of the discretionary function exception analysis is met as to Plaintiffs' testing claim.

> **B.   Remediation Claim**

Preliminarily, Defendant states its Motion does not target Plaintiffs' allegations that Defendant negligently released contaminated water into yards or drains – the Motion only targets the allegations regarding in-home remediation. [Reply at 9 & n.5.] Plaintiffs' allegation that flushing teams emptied water heaters into yards during the remediation process, which added toxins to the soil and in turn infiltrated ground water is not encompassed in the portion of Count II alleging failure to properly remediate affected homes, but rather is encompassed in portions of Counts I and II based on the flushing of fuel into groundwater without a permit. See Fifth Amended Complaint at ¶ 467.h ("Officers ordered junior servicemembers to flush hazardous fuel into groundwater without a permit and in violation of federal and state law."); id. at ¶ 481.h (same). To the extent that any flushing into yards is not encompassed in the allegations at paragraphs 467.h and 481.h of the Fifth Amended Complaint, those portions of Counts I and II are not

12

affected by this Order. This Order addresses the portion of
Count II alleging failure to properly remediate affected homes
and does not address the alleged disposal of contaminated water
into yards.

Plaintiffs contend the AOC required the Navy "to
comply with applicable local, state, or federal laws and
regulations," which were violated. Hosoda Decl., Exh. 1 (AOC) at
26, ¶ 18(d); see also Mem. in Opp. at 19-20.

First, Plaintiffs argue laws related to the discharge
of a pollutant into certain waters and/or soil were violated -
the Clean Water Act, codified at Title 33 United States Code
Sections 1311, 1342(b); Title 40 Code of Federal Regulations
Section 280.62; and Hawai`i Revised Statutes Section 342D-50 -
as well as regulations related to underground storage tanks
("USTs") - Title 40 Code of Federal Regulations Section 280.62.
[Mem. in Opp. at 19-20.] These statues and regulations related
to the discharge of a pollutant into certain waters and/or soil
are inapplicable to the portion of Count II alleging failure to
properly remediate affected homes because flushing water into
yards is not within the scope of that portion of Count II. See
Fifth Amended Complaint at ¶ 481.j. "The Clean Water Act forbids
the 'addition' of any pollutant from a 'point source' to
'navigable waters' without the appropriate permit from the
Environmental Protection Agency (EPA)," which is not encompassed

13

in the portion of Count II alleging failure to properly remediate affected homes. Cnty. of Maui v. Haw. Wildlife Fund, 140 S. Ct. 1462, 1468 (2020). Similarly, Hawai`i Revised States Section 342D-50 prohibits, among other things, the discharge of "any water pollutant into state waters," which again is not within the scope of the remediation claim. See Haw. Rev. Stat. § 342D-50(a). Title 40 Code of Federal Regulation Section 280.62 is likewise inapplicable. Section 280.62 is a regulation within Title 40, Part 280, titled "Technical Standards and Corrective Action Requirements for Owners and Operators of Underground Storage Tanks," and it provides that, "[u]nless directed to do otherwise by the implementing agency, owners and operators must . . . : prevent further migration of the released substance into surrounding soils and groundwater." 40 C.F.R. § 280.62(a)(2). Again, migration into surrounding soils and groundwater is not alleged in the portion of Count II alleging failure to properly remediate affected homes. None of the statues or regulations Plaintiffs cite regarding the discharge of a pollutant or similar substance into groundwater or soil are within the scope of that portion of Count II.

Plaintiffs also cite to Section 280.64, which requires "owners and operators" of petroleum or hazardous substance UST systems to conduct "free product removal" according to certain specifications, "[a]t sites where investigations

14

under § 280.62(a)(6) indicate the presence of free product." 40 C.F.R. § 280.64(a); see also Mem. in Opp. at 19-20. Assuming without deciding that Defendant is the owner and operator of petroleum or hazardous substance UST systems and the fuels released from the Red Hill Facility constitute free products,[3] Section 280.64(a) does not "specifically prescribe[] a course of action for an employee to follow." Berkovitz, 486 U.S. at 536. Section 280.64(a) states the "owners and operators" of petroleum or hazardous substance UST systems must

> [c]onduct free product removal in a manner that minimizes the spread of contamination into previously uncontaminated zones by using recovery and disposal techniques appropriate to the hydrogeologic conditions at the site, and that properly treats, discharges or disposes of recovery byproducts in compliance with applicable local, state, and federal regulations[.]

This regulation does not clearly and specifically define what the employee is required to do, such that there is no room for discretion. The manner of minimizing the spread of contamination "by using recovery and disposal techniques appropriate to the hydrogeologic conditions at the site" allows for discretion. While Defendant may not have had discretion on whether to conduct free product removal under this regulation, it did have discretion regarding how to conduct the removal.

---

[3] "Free product" is defined as "a regulated substance that is present as a nonaqueous phase liquid (e.g., liquid not dissolved in water)." 40 C.F.R. § 280.12.

Finally, Plaintiffs contend the alleged failure to replace piping and water heaters violated Title 40 Code of Federal Regulations Section 280.53, in addition to Section 280.64, discussed *supra*. [Mem. in Opp. at 20.] Section 280.53 requires an owner and operator of a UST system to "immediately clean up a spill" and "begin corrective action" if certain requirements are met. Again, assuming without deciding that this regulation applies to Defendant in this instance, while these requirements are mandatory, they do not directly implicate the in-home remediation efforts of replacing plastics and water heaters, nor do they clearly and specifically define what action must be taken regarding replacing plastics and water heaters such that there is no room for discretion.

Based on the foregoing, the first prong of the discretionary function exception analysis is met as to the portion of Count II alleging failure to properly remediate affected homes. Defendant's conduct in remediating affected homes "involve[d] an element of judgment or choice." See Berkovitz, 486 U.S. at 536.

## II.  **Policy Considerations**

Next, to meet prong two of the discretionary function exception analysis, "[t]he relevant choice must be susceptible to some consideration of social, economic, or political policy."

16

Kim v. United States, 940 F.3d 484, 487 (9th Cir. 2019)
(brackets, citation and internal quotation marks omitted). This
Court must determine "whether that judgment is of the kind that
the discretionary function exception was designed to shield,
namely, only governmental actions and decisions based on
considerations of public policy." Id. (quotation marks and
citation omitted). "The key factor in identifying judgments that
are protected by the discretionary function exception is the
presence of competing policy considerations that must be
weighed." Nanouk v. United States, 974 F.3d 941, 949 (9th Cir.
2020) (citations and internal quotation marks omitted).
"[P]articularly when the government is charged with acting or
failing to act in a way that jeopardizes safety, there must be a
legitimate **policy** consideration on the other side of the balance
before the discretionary function exception can be held to
apply." Id. (emphasis in original). Policy judgments may be
implicated "when evaluating and responding to public health and
environmental hazards." Shea Homes Ltd. P'ship v. United States,
397 F. Supp. 2d 1194, 1200 (N.D. Cal. 2005).

     **A.**    **Testing Claim**

       As to the portions of Counts I and II alleging the
failure to properly test the water, Defendant demonstrates that
the decision to test for TOCs rather than total petroleum
hydrocarbons in the diesel range ("TPH-d") is "susceptible to

some consideration of social, economic, or political policy,"
fulfilling prong 2 of the discretionary function exception
analysis. See Kim, 940 F.3d at 487; see also Mem. in Opp.,
Exh. 2 (Declaration of Sherri Eng in Support of the United
States of America's Motion to Dismiss ("Eng Decl."))[4] at ¶ 5.

        Eng stated that, as of 2021, there was no laboratory
on O`ahu capable of analyzing TPH-d using EPA-certified
methodology. Therefore, samples for TPH-d had to be transported
off-island to third-party laboratories, which had an average
turnaround time of up to two weeks and limited capacity. Eng
testified that given the need to move expeditiously, the Navy
decided to use in-house laboratory services to run drinking
water samples for TOCs. The Navy's on-island lab was already
equipped in November 2023 to analyze water for TOCs. [Eng Decl.
at ¶¶ 7-8.] According to Eng, the Navy used TOC sampling results
"as a screening tool to target locations for future THP-d
sampling to be sent off-island for analysis." [Id. at ¶ 9.]

---

[4] Sherri Eng ("Eng") was the Naval Facilities Engineering
Systems Command ("NAVFAC") Hawaii Environmental Business Line
Leader and the Commander, Navy Region Hawaii Environmental
Director from 2020 until March 2022. From March 2022 to October
2023, Eng was solely the Commander of the aforementioned, and
not the Business Line Leader. Eng states that after the jet fuel
leak in November 2021 at the Red Hill Facility, 100 percent of
her time was devoted to issues regarding the leak, including
coordinating sampling of the JBPHH drinking water system. [Eng
Decl. at ¶¶ 1, 3, 6.]

Defendant identified a competing policy consideration in making the decision to test for TOCs rather than TPH-d – the need to move expeditiously - thereby meeting prong two of the discretionary function exception analysis. See id. at ¶ 7; Motion, Mem. in Supp. at 14. "[A]t step two of the discretionary-function-exception analysis, where there is even **one** policy reason why officials may decide not to take a particular course of action to address a safety concern, the exception applies." Chadd v. United States, 794 F.3d 1104, 1112 (9th Cir. 2015) (emphasis in original) (citations omitted). Because water contamination is a safety concern, Defendant's need to move expeditiously to test water samples demonstrates the decision to test for TOCs was a policy judgment of the type that the discretionary function exception was intended to protect. See Nanouk, 974 F.3d at 948 ("the military adopted a triage system for addressing a large number of simultaneous demands on finite resources, a policy judgment that necessarily involved the weighing of competing social, economic, and political considerations"); Welsh v. U.S. Army, No. C 08-3599 RS, 2009 WL 250275, at *4 (N.D. Cal. Feb. 3, 2009) ("Policy judgments are implicated when evaluating and responding to

public health and environmental hazards." (citation and internal quotation marks omitted)).[5]

Defendant has established that the discretionary function exception applies to the portions of Counts I and II alleging that "[o]fficers failed to test water samples for petroleum." [Fifth Amended Complaint at ¶¶ 467.j, 481.k.[6]] Therefore, Defendant retains sovereign immunity from those portions of Counts I and II. Defendant's motion is granted insofar the portions of Counts I and II based upon the failure to test water samples for petroleum are dismissed. Because amendment cannot cure the defect in the portions of Counts I and II based upon the failure to test water samples for petroleum, these portions of those claims must be dismissed with prejudice. See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (quotation marks and citation omitted)).

---

[5] Welsh was affirmed by the Ninth Circuit. 389 F. App'x 660 (9th Cir. 2010).

[6] The Court notes Plaintiffs' allegations in Counts I and II that Officers "destroyed water samples from affected homes" is not at issue in the instant Motion. Fifth Amended Complaint at ¶¶ 467.j, 481.k, see generally Motion, Mem. in Supp.

B.    __Remediation Claim__

Plaintiffs claim Defendant negligently caused further
harm by, among other things: carrying out its initial flushing
program asking residents to run their water and flush toilets to
remove contaminants; carrying out the government-personnel-
conducted flushing program; failing to replace plastics and
water heaters (where water heaters led to further burns when
families moved back into their homes); and failing to scrub the
air of contaminants. [Fifth Amended Complaint at ¶¶ 51-59.]
Defendant argues the Single Family Home Flushing Protocol and
Standard Operating Procedures (collectively "SOP") accounted for
competing priorities, including health of residents and
government personnel conducting the flushing, time to acquire
materials, and time and personnel power. See Motion, Mem. in
Supp. at 10-11; id., Exh. 1 (Declaration of Commander Trevor
Bingham in Support of the United States of America's Motion to
Dismiss ("Bingham Decl."));[7] Bingham Decl., Exh. A (Single Family
Home Flushing Plan Checklist and Standard Operating Procedures,
JBPHH, Oʻahu, Hawaiʻi, December 2021).

When analyzing the discretionary function exception,
the Court must focus on the precise conduct at issue. See

_____

[7] Commander Trevor Bingham was the Facilities Management
Division Director of JBPHH from 2021-2022. [Bingham Decl. at
¶ 1.] From approximately December 10, 2021 to March 15, 2022,
Bingham was in charge of facility flushing. [Id. at ¶ 4.]

Cunningham v. United States, 786 F.2d 1445, 1446 (9th Cir. 1986)
("The nature of the conduct involved governs whether the so-
called discretionary function exception applies." (citation
omitted)); see also Limone v. United States, 579 F.3d 79, 101
(1st. Cir. 2009) ("Viewed from 50,000 feet, virtually any action
can be characterized as discretionary. But the discretionary
function exception requires that an inquiring court focus on the
specific conduct at issue." (some citations omitted) (citing
Berkovitz, 486 U.S. at 546-47)). Defendant does not distinguish
between the different types of conduct at issue in the portion
of Count II alleging failure to properly remediate affected
homes, such as the failure to replace water heaters and
plastics, the failure to scrub the air of contaminants, and
resident-conducted initial flushing versus government-personnel-
conducted flushing. See Fifth Amended Complaint at ¶¶ 51-59; see
generally, Motion, Mem. in Supp. at 10-11. Rather, Defendant
refers solely to flushing and the SOP. [Motion, Mem. in Supp. at
10-11; Bingham Decl. at ¶¶ 7-11; Reply at 14.] Defendant does
not adequately differentiate between the various types of
conduct at issue in the broad remediation claim. Further,
Defendant does not state whether the SOP applies to all aspects
of the remediation claim or if the SOP refers to the government-
personnel-conducted flushing program. Again, it is Defendant's
burden to demonstrate that the discretionary function exception

22

applies. See Terbush, 516 F.3d at 1128. It is not the Court's responsibility to scour the SOP to determine which conduct within the remediation claim the SOP applies to.

Defendant only offered policy considerations regarding the flushing aspect of remediation, and only apparently regarding government-personnel-conducted flushing. See generally Motion, Mem. in Supp. at 10-11; id., Bingham Decl. at ¶¶ 7, 9-1. While some of the policy considerations applicable to government-personnel-conducted flushing may also apply to other conduct encompassed in the failure to properly remediate affected homes claim, Defendant never states this. See Motion, Mem. in Supp. at 10-11; Reply at 12-14. Thus, Defendant has not identified competing policy considerations applicable to all of the conduct encompassed in the remediation claim. Therefore, the Court cannot determine whether all the conduct at issue was the type of policy judgment the discretionary function exception is intended to protect. See Nanouk, 974 F.3d at 950 (stating the court was "unable to determine whether the government's decisions were grounded in social, economic, and political policy" when the government did not identify any competing policy considerations (citation and internal quotation marks omitted)).

In light of the foregoing, the Court will allow further briefing on the second prong of the discretionary

23

function exception as it relates to the portion of Count II alleging failure to properly remediate affected homes.

**CONCLUSION**

For the foregoing reasons, Defendant's Partial Motion to Dismiss Fifth Amended Complaint, filed December 7, 2023, is HEREBY GRANTED IN PART insofar as the portions of Counts I and II alleging the failure to properly test water for petroleum are DISMISSED WITH PREJUDICE. The Court DIRECTS further briefing addressing the second prong of the discretionary function exception analysis as applied to the portion of Count II alleging the failure to properly remediate affected homes. The parties may not submit further exhibits, and the briefing may not discuss any other issue. Defendant must file its additional briefing by **February 28, 2024,** and the briefing must not exceed 12 pages. Plaintiffs' may file additional briefing in response by **March 6, 2024,** and the briefing must not exceed 12 pages.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 14, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**PATRICK FEINDT, JT., ET AL. VS. UNITED STATES OF AMERICA; CV 22-00397 LEK-KJM; ORDER GRANTING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS FIFTH AMENDED COMPLAINT [ECF NO. 210] AND DIRECTING FURTHER BRIEFING**

24