ELLIOT ENOKI #1528
Executive Assistant U.S. Attorney
District of Hawaii
Attorney for the United States, Acting
under Authority Conferred by 28 U.S.C. § 515
SYDNEY SPECTOR #11232
Assistant U.S. Attorney

J. PATRICK GLYNN, Director
CHRISTINA FALK, Assistant Director
LUCAS R. WHITE, Trial Attorney
Environmental Tort Litigation
Civil Division, U.S. Department of Justice
1100 L St. NW
Washington, DC 20005
(202) 307-6394
lucas.white@usdoj.gov

*Attorneys for the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 1:22-cv-00397-LEK-KJM<br><br>UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO PRESENT LIVE DIRECT TESTIMONY OF WITNESS; CERTIFICATE OF SERVICE<br><br>TRIAL DATE: April 29, 2024<br>TIME: 8:30 a.m.<br>JUDGE: Hon. Leslie E. Kobayashi |

*Caption continued on next page*

| | |
|---|---|
| JESSICA WHALEY, et al., | CIVIL NO. 1:23-cv-00475-LEK-KJM |
| Plaintiffs, | TRIAL DATE: May 12, 2025<br>JUDGE: Hon. Leslie E. Kobayashi |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| JACLYN HUGHES, JR., et al., | CIVIL NO. 1:24-cv-00059-LEK-KJM |
| Plaintiffs, | TRIAL DATE: Not Set<br>JUDGE: Hon. Leslie E. Kobayashi |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO PRESENT LIVE DIRECT TESTIMONY OF WITNESS**

## TABLE OF CONTENTS

Table of Contents ................................................................................................... iii

Table of Authorities ............................................................................................... iv

Introduction ..............................................................................................................1

    I.     LCDR Bencs' testimony is not relevant. ......................................................1

    II.    LCDR Bencs' testimony is already on the record. ....................................5

    III.   The post-discovery developments are irrelevant. .......................................6

    IV.   Plaintiffs' other arguments lack merit. .......................................................8

Conclusion ..............................................................................................................10

# TABLE OF AUTHORITIES

<u>Cases</u>

*Bidar v. Amfac, Inc.*, 669 P.2d 154 (Haw. 19984)......................................................3

*Gonzalez v. U.S. Human Rights Network*, No. CV-20-00757-PHX-DWL
    (Aug. 18, 2023)......................................................................................10

*Kuntz v. Sea Eagle Diving Adventures Corp.*, 199 F.R.D. 665 (D. Haw.
    2001) ................................................................................................6, 9

*McDowell v. Blankenship*, 759 F.3d 847 (8th Cir. 2014)..........................................9

*United States ex rel. Bencs v. Pond & Co.*, No. 22-cv-00036-DKW-WRP..........6, 7

*United States v. Mathis*, 559 F.2d 294 (5th Cir. 1977)............................................10

<u>Statutes</u>

31 U.S.C. § 3730(b)(2)...............................................................................................6

31 U.S.C. § 3730(b)(3)...............................................................................................6

## INTRODUCTION

Plaintiffs offer four bases of "good cause" for LCDR Bencs' testimony. Each fails. *First*, they claim she is relevant to "foreseeability" and "negligent undertaking." But the United States admitted duty, breach, and nuisance, so LCDR Bencs' live testimony provides nothing more than the Court already has. *Second*, Plaintiffs claim that her "whistleblower" testimony is important. But Plaintiffs already captured that information in her deposition. *Third*, Plaintiffs claim that her "demeanor" bears on her credibility. But her testimony is irrelevant, and thus, her credibility is irrelevant. *Fourth*, and finally, Plaintiffs claim that LCDR Bencs has "new information" developed after discovery. But those facts are neither new nor relevant to the issues that remain in dispute.

### I. **LCDR Bencs' testimony is not relevant.**

LCDR Shannon Bencs was Fuels Director at the Red Bulk Storage Facility until she was substantively relieved of her duties in February 2021. ECF No. 400-2 (Bencs Dep.) at 32 (117:19–21) ("I was not to do anything without permission and only to work on professional development."). As part of an employment performance improvement process, she was ordered by her superior officer to work on nothing but "professional development." *Id. See also id.* at 45 (168:9–11) ("It says here that you, over the past 90 days, you have not made an effort to improve your relationship with the deputy fuels director."). Thus, she was not exercising

1

any authority at Red Hill at the time of the May spill, nor—contrary to Plaintiffs' assertions, ECF No. 439-1 at 4–5—was she even there when it occurred. ECF No. 400-2 at 32 (117:25–118:1) ("I was not at the fuel facility at the time of the spill."). Later in May—after a 90-day period in the performance improvement process—LCDR Bencs was reassigned from Red Hill, prohibited from its space or files, and ordered not to communicate with the deputy fuels director. *Id.* at 45 (169:16–19). She has not been back since.

    Thus, LCDR Bencs has little, if any, factual foundation or personal knowledge on which to testify about the May spill—and none for the November spill. Her testimony cannot make any fact of consequence more or less likely to be true. The United States has admitted that, "between May 6, 2021, and November 20, 2021, [it] breached its duty of care to the Resident Plaintiffs to exercise ordinary care in the operation of Red Hill, resulting in the May 6, 2021 and November 2021 spills." ECF No. 200 at 3, ¶ 2. The United States went further and admitted that these spills "caused a nuisance" for residents and that, "as a result," they "suffered injuries compensable under the" Federal Tort Claims Act. *Id.* at ¶¶ 1 & 3. More importantly, the Bellwethers made critical concessions too: They have stipulated away all damages that predate the November 2021 spill. ECF No. 201 at 4, ¶ 5 ("The 17 Bellwether Plaintiffs . . . stipulate that they are pursuing damages only for injuries arising after the November 20, 2021 spill . . . ."). Therefore,

LCDR Bencs cannot ease Plaintiffs' burden on elements that the United States has conceded, nor can she satisfy Plaintiffs' burden on those that remain.

Plaintiffs' stated reasons for her testimony make this point clear. They do not proffer any testimony from LCDR Bencs about the Bellwether Plaintiffs' monetary damages or toxicological causation, nor does she have the personal knowledge to speak about either. Moreover, LCDR Bencs was not even at Red Hill in November 2021—the starting point for the Bellwethers' damages. Rather, Plaintiffs say that she will testify to "foreseeability and negligent undertaking." ECF No. 439-1 at 9 ("good cause" reason 1). But when duty and breach are admitted, foreseeability is definitionally irrelevant, as it does not bear on causation or damages (especially the highly scientific and Plaintiff-specific issues here here). *See, e.g.*, *Bidar v. Amfac, Inc.*, 669 P.2d 154, 159 & n.3 (Haw. 19984) (describing how "[f]oreseeability [plays a] role in the definition of duty" as well as its "scope" and whether that duty "was breached").

As for "negligent undertaking," the United States has admitted that it "caused a nuisance" for those who live on the Navy water system. Whether that nuisance was created by the admitted operational negligence or this additional "negligent undertaking" that Plaintiffs still attempt to prove, the United States' stipulations leave nothing for Plaintiffs to litigate except the "nature and extent of

3

the[ir] injuries." ECF No. 200 at 3, ¶ 3. Plaintiffs are limited to one recovery, and multiple theories of negligence do not result in multiplied damages.

At most, LCDR Bencs can testify about the Hotel Pier fuel spill in January 2021. But that is not at issue here. Plaintiffs never mention that event in their operative Complaint. ECF No. 210. And the Bellwethers have waived all pre-November damages. ECF No. 201 at 4, ¶ 5. If Plaintiffs want to use the January release to show negligence in May or November (and assuming that Rule 404(a) permits that argument), the United States has still conceded negligent operation. So LCDR Bencs cannot further any claim that remains at issue for trial.

In Plaintiffs' own words, all that remains for trial is "causation and appropriate damages." ECF No. 438 at 7. LCDR Bencs is not a water modeler or a toxicologist, so she cannot testify to exposure, dosage, or causation. Nor do Plaintiffs get "extra" damages by proving "extra" theories for the same injuries, particularly when punitive damages are not available. Whatever functional difference may exist between "negligence" and "negligent undertaking"—and the United States sees none—Plaintiffs are still only entitled to one recovery. LCDR Bencs' testimony cannot increase their verdict a single dollar. As such, her testimony remains both irrelevant and cumulative.

## II.     LCDR Bencs' testimony is already on the record.

Even if LCDR Bencs had relevant testimony to offer—and she does not—the Court need not lengthen this trial or complicate its procedures because all of her testimony is available. The entire transcript has been filed on the public docket. ECF No. 400-2. Subject to whatever designation objections the Court sustains (ECF No. 420), the United States has no further objection to the Court considering that transcript in its entirety. There, Plaintiffs explored what they termed her "unique testimony . . . as a whistleblower." ECF No. 439-1 at 9 ("good cause" reason 2). *See also* ECF No. 400-2 (Bencs Dep.) at 19 & 25 (64:9–67:21 & 89:6–22) (discussing her claims of whistleblower status and retaliation). So even if that is relevant, the Plaintiffs and Court already have that testimony in the record.

Plaintiffs claim that this is not enough because the Court needs to see her "demeanor, tone, and responsiveness" in order to "assess [her] credibility." ECF No. 439-1 at 10 ("good cause" reason 3). But none of that is necessary. Plaintiffs designated nearly all of their questioning of LCDR Bencs, and the United States made only one counter-designation. ECF No. 400-2 at 23 (82:13–17) (clarifying that John Floyd was effective Fuels Director during her performance improvement period). That counter-designation came from Plaintiffs' direct examination, not the

5

United States' cross, and it is offered for clarity, not impeachment.[1] As such, LCDR Bencs' demeanor is doubly irrelevant, on both substance and credibility. As Plaintiffs' own cited case makes clear, "[w]hen parties have chosen not to cross-examine a witness, credibility of that particular witness has not been in question." *Kuntz v. Sea Eagle Diving Adventures Corp.*, 199 F.R.D. 665, 666 (D. Haw. 2001) (cited at ECF No. 439-1 at 11). Because her testimony is irrelevant to this case, the United States has not challenged her credibility here.

### III. The post-discovery developments are irrelevant.

Finally, Plaintiffs argue that LCDR Bencs' live testimony is necessary because of subsequent events after the close of discovery. But her "new information" is just as irrelevant as her old testimony. *Id.* ("good cause" reason 4). Plaintiffs refer to the now-dismissed *qui tam* suit that was pending in this Court. *See generally United States ex rel. Bencs v. Pond & Co.*, No. 22-cv-00036-DKW-WRP. As required of all False Claims Act cases, that matter was initially filed under seal while the Department of Justice (via an entirely separate component, independent of the undersigned office) investigated her allegations. *See* 31 U.S.C. § 3730(b)(2) & (3) (describing sealing and unsealing processes); *Bencs* ECF No.

---

[1] Regardless, to simplify the issues for the Court, the United States withdraws its lone counter-designation from LCDR Bencs' deposition. Specifically, should Plaintiffs offer their current designations of LCDR Bencs at trial, the United States will not offer any counter-designations.

32 (same). This investigation led the United States to decline to adopt LCDR Bencs' claims.[2] *See generally Bencs* ECF No. 32. The United States concluded that her case "does not warrant the continued expenditure of government resources to pursue or monitor." *Bencs* ECF No. 34 at 2. LCDR Bencs apparently agreed. Shortly after the United States declined to intervene, she too declined to prosecute: LCDR Bencs voluntarily dismissed her own claims. *Bencs* ECF No. 31. If these claims were not meritorious enough for her to pursue in litigation, they are not relevant enough to air at trial—particularly when discovery has long since closed.[3]

Even if these claims were pending, they would still be immaterial. LCDR Bencs made claims against government *contractors*, not the United States or any of its officers. She may have other allegations against her superiors—whether

---

[2] Plaintiffs mention the United States' privilege claims over LCDR Bencs' interviews with investigators. ECF No. 43 at 12. They appear to believe that the dismissal might lift that privilege for her trial testimony. Not so. The United States' privileged communications with LCDR Bencs—whether under the common-interest privilege in the *qui tam*, law enforcement privilege in any investigations, or otherwise—remain privileged. Plaintiffs' opportunity to challenge that privilege has passed. ECF No. 192 at 8–9, ¶ 8b ("[A]ll discovery motions . . . shall be filed no later than October 16, 2023.").

[3] Plaintiffs are not unfairly prejudiced by these late-developing events because they willfully chose a short discovery period in order to have an early trial. *See, e.g.*, Hrg. Tr. at 17:6–7 (June 1, 2023) ("I agree with the Government's proposals. It's sort of the proposed solution A [with five custodians], if you want to keep the current schedule . . . ."); ECF No. 119 (choosing solution A). *See also* Hrg. Tr. at 11:20–21 (June 1, 2023) ("You're really telling me you're going to give up discovery rights, and you may question that later. Those are serious decisions.").

7

discrimination claims, retaliation theories, or other employment disputes—but those were all explored by Plaintiffs' counsel in LCDR Bencs' deposition. *See, e.g.*, ECF No. 400-2 (Bencs Dep.) at 19 & 25 (64:9–67:21 & 89:6–22). These grievances need not be re-aired with live trial time, and inserting them now only piles on the added complexities of a case-within-a-case. LCDR Bencs cannot shed any light on facts that remain at issue. Therefore, her live testimony is either cumulative of prior admissions or wholly irrelevant. [4]

### IV. Plaintiffs' other arguments lack merit.

Plaintiffs offer two other minor arguments in support of LCDR Bencs' live testimony. Both fail. *First*, Plaintiffs state that they asked to write a declaration with LCDR Bencs, but the United States refused. ECF No. 439-1 at 8. Plaintiffs did not, however, tell the Court why. In the multiple meet-and-confer attempts about this issue, the United States informed Plaintiffs that LCDR Bencs' testimony was irrelevant. At no point did Plaintiffs offer any other basis of relevancy not discussed above. This is further supported by their witness. Plaintiffs' description

---

[4] LCDR Bencs' reference to discovery documents in her letter is similarly irrelevant. ECF No. 439-4 at 5. Plaintiffs did not choose LCDR Bencs as one of their five ESI custodians in discovery, so the United States never had an obligation to collect or review her documents—only to preserve them. *See, e.g.*, Hrg. Tr. 11:7–12 (June 1, 2023) ("THE COURT: I don't think [the United States] had an obligation to collect back [when the administrative claims were filed]. They had an obligation to preserve. MS. BAEHR: That's right. They had an obligation to identify the key players and preserve those records. THE COURT: And then pulling, and reviewing, and producing is a whole nother ball game.").

8

of LCDR Bencs' proposed testimony mirrors the deposition designations that Plaintiffs submitted. *Compare* ECF No. 363 at 11 (describing her testimony) *with* ECF No. 400-2 (designating her testimony). So, Plaintiffs' attempts to procure a written declaration failed, not because of the United States' recalcitrance, but rather because of her testimony's irrelevance.

*Second*, Plaintiffs cherry-pick quotes from four cases that they contend support their position. None do. Plaintiffs, for example, rely on passages in *Kuntz* about witness demeanor and credibility. *Kuntz v. Sea Eagle Diving Adventures Corp.*, 199 F.R.D. 665, 667 (D. Haw. 2001) (cited at ECF No. 439-1 at 11). Once again, Plaintiffs leave out crucial, and contrary, context. As noted above, this Court held that "[w]hen parties have chosen not to cross-examine a witness," as is the case here, the "credibility of that particular witness has not been in question." *Id.* at 666. More broadly, Plaintiffs' reliance on *Kuntz* is doubly misplaced because this Court *denied* that request to divert from similar bench trial procedures. *Id.* at 672. The *Kuntz* movant failed to show good cause to deviate. So have the Plaintiffs.

Plaintiffs' other cases are similarly inapposite. *McDowell*, for instance, simply stands for the proposition that a trial court does not abuse its discretion by admitting deposition testimony via Rule 32(a). *McDowell v. Blankenship*, 759 F.3d 847, 851–52 (8th Cir. 2014). Tellingly, the Eighth Circuit *upheld* that use of non-live testimony. *Id.* In a further ironic parallel to this case, the court also found that

9

live testimony would have been cumulative of other testimony that was already submitted at trial. *Id.* at 852. *Mathis* fares no better. There, the Fifth Circuit ruled on a hearsay issue in an "unusual" criminal case. *United States v. Mathis*, 559 F.2d 294, 295 (5th Cir. 1977). There, the defendant's "wife" refused to testify against him based on a claim of marital testimonial privilege—and what the court found to be a sham wedding. The Government instead sought to offer her prior statements through the investigators who interview her. Thus, the option was not between live or written testimony, but between an uncooperative witness and "the bare statements transcribed by the ATF agents." *Id.* at 298–99. The court simply held that those facts were not sufficient to permit hearsay. *Id.* None of that is relevant here. Finally, *Gonzalez* is merely an example of a trial court using its discretion to permit remote video testimony in lieu of deposition designations when a witness could not attend trial at the last minute. *Gonzalez v. U.S. Human Rights Network*, No. CV-20-00757-PHX-DWL, ECF No. 176 (Aug. 18, 2023). The difference there is that the *Gonzalez* witness's testimony was relevant. LCDR Bencs' is not.

## CONCLUSION

Plaintiffs claim LCDR Bencs' live, not deposition, testimony is necessary for foreseeability. But when duty and breach are admitted, that is irrelevant. Plaintiffs also claim that her live testimony is needed for "negligent undertaking." But when nuisance is admitted, that too is irrelevant. Plaintiffs also gesture at the

10

January 2021 spill for relevance. But Plaintiffs stipulated away all pre-November 2021 damages. Plaintiffs also claim that her "whistleblower" testimony is needed. But that is already captured in the deposition transcript on the record. Plaintiffs further grasp at the need to assess her credibility through demeanor and tone. But because of her irrelevance, the United States has not challenged her credibility here. Finally, her "new information" is just as irrelevant as her old testimony. In short, none of Plaintiffs' claimed "good cause" bases merit her live testimony.

At trial, the Court will need to decide 17 individual personal injury claims, complete with 17 individual assessments of water concentration, exposure duration, total dosage, general causation, specific causation, and money damages. The Court's analyses will then be liquidated into judgments for each individual. Trials run long, time runs short, and this case is complex enough as it is. The Court need not take more live testimony than necessary or absorb another set of claims—either LCDR Bencs' aborted *qui tam* suit or her personal employment grievances. Doing so wastes time, effort, and energy, and it does not warrant a deviation from this Court's procedures.

Dated: April 18, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General, Civil Division

CHETAN PATIL
Acting Deputy Assistant Attorney General, Torts Branch

J. PATRICK GLYNN
Director

CHRISTINA FALK
Assistant Director

*/s/ Lucas R. White*
LUCAS R. WHITE
   W. Va. Bar No. 12501
ERIC REY
CAROLINE STANTON
ROSEMARY YOGIAVEETIL
MARIANNE KIES
ALANNA HORAN
KENNETH HAYWOOD
ANNA ELLISON
KAILEY SILVERSTEIN
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Environmental Tort Litigation
1100 L Street, NW
Washington, DC 20002
(202) 307-6394
lucas.white@usdoj.gov

*Attorneys for Defendant,*
*United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2024, I electronically filed the foregoing using the Court's Electronic Case Filing system, which will send notice to all counsel of record.

*/s/ Lucas R. White*
LUCAS R. WHITE