

U.S. Department of Justice
Civil Division

---

Honorable Kenneth J. Mansfield  February 3, 2026
United States Magistrate Judge
300 Ala Moana Boulevard
Honolulu, HI 96850

    Re:   *Feindt v. United States,* 1:22-cv-397-LEK-KJM
           *Hughes v. United States*, 1:24-cv-59-LEK-KJM
           *Whaley v. United States,* 1:23-cv-457-LEK-KJM
           <u>Letter Brief Regarding Scope of Fast Track Trials</u>

Dear Judge Mansfield,

      Pursuant to this Court's Order, ECF No. 662[1], the parties have engaged in extensive discussions regarding the terms of expedited trials in the above-captioned matters. After more than a month of negotiations, the parties reached an impasse on January 27, 2026 regarding Plaintiffs' new view that they may agree to the expedited trial process and the accelerated process for discovery of their claims—but that Plaintiffs may opt back out without consequence if this discovery reveals pre-existing conditions that may require apportionment under *Montalvo v. Lapez*, 77 Haw. 282 (1994). As detailed below, this belated and unilateral dismissal process defies the purpose of the expedited trials and delays the overall resolution of this docket. In accordance with the parties' agreement and this Court's directive, the United States now submits this letter brief in accordance with L.R. 37.1.

## Background and Nature of Dispute

      The United States remains committed to the Court's directive to use the results from the bellwether trial "to resolve issues common to all cases and to evaluate similar claims." Order on Consolidation, ECF No. 413, at 9. Of the 17 *Feindt* bellwether Plaintiffs, all six adults and five of the eleven minors (~65% of bellwether Plaintiffs) had damages subject to apportionment under *Montalvo*. *See* Findings of Fact and Conclusions of Law, ECF No. 633, at ¶¶ 30 (Aubart); 47 (Dietz); 60 (B.D.); 90 (Feindt); 104 (P.G.F.); 117 (P.R.F.); 149 (Freeman); 187 (N.F.); 204 (Jessup); 257 (N.J.); and 274 (Witt). Since the Court issued its findings in *Feindt*, the United States has used the Court's findings and the bellwether results to facilitate broad resolution, making age-dependent settlement offers to all civilian *Feindt* and *Hughes*

---

[1] Unless otherwise stated, all docket citations are to *Feindt v. United States*, 1:22-cv-00397-LEK-KJM.

Plaintiffs. *See* Pet. for Good Faith Determination of Settlement, ECF No. 670-1, at 7. To date, the United States has reached settlements in principle with 3,274 of the total 6,212 Plaintiffs in *Feindt* and *Hughes*. *Id.*

No non-bellwether Plaintiff has answered any interrogatories, produced any documents, authorized any medical record collection, or sat for a deposition. None of the nearly 6,000 *Hughes* Plaintiffs have even filled out a Plaintiff Fact Sheet. Each Plaintiff in the *Hughes* Amended Complaint makes the same verbatim allegation of injury:

> [Plaintiff] suffered, without limitation, inconvenience, emotional distress, and/or personal injury, including one or more physical symptoms commonly associated with fuel exposure such as headaches, nausea, rashes, vomiting, diarrhea, respiratory issues, and fatigue.

*E.g., Hughes v. United States,* 1:24-cv-59-LEK-KJM, Am. Compl., ECF No. 209, at ¶ 188. In the absence of any Plaintiff-specific discovery, the United States assumes for purposes of this letter brief that the ~3,000 non-settling civilian Plaintiffs will have similar characteristics to the *Feindt* bellwethers, which suggests that roughly 65% of them (~1,900 Plaintiffs) would have conditions potentially subject to *Montalvo* apportionment.

Since the December 4, 2025 status conference and at the Court's direction, the United States has been actively working with counsel in all civilian Red Hill FTCA cases to develop a process for expedited trials (i.e., "Fast Track Trials") for those Plaintiffs that decline the United States' settlement offers. In related cases, the United States has stipulated to, *inter alia*, the following provisions for these expedited damages trials:

- Application of all non-Plaintiff specific portions of the *Feindt* Findings of Fact and Conclusions of Law to all Fast Track Plaintiffs;

- Limited discovery of Fast Track Plaintiffs, including only Plaintiff Fact Sheets, authorizations for the release of medical records, and depositions; and

- No expert disclosures or testimony, although the parties may argue apportionment and causation from Plaintiffs' medical records.

*See Williams v. United States*, 1:23-cv-28-LEK-KJM, Stip. Fast Track Trial Process and Schedule, ECF No. 174 at ¶¶ 1, 3-5; *Alaimaleata v. United States*, 1:23-cv-164-LEK-KJM, Stip. Fast Track Trial Process and Schedule, ECF No. 138 at ¶¶ 3, 8-9.

Since December 2025, the parties have been negotiating a similar stipulation in the above-captioned cases. Indeed, during the January 9, 2026 status conference, both parties informed the Court that they had largely reached agreement on a Fast Track Trial process, except for the issue of the time period of relevant records.

But after the January 13, 2026 status conference, Plaintiffs changed their position. They now seek to exclude any Plaintiff with any preexisting conditions from the Fast Track Trials. As of the parties' January 27, 2026 exchange, the United States understands Plaintiffs' position to be that any Plaintiff who may have a preexisting condition is categorically ineligible for the Fast Track Trials, even if said Plaintiff agreed to the Fast Track Trial process and the parties commenced accelerated discovery on their claims. Plaintiffs' counsel have acknowledged that, at this time, they cannot identify which of the remaining Plaintiffs have preexisting conditions. Instead, they take the view that approximately six weeks before trial, the United States must identify any Fast Track Trial Plaintiffs it believes may have preexisting conditions, and then those Plaintiffs will be excluded from the Fast Track Trial. Plaintiffs also seek to include five families per trial.

In contrast, given this Court's directive to utilize the results of the bellwether trial in *Feindt* and to work on resolving these cases expeditiously, the United States' view is that any Plaintiff who agrees to the terms of these expedited trials remains in the Fast Track Trial process, with the parties to choose 1-2 families per trial to address the Court's concern that more families per trial may be too burdensome for the Fast Track Trials. Once these Plaintiffs agree to this process they cannot—just like the United States cannot—opt out of the Fast Track process for resolving their claims.

**Argument**

Although the United States agrees that the remaining Plaintiffs should have the ability to opt in to the Fast Track Trials, Plaintiffs' proposal offers a second, unilateral ability to opt back out if their recovery becomes subject to apportionment. This is unworkable, inequitable, and inconsistent with Rule 1. *See, e.g.*, *In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157, 163 (5th Cir. 2010) ("Bell wanted to have his cake and eat it by withdrawing from a bellwether trial and then sitting back to await the outcome of another plaintiff's experience against the

appellees . . . If it permitted Bell to dismiss without prejudice, it would set a precedent that other plaintiffs could use to manipulate the integrity of the court's bellwether process.").

*First*, Plaintiffs' proposal likely will render thousands of remaining Plaintiffs ineligible for the Fast Track Trial process. The parties agreed to "select a representative sample of plaintiffs to proceed through full discovery and trial and then use those test cases to help narrow the issues and resolve other cases." ECF No. 413 at 9. Plaintiffs instead seek to "stage a series of relatively small bellwether trials over the course of years," with experts, for any Plaintiff with any preexisting condition. *Id*. Requiring individualized experts for *any* potential apportionment issue ignores the guidance to be drawn from the *Feindt* bellwether trial and invents a standard not present in Hawaii law. *See Weite v. Monohara*, 240 P.3d 899, 917 (Haw. App. 2010) ("[Plaintiff] cites to no authority in this jurisdiction, and we find none, to support her assertion that '[t]he law requires that a defense claim for apportionment be supported by expert medical testimony.'").

Moreover, the Court has provided the parties with significant guidance on apportionment, including what information is most beneficial to the Court going forward. The Court's *Feindt* bellwether trial decision drew on medical records and Plaintiff testimony to determine apportionment. *See, e.g.*, ECF No. 633 at ¶¶ 42-43, 46 (finding Dietz's gastrointestinal symptoms were subject to apportionment based on her testimony and medical records demonstrating a history of GERD and IBS); 101, 104 (finding P.G.F.'s injuries of abdominal pain, nausea, vomiting, and diarrhea were appropriate for apportionment based upon her medical records). And the Court further identified the categories of information that were most useful when making these assessments. *See* Jan. 13, 2026 Tr. 14:7-15:7 (citing Plaintiff testimony and medical records as helpful information for apportionment). The parties have incorporated such questions into the Plaintiff Fact Sheet to streamline both the Court's analysis and the parties' efforts to resolve the remaining claims. Plaintiffs, however, now seek to use that same information as a sword and a shield to remove any Plaintiffs from the Fast Track Trial process whose damages may be reduced due to apportionment, including after they have been selected for trial and the parties devoted time and resources to preparing for this trial.

*Second*, Plaintiffs' proposal is inconsistent with the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Under Plaintiffs' proposal, a family with multiple Plaintiffs will have their claims split across multiple trials; those without preexisting conditions will be tried first, and those with potential apportionment will be tried in some later, undefined process.

Such a process would require duplicative evidence across multiple trials and create unnecessary burdens for the Court and the parties. Further, those Plaintiffs without preexisting conditions are likely among the most straightforward of the remaining cases, and the United States remains committed to engaging in productive settlement discussions with the benefit of additional information. But focusing the Court's and the parties' resources solely on the minority of cases without preexisting conditions—when roughly 65% are expected to have such conditions—will do little to advance resolution of the broader docket and flies in the face of Rule 1.

*Third*, Plaintiffs concede that they are currently unable to identify which Plaintiffs have conditions that would potentially be subject to *Montalvo* apportionment. While the parties have recently agreed to the terms of a Plaintiff Fact Sheet, Plaintiffs do not anticipate completion of the first batch of fact sheets until March 20, 2026. Plaintiffs' proposal then requires the parties to identify Fast Track Trial Plaintiffs solely based on Plaintiffs' self-categorization as to whether they may have pre-existing injuries, without any opportunity for the United States to test the veracity of that claim. After the parties undertake expedited discovery to permit the United States to evaluate Plaintiffs' claims—requiring the United States to obtain Plaintiffs' medical records and depose Plaintiffs—Plaintiffs propose that trial Plaintiffs would opt-back-out of the Fast Track Trial if it looks as though their damages may be lowered due to apportionment. Plaintiffs' proposal would require the United States to undertake expedited discovery of five families (potentially up to 25 individuals), without any guarantee that those Plaintiffs' claims would in fact be tried in the near future. The United States would expend considerable resources on discovery and trial preparation while Plaintiffs would maintain a one-way opt-out of trial. Such a proposal provides Plaintiffs with a "heads I win, tails you lose" option of trial selection whereby they reverse the burden and receive all the benefits of an expedited trial while shifting all the risks of forgoing expert testimony to the United States.

The United States respectfully requests that the Court permit any Plaintiff who consents to the Fast Track Trial to participate in these trials and decline Plaintiffs' request to impose categorical limitations on those with pre-existing conditions.

      Respectfully submitted,

      *s/Caroline W. Stanton*

      Caroline W. Stanton
      Trial Attorney, U.S. Department of Justice