LYLE S. HOSODA            3964-0
SPENCER J. LAU            11105-0
HOSODA LAW GROUP, AAL, ALC
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawai'i 96813
Telephone:  (808) 524-3700
Facsimile:   (808) 524-3838
Email: lsh@hosodalaw.com; sjl@hosodalaw.com


KRISTINA S. BAEHR        *Pro Hac Vice*
MARY M. NEUSEL           *Pro Hac Vice*
JUST WELL LAW, PLLC
2606 W 8th St, Unit 2
Austin, TX 78703
Telephone: (512) 994-6241
Email: kristina@well.law; maggie@well.law


FREDERICK C. BAKER       *Pro Hac Vice*
JAMES W. LEDLIE          *Pro Hac Vice*
KRISTEN HERMIZ           *Pro Hac Vice*
CYNTHIA A. SOLOMON       *Pro Hac Vice*
SARA O. COUCH            *Pro Hac Vice*
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
Email: fbaker@motleyrice.com; jledlie@motleyrice.com;
khermiz@motleyrice.com; csolomon@motleyrice.com;
scouch@motleyrice.com

*Attorneys for Plaintiffs*


*(case caption continued on next page)*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| PATRICK FEINDT, JR., et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIVIL NO. 1:22-cv-00397-LEK-KJM<br>(FEDERAL TORT CLAIMS ACT)<br><br><br><br>JUDGE:  Hon. Leslie E. Kobayashi |
| JESSICA WHALEY, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIVIL NO. 1:23-cv-00457-LEK-KJM<br>(FEDERAL TORT CLAIMS ACT)<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOVERNMENT' S MOTION TO DISMISS WHALEY FIRST AMENDED COMPLAINT; CERTIFICATE OF SERVICE**<br><br>JUDGE:  Hon. Leslie E. Kobayashi |
| JACLYN HUGHES, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIVIL NO. 1:24-cv-00059-LEK-KJM<br>(FEDERAL TORT CLAIMS ACT)<br><br><br><br>JUDGE:  Hon. Leslie E. Kobayashi |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS <u>WHALEY FIRST AMENDED COMPLAINT</u>

TABLE OF CONTENTS

**Introduction**..................................................................................................1

**Factual Background** ....................................................................................2

    I.  The FTCA created a broad waiver of the Government's sovereign immunity.................................................................................................4

    II.  The *Feres* doctrine is a narrow exception that bars only injuries that are "incident to service." .................................................................5

    III. To determine whether an injury is "incident to service," the Ninth Circuit focuses on the nature of the plaintiff's activities at the time of injury........................................................................................6

**Analysis**....................................................................................................13

    I.  The *Johnson* test applies to the *Whaley* plaintiffs' claims. .................13

    II.  The private nature of the plaintiffs' use of water in family activity weighs against a *Feres* bar.................................................................14

    III. The location of the tortious activity weighs against a *Feres* bar.........17

    IV. The duty status of the plaintiffs weighs against a *Feres* bar. ..............21

    V.  Personal use and consumption of tap water is not a "benefit incident to military service." ..............................................................................22

**Conclusion** ...............................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Atkinson v. United States*, 825 F.2d 202 (9th Cir. 1987) (Noonan, J., concurring)....................... 15

*Baldonado v. United States*, 320 Fed. Appx. 787 (9th Cir. 2009)................................................ 13

*Bon v. United States*, 802 F.2d 1092 (9th Cir. 1986)......................................................... 13, 17, 19

*Brooks v. United States,* 337 U.S. 49 (1949)................................................................................ 5, 23

*Clendening v. United States*, 19 F.4th 421 (4th Cir. 2021) ............................................................ 20

*Coffey v. United States,* 455 F.2d 1380 (9th Cir. 1972)................................................................... 17

*Cohens v. Virginia*, 19 U.S. 264 (1821) ............................................................................................ 4

*Costo v. United States*, 248 F.3d 863 (9th Cir. 2001).................................................................... 13

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996)............................................................. passim

*Elliott By & Through Elliott v. United States*, 877 F. Supp. 1569 (M.D. Ga. 1992)..................... 15

*Green v. Hall*, 8 F.3d 695 (9th Cir. 1993) ...................................................................................... 15

*Gros v. United States*, 232 F. App'x 417 (5th Cir. 2007) .............................................................. 20

*Hall v. United States*, 130 F. Supp. 2d 825 (S.D. Miss. 2000)...................................................... 14

*Jackson v. Tate*, 648 F.3d 729 (9th Cir. 2011) ............................................................................... 13

*Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983)........................................................ passim

*Kawananakoa v. Polyblank,* 205 U.S. 349 (1907).......................................................................... 4

*Latchum v. United States*, 183 F. Supp. 2d 1220 (D. Haw. 2001), *aff'd*, 65 Fed. Appx. 171 (9th

  Cir. 2003) ..................................................................................................................................... 13

*McConnell v. United States*, 478 F.3d 1092 (9th Cir. 2007) ......................................................... 13

*Schoenfeld v. Quamme*, 492 F.3d 1016 (9th Cir. 2007) ........................................................... passim

*Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022) ................................................................... passim

*Taber v. Maine*, 67 F.3d 1029 (2d Cir. 1995) ............................................................................... 21

*United States v. Brown,* 348 U.S. 110, 75 S. Ct. 141, 99 L. Ed. 139 (1954)................................. 23

*Warta v. Porter, McGuire, & Kiakona, LLP*, 622 F. Supp. 3d 971 (D. Haw. 2022)........................ 3

**Statutes**

28 U.S.C.A. § 2680(j) ................................................................................................................. 4

**Rules**

Fed. R. Evid. 201(b)(2) ............................................................................................................... 2

Federal Rule of Civil Procedure 12(b)(1) ................................................................................ 2, 3

## INTRODUCTION

Military service members have the right to expect safe water in their family homes. And yet four years after this litigation began—after trial and after the Court has already determined damages for representative plaintiffs—the Government argues for the first time that service members should receive no damages at all for the water contamination that acutely poisoned them and their families over Thanksgiving weekend in November 2021. The Government asserts a discretionary defense under the *Feres* doctrine. It argues that its negligent provision of toxic water to service members' family homes—on or off base—was "incident to military service." But case law in this Circuit proves otherwise. The critical question in the Ninth Circuit is the nature of the activity at the time of injury. There is nothing more personal or private than bathing babies at home, showering, boiling potatoes for Thanksgiving dinner, washing baby bottles and dishes, and everyday mothering and fathering. Because those activities are not incident to service, the Government's motion must be denied.

1

## FACTUAL BACKGROUND

The facts are familiar to the Court. In late November 2021, jet fuel from the Red Hill fuel depot contaminated the Joint Base Pearl Harbor Hickam water distribution system, injuring thousands of people–including the *Whaley* plaintiffs. The contamination was caused by the negligence of civilians employed by the United States Navy. In May 2021, a civilian control room operator at the Red Hill facility failed to follow the required valve opening and closing sequence and released 19,000 gallons of jet fuel into retention lines. Compl. ¶ 11-12. In November, a federal civilian officer operating a train cart struck and broke a pipe valve that contained the fuel spilled by the shortcut. Compl. ¶ 16. As a result, the valve erupted in a blast, injecting thousands of gallons of fuel into the Red Hill water system, the drinking water system for the plaintiffs. Compl. ¶ 16.

The plaintiffs' housing communities were open to civilians, including family members, employees of the Department of Defense, employees of the State of Hawaiʻi, civilian civil servants, civilian employees of housing management, retired servicemen and women, retired civil servants, inactive service members, and civilian contractors.[1]

---

[1] Military Housing Office of Joint Base Pearl Harbor-Hickam Public Private Venture (PPV), *Housing Referral & Brief for Other Eligible Tenant/Non-Active-duty Packet* (Dec. 2022),

In late November, the contamination reached the plaintiffs' homes. Compl. at xxiii. Because the Navy had not advised them of the contamination, thousands of people—including the *Whaley* plaintiffs—continued to use toxic water for everyday family life, including bathing babies, drinking, showering, making Thanksgiving dinner, and washing the endless dishes thereafter. The *Whaley* plaintiffs—along with thousands of civilian counterparts—suffered harmful impacts, including acute poisoning symptoms, displacement, psychological trauma, and economic injury. Compl. ¶ 58.

## LEGAL STANDARD

A motion to dismiss based on *Feres* is an attack on the subject matter jurisdiction of the court to hear the case; it is therefore treated as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

---

https://ffr.cnic.navy.mil/Portals/76/Navy%20Housing/CNRH/JBPHH/AF%20Docs/AF_Non-Active%20Duty%20Referral%20Packet_DEC2022.pdf?ver=SVL2VDbbK0dSUX0FH6nJFQ%3D%3D; *Non-Federal Civilians in Navy Housing (Procured Lodging) Financial Assistance* (Jan. 10, 2022), https://www.cpf.navy.mil/Portals/52/Downloads/JBPHH-Water-Updates/2022-01-10-financial-assistance-civilians-procured-lodging.pdf. These are public documents by the Office of Military Housing of which the court should take judicial notice. *See* Fed. R. Evid. 201(b)(2); *Warta v. Porter, McGuire, & Kiakona, LLP*, 622 F. Supp. 3d 971, 981 (D. Haw. 2022). The plaintiffs also allege within the complaint that their housing communities were open to civilians and members of the general public. Compl. at xxiii ¶ 93.

3

Here, the United States challenges the sufficiency of the *Whaley* plaintiffs' complaint on its face. *See* Memorandum in Support of Motion to Dismiss (Govt. Br.) at 5. In reviewing a facial *Feres* challenge under 12(b)(1), the court must take the allegations in the complaint as true and construe all allegations in the light most favorable to the non-movant. *Spletstoser v. Hyten*, 44 F.4th 938, 942–43 (9th Cir. 2022).

The *Feres* doctrine considers whether the Government is immune from actions brought by service members. In the Ninth Circuit, courts applying the *Feres* doctrine must primarily consider the nature of the plaintiff's activity at the time of injury. Personal and private activity is not "incident to service."

## I.     The FTCA created a broad waiver of the Government's sovereign immunity.

Historically, the United States government, as sovereign, enjoyed immunity from liability for its torts. *See Kawananakoa v. Polyblank,* 205 U.S. 349, 353 (1907); *Cohens v. Virginia*, 19 U.S. 264, 380, 411-12 (1821). In 1945, Congress enacted the Federal Tort Claims Act, "which created a broad waiver of the federal government's sovereign immunity: 'The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.'" *Spletstoser*, 44 F.4th at 943 (quoting 28 U.S.C. § 2674). The FTCA's text includes twelve exceptions, including an exception for claims arising out of "combatant activities

4

of the military or naval forces, or the Coast Guard, during time of war." 28

U.S.C.A. § 2680(j).

### II.    The *Feres* doctrine is a narrow exception that bars only injuries that are "incident to service."

In *Brooks v. United States,* the Supreme Court was asked whether service

members were excluded from recovery under the FTCA. 337 U.S. 49, 51 (1949).

The *Brooks* case concerned a father and his sons, both servicemen, who were

injured in a motor vehicle collision with a United States Army truck driven by a

civilian employee of the Army. *Id*. The Court, citing the plain language of the

FTCA, determined that there was no bar to recovery. *Id*. The Court emphasized

that the injuries were "not caused by their service except in the sense that all

human events depend upon what has already transpired." *Id*. at 52. The Court

expressed no opinion, however, as to the "wholly different case" alleging injuries

that occurred "incident to service." *Id.* at 52.

In *Feres v. United States*, the Court considered that "wholly different case,"

and articulated a narrow exception to the FTCA's liability waiver for service

members "sustaining 'incident to the service' what under other circumstances

would be an actionable wrong." 340 U.S. 135, 138, 146 (1950). The Court did not

define the contours of "incident to service." *See generally id.* at 138-146.

**III.    To determine whether an injury is "incident to service," the Ninth Circuit focuses on the nature of the plaintiff's activities at the time of injury.**

After *Feres*, lower courts reached "widely varying results" interpreting what is "incident to service." *Johnson v. United States*, 704 F.2d 1431, 1436 (9th Cir. 1983). In *Johnson*, the Ninth Circuit therefore "endeavored to provide a coherent framework for applying the *Feres* doctrine." *Spletstoser*, 44 F.4th at 947 (citing *Johnson*, 704 F.2d at 1436). The *Johnson* court identified four factors to determine whether an injury occurred incident to service:

> 1) the place where the tortious act occurred;
>
> 2) the duty status of the plaintiff when the tortious act occurred;
>
> 3) the benefits accruing to the plaintiff because of his or her status as a service member;
>
> 4) the nature of the plaintiff's activities at the time the tortious act occurred.

*Johnson*, 704 F.2d at 1436–39.

The court noted that "[a]lthough the factors are conceptually different," each bears on "the most important line of inquiry: the nature of *the plaintiff's activities at the time of the government's tortious action*." *Id*. at 1436 (emphasis added).

Since *Johnson*, the Ninth Circuit has consistently applied the four *Johnson* factors to determine whether an injury occurred "incident to service" under *Feres*.

6

*E.g.*, *Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996); *Schoenfeld v. Quamme*, 492 F.3d 1016 (9th Cir. 2007); *Spletstoser v. Hyten*, 44 F.4th 938, 951 (9th Cir. 2022). An examination of these cases offers important context and guidance here.

### A.    *Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983)

In *Johnson*, the court considered whether the claims of an active-duty service member were barred when they arose from injuries he suffered in an automobile accident following an after-hours party at an on-base night club. *Johnson*, 704 F.2d at 1433-34. Under military regulations and state law, the night club was required to close by 2:00 a.m. *Id*. at 1433. The club instead remained open until 4:30 a.m. *Id*. After the party, Johnson got a ride home from a fellow active-duty service member and co-worker at the bar, who had been drinking. *Id*. The car collided with a tree one mile outside the entrance to the base. *Id*. Johnson sued the United States alleging that the Air Force's negligence in violating state law and military regulations with respect to the closing time of the club caused his injuries. *Id*. at 1434. The *Johnson* court applied the four-factor test. First, the court considered the location of the negligence. *Id*. at 1436-38. The court acknowledged that the alleged negligence occurred at an on-base bar but rejected the on-base/off-base distinction as the determining factor, reasoning "[t]he occurrence of government negligence on a military base should not automatically bar recovery." *Id*. at 1434. Even when the negligence occurs on base, where the officer resides

7

because of his service, the court is obliged to explore the "function the soldier was performing at the time of the injury in order to ascertain the totality of the circumstances." *Id.* (internal quotations omitted). Because the court found the connection between "the situs of the negligence"—the night club for enlisted service members, where Johnson was a bartender during his off-duty time—and Johnson's military service "so tenuous," the court determined that the on-base location was "not an important factor" in its *Feres* analysis. *Id*. at 1437.

The *Johnson* court next considered the second factor: the duty status of Johnson. *Id*. The court found that the active-duty vs. non-active-duty status distinction did not control. Instead, the "important question is whether the service member on active-duty status was engaging in an activity that is related in some relevant way to his military duties." *Id*. at 1438. Because the court found that Johnson's activities at the bar were unrelated to his military duties, the court held this factor did not weigh in favor of a *Feres* bar. *Id*.

Third, the *Johnson* court considered the benefits accruing to Johnson because of his status as a service member. The court found that this factor did not bar relief because "Johnson's employment at [the club] during his off-duty hours" was not "a privilege or benefit incident to his military service" because his job, as a bartender, "was identified with those routinely performed by civilian bartenders," and the work was unrelated to his military duties. *Id*. at 1439.

8

Lastly, the court considered the nature of Johnson's activities at the time of the accident. The court found that this factor weighed most strongly against a *Feres* bar because "at the time of the government's negligence . . . Johnson was not subject in any real way to the compulsion of military orders or performing any sort of military mission." *Id*. Moreover, "Johnson was subject to military discipline only in the very remotest sense" because "his activities were 'purely personal.'" *Id*. at 1440 (citing *Mills v. Tucker,* 499 F.2d 866 (9th Cir.1974)). Indeed, "Johnson could just as easily have been injured had [he] never worn a uniform at all." *Id*. at 1439 (internal quotations omitted). The court additionally highlighted that Johnson's activities did "not involve the sort of close military judgment calls that the *Feres* doctrine was designed to insulate from review." *Id*. For all these reasons, the court found that no *Feres* bar applied to Johnson's suit.

## B.    *Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996)

The Ninth Circuit again took up the question of whether *Feres* barred recovery in *Dreier v. United States*. *Dreier* concerned an active-duty service member who, after an off-duty afternoon of relaxation and beer drinking, fell into a wastewater drainage channel while hiking on base. 106 F.3d at 845. His widow sued for wrongful death, and the court applied the four *Johnson* factors to determine that *Feres* did not bar the claim. *Id*. at 852-53. The court noted that the activity occurred on base, but that the situs of the injury was not determinative. *Id*.

9

at 852. The court noted that Dreier was active-duty, but had been released from duty for the day, and that his activities on the base were "indistinguishable from that of a civilian participating in the same leisure activities." *Id*. at 853. The court also concluded that Dreier's activities were not a benefit of his service because civilians had access to the same hiking area. *Id*. Last, the court found that the nature of Dreier's activities weighed in favor of recovery because Dreier was "not subject in any real way to the compulsion of military orders or performing any sort of military mission," and "was subject to military discipline only in the very remotest sense." *Id*. (quoting *Johnson*, 704 F.2d at 1440). The court found the third and fourth factors the most significant and held that *Feres* did not bar recovery. *Id*.

## C.   *Schoenfeld v. Quamme*, 492 F.3d 1016 (9th Cir. 2007)

In *Schoenfeld v. Quamme*, a member of the United States Marine Corps brought a personal injury action against the United States after he lost his leg when the car in which he was a passenger "crashed into a previously damaged, but unrepaired, guardrail on a military base." 492 F.3d at 1017. The court applied the four *Johnson* factors to determine whether *Feres* barred the marine's suit. The court first noted that the accident occurred on-base but found that this factor was not dispositive where "the nature of a plaintiff's activities at the time of injury [were] only minimally related to his military service." *Id*. at 1023. Second, the court considered Schoenfeld's duty status. The court noted that he was active-duty

10

but on liberty at the time of the accident. *Id*. at 1023-24. The court again found that this factor did not weigh in favor of a *Feres* bar because his activity was unrelated to his active-duty status. *Id*. Third, the court considered the benefits accruing to Schoenfeld because he was a serviceman. The court found that his use of the road while on liberty was not a benefit incident to service. *Id*. at 1025.

The court last considered the nature of Schoenfeld's activity at the time of the accident and found that this factor weighed heavily against applying a *Feres* bar because he "was not subject to the compulsion of military orders or performing any sort of military mission." *Id*. (internal quotations omitted).

Importantly, the court noted that "the fourth factor—the nature of the plaintiff's activities"—is "most relevant in determining whether *Feres* bars Schoenfeld's suit." *Id*. at 1023. The court therefore concluded that the *Johnson* factors weighed against applying a *Feres* bar to Schoenfeld's suit. *Id*. at 1025-26.

### D. *Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022)

In *Spletstoser v. Hyten*, the Ninth Circuit again applied the *Johnson* factors to determine whether *Feres* barred suit. 44 F.4th 938 (9th Cir. 2022). *Spletstoser* concerned an active-duty service member who alleged that she was sexually assaulted by a superior military officer at a hotel. *Id*. at 942. First, the court found that the location of the activity weighed against a *Feres* bar because the alleged assault occurred in a private hotel room. *Id*. at 954. As to duty status, the court

11

instructed that the factor should not "be mechanically applied;" rather, "the important question is whether the service member on active-duty status was engaging in an activity that is related in some relevant way to her military duties." *Id*. The court then concluded that because Spletstoser's activities, preparing for bed in a hotel room, were indistinguishable from any civilian in a like position, this factor too weighed against a *Feres* bar. *Id*. at 955. For the third factor, the court found that, although Spletstoser and her superior military officer attended the conference on behalf of the military, Spletstoser "did not have access to her hotel room solely because of her status as a military service member" because civilians also had access to the hotel. *Id*. at 956. Finally, the court considered the fourth factor—the nature of the plaintiff's activities at the time of the alleged negligence. *Id*. The court again found that this factor weighed against the application of *Feres* because the court reasoned that it "is unimaginable that [the] [p]laintiff would have been 'under orders' to submit to [the defendant's] sexual advances, or that she was performing any sort of military mission in conjunction with the alleged assault." *Id*. at 957. Accordingly, the nature of the activity was not related to her military service, and no *Feres* bar applied to her suit. *Id*.

12

## ANALYSIS

### I.    The *Johnson* test applies to the *Whaley* plaintiffs' claims.

Since *Johnson*, the Ninth Circuit has consistently applied the four-factor test to determine whether *Feres* bars a particular suit. *See Spletstoser v. Hyten*, 44 F.4th 938, 948 (9th Cir. 2022); *Jackson v. Tate*, 648 F.3d 729, 733 (9th Cir. 2011); *Schoenfeld v. Quamme*, 492 F.3d 1016, 1017 (9th Cir. 2007); *McConnell v. United States*, 478 F.3d 1092, 1093 (9th Cir. 2007); *Costo v. United States*, 248 F.3d 863, 864 (9th Cir. 2001); *Dreier v. United States*, 106 F.3d 844, 845–46 (9th Cir. 1996); *Bon v. United States*, 802 F.2d 1092, 1095 (9th Cir. 1986); *Johnson v. United States*, 704 F.2d 1431, 1436 (9th Cir. 1983); *Latchum v. United States*, 183 F. Supp. 2d 1220, 1231 (D. Haw. 2001), *aff'd*, 65 Fed. Appx. 171 (9th Cir. 2003).

As a threshold matter, the Government's argument that the *Johnson* factors do not apply to this case is wrong. The Ninth Circuit has found reversible error where the district court does not analyze claims under the *Johnson* factors. *Baldonado v. United States*, 320 Fed. Appx. 787, 788 (9th Cir. 2009).

As set forth below, each factor weighs in favor of the *Whaley* plaintiffs.

13

## II.    The private nature of the plaintiffs' use of water in family activity weighs against a *Feres* bar.

According to the Ninth Circuit, the most important Johnson factor is the fourth: the nature of the plaintiffs' activities at the time of the negligence. *Schoenfeld*, 492 F.3d at 1025; *Johnson*, 704 F.2d at 1439. There can be no real dispute here that this factor overwhelmingly supports the plaintiffs.

At the time of the Government's negligence, the *Whaley* plaintiffs were spending their off-duty time, many on Thanksgiving holiday, in their homes, showering, bathing, and preparing food for their families. When Colonel Whaley was at home bathing her special needs child and Chief Thompson-Watson was preparing dinner for her family, they were not engaged in activities "related in some relevant way" to the scope of their military service, *Schoenfeld*, 492 F.3d at 1020; *see Compl.* at xxiii, ¶ 64, 72, 79, 86, 93, but rather were engaged in "purely personal" activities. *Johnson*, 704 F.2d at 1440.

How one spends one's family time in the home is "at the essence of an individual's personal life." *Spletstoser*, 44 F.4th at 957. And contrary to the Government's assertions, courts have found that *Feres* does not bar claims for injuries that occurred in military housing while service members were off duty and engaged in personal activities. *See, e.g., Hall v. United States*, 130 F. Supp. 2d 825, 829 (S.D. Miss. 2000) (wrongful death claim of service member who died of carbon-monoxide poisoning in his military house not barred by *Feres* because the

14

service member was asleep while off duty for the weekend, a "purely personal

activity"); *Elliott By & Through Elliott v. United States*, 877 F. Supp. 1569, 1577

(M.D. Ga. 1992) (no *Feres* bar when service member was engaged in a "purely

personal" activity, namely, watching television, in his home).

Indeed, most of the *Whaley* plaintiffs are parents, who were mothering and

fathering at home at the time of the fuel release and their resulting injuries.

"Although she is a servicewoman, a mother cannot be confined to her military

status" in the moments when she is acting, not in service of the country, but to care

for her children. *Atkinson v. United States*, 825 F.2d 202, 207 (9th Cir. 1987)

(Noonan, J., concurring).

Importantly, at the time of the government's negligence, the *Whaley*

plaintiffs were "not subject in any real way to the compulsion of military orders or

performing any sort of military mission" when they were bathing their children and

cooking Thanksgiving dinner. *Spletstoser*, 44 F.4th at 947 (quoting *Johnson*, 704

F.2d at 1439-40). Instead, they "stood in exactly the same position as a civilian"

water customer using tap water in their homes and "could just as easily been

injured had [they] never worn a uniform at all." *Id*. (quoting *Johnson*, 704 F.2d at

1439); *see also Green v. Hall*, 8 F.3d 695, 700 (9th Cir. 1993) (injury was not

"incident to service" when the plaintiff was engaged in a "distinctly nonmilitary

15

act" at the time of the negligence). This is especially true here, where civilians *were* injured in the very same homes from the very same negligence.

Nor were the plaintiffs' activities at the time of the injury "of the sort that could harm the disciplinary system if litigated in a civil action." *Schoenfeld*, 492 F.3d at 1025 (quoting *Johnson,* 704 F.2d at 1439). The Government's negligence in operating or striking the valve did not implicate any close military judgment call. "[T]here can be no doubt that if [the Navy] had engaged in the same conduct with [civilian water customers], [t]he[y] would have been subject to legal action." *Spletstoser*, 44 F.4th at 957. And, in fact the Navy was subject to legal action by civilians for which it is now charged with damages.

Moreover, the housing communities in which the *Whaley* plaintiffs lived encompassed civilians and were open to members of the public, and the *Whaley* plaintiffs were in the same position as their civilian counterparts when they drank contaminated water.[2] *Compare Schoenfeld*, 492 F.3d at 1024 (activity, driving on road near base, not incident to service where the road was partially open to members of the public), *and Dreier*, 106 F.3d at 853 (activity not incident to service where serviceman was engaged in a recreational activity in an on-base area

---

[2] *See supra* note 3; *Housing Referral & Brief for Other Eligible Tenant/Non-Active-duty Packet*; *Non-Federal Civilians in Navy Housing (Procured Lodging) Financial Assistance*; Compl. at xxiii, ¶ 93.

that was also open to members of the public), *with Coffey v. United States,* 455

F.2d 1380 (9th Cir. 1972) (activity, driving on road near base, incident to service

where there was no indication that the road was open to members of the public),

*and Bon*, 802 F.2d at 1095 (activity incident to service where serviceman was

engaged in a recreational activity on military property open only to members of the

military and while subject to Special Service Department Guidelines).

In sum, because "there is no relevant relationship" between the service

member's purely personal activities, bathing their children and cooking for their

families, while they were at home in a community open to civilians, and "the

military interests that might be jeopardized by civil suits, the *Feres* doctrine cannot

bar recovery." *Johnson*, 704 F.2d at 1440.

### III.    The location of the tortious activity weighs against a *Feres* bar.

The Ninth Circuit has held that the situs of the negligence is another factor

in assessing whether an injury was "incident to service" under *Feres. See*, *e.g.*,

*Johnson*, 704 F.2d at 1436. But the Ninth Circuit has also rejected the "myopic

view" that whether a negligent act occurred on or off base is dispositive. *Id*. When

the situs of the negligent act has little or nothing to do with the service of the

injured party, the on-base/off-base distinction carries little weight. *Id*.

In this case, the Government has contended that the negligence took place by

civilians employed by the Navy at the Red Hill fuel facility. That facility has "little

17

or nothing to do" with the service of the plaintiffs, who do not work at that facility (with one exception) and were injured while off-duty in their homes. The court must examine the "function the soldier was performing at the time of the injury" to ascertain how to weigh this *Johnson* factor. *Johnson*, 704 F.2d at 1437. The functions that the *Whaley* plaintiffs were performing at the time of their injuries include bathing, showering, brushing their teeth, drinking, and cooking dinner in their family housing. The situs of the negligence, a military-owned fuel depot used for operational purposes, has no connection with these everyday, off-duty activities of families in their family homes.

Ninth Circuit case law supports this conclusion. In *Johnson*, the court found that, although the situs of the negligence was on-base, the plaintiff was not barred recovery because "the connection between the situs of the negligence . . . and Johnson's military service [wa]s so tenuous that location [wa]s not an important factor." *Id.* Similarly, in *Schoenfeld*, the court gave little weight to the on-base situs of the negligence because the plaintiff's activity, riding in a car to mail letters, launder clothes, and eat lunch was "substantially unrelated to his military service." *Schoenfeld*, 492 F.3d at 1023.

Moreover, the housing communities in which the *Whaley* plaintiffs lived encompassed civilians and were open to members of the public, and the *Whaley* plaintiffs were in the same position as their civilian counterparts when they drank

18

contaminated water.[3] Indeed, some of the civilians and service members on the waterline did not even live in military-owned housing. While the Government dismisses that distinction, it matters in this Circuit. Applying the *Johnson* factors, the Ninth Circuit has considered whether the place of injury was open to members of the public. *Compare Dreier*, 106 F.3d at 853 (activity not incident to service where serviceman was engaged in a recreational activity in an on-base area that was also open to members of the public), *with Bon*, 802 F.2d at 1095 (activity incident to service where serviceman was engaged in a recreational activity on military property open only to members of the military and while subject to Special Service Department Guidelines).

The Government contends that this case is indistinguishable from *Feres* itself because the injuries occurred while the plaintiffs were in military housing. Govt. Br. at 16. But *Feres* concerned a serviceman who was injured in the barracks—not a family housing community open to civilians. *See Feres*, 340 U.S. at 137 ("Decedent perished by fire in the barracks at Pine Camp, New York, while on active-duty in service of the United States."). The barracks is military housing for single servicemen or enlisted service members in basic training. Service

---

[3] *See supra* note 3; *Housing Referral & Brief for Other Eligible Tenant/Non-Active-duty Packet*; *Non-Federal Civilians in Navy Housing (Procured Lodging) Financial Assistance*; Compl. at xxiii, ¶ 93.

19

members living in the barracks are subject to oversight and discipline, including weekly room inspections, quiet hours, visiting rules, and cleanliness standards.

By contrast, the *Whaley* plaintiffs were injured, not while "quartering in barracks," but rather by their personal use of water in family homes, engaging in activities indistinguishable from other waterline customers, such as showering, bathing, and cooking. See Compl. at xxiii, ¶ 72, 79. Most of these homes were off-base and in areas accessible to the general public. See Compl. at xxiii, and ¶ 63, 93. The military housing at issue here is managed by private companies that serve as landlords—unlike the barracks. *See supra* n. 1 (describing private partnership).

Moreover, the Government's Brief does not distinguish between *Whaley* plaintiffs in military family housing and *Whaley* plaintiffs who lived in private housing in civilian neighborhoods on the Navy water line. As a result, the Government essentially argues that because the Government provided the water, it cannot be liable to any service member under any circumstances. That is not the law, and certainly not so in the Ninth Circuit.

To be sure, the Government also likens this case to *Gros v. United States*, 232 F. App'x 417 (5th Cir. 2007) and *Clendening v. United States*, 19 F.4th 421 (4th Cir. 2021) concerning Camp LeJeune. First, there was no evidence in those cases that the housing at issue was open to civilians or accessible to members of the public—a factor that is significant in the Ninth Circuit. Second, these cases are

20

inconsistent with *Johnson* and its progeny that focuses the *Feres* inquiry on the private nature of the activity at the time of injury. *See Johnson*, 704 F.2d at 1437.

**IV.    The duty status of the plaintiffs weighs against a *Feres* bar.**

Applying the next *Johnson* factor, the Ninth Circuit has explained, "In and of itself, . . . active-duty status is not relevant to our inquiry. . . [T]he important question is whether the service member on active-duty status was engaging in an activity that is related in some relevant way to his military duties." *Schoenfeld*, 492 F.3d at 1020; *Spletstoser*, 44 F.4th at 954; *Johnson*, 704 F.2d at 1437–38.

In looking at the particular facts of the *Whaley* plaintiffs' case, it is clear that the service-member plaintiffs were not engaged in activities related to their military duties at the time of their injuries. While they were showering, bathing their children, drinking water, and cooking in their homes, they were not following military orders or on a military mission. These activities were done as a part of their lives as members of a family, and not as a part of their military service. As the Second Circuit articulated in *Taber v. Maine*, "[t]here is nothing military about . . . having dinner with [a] companion's family at their home." 67 F.3d 1029, 1051 (2d Cir. 1995).

The *Whaley* plaintiffs are like Johnson, who while bartending, "was performing a non-military job in what was essentially a civilian context." *Johnson*, 704 F.2d at 1437. They are also akin to "Spletstoser, preparing for bed in her

21

private hotel room," who "'was in the same position as any civilian would have been at the time.'" *Spletstoser*, 44 F.4th at 955 (quoting *Dreier*, 106 F.3d at 853). This *Johnson* factor too weighs against a *Feres* bar to recovery.

> **V.    Personal use and consumption of tap water is not a "benefit incident to military service."**

In applying this *Johnson* factor, the Ninth Circuit considers "the benefit of being permitted to participate in the activity that led to the injury." *Schoenfeld*, 492 F.3d at 1024. The critical question is whether the benefit is available to the plaintiff "solely by virtue of his status as a serviceman." *Id*. at 1025 (quoting *Millang v. United States*, 817 F.2d 533, 535 (9th Cir. 1987)).

Here, the *Whaley* plaintiffs were injured because of their consumption of tap water in their homes. Compl. at 2, 23, 58-60. The housing encompassed active-duty service members, but also civilians, including family, dependents, civilian civil servants, employees of the state and United States government, retired officers, and retired government employees.[4] In fact, the Government makes no distinction in its brief as to service members who lived in private housing that was not provided by the military but was nevertheless on the Navy water line.

In any event, the tap water that each *Whaley* plaintiff consumed was from the same source as the one that civilians consumed. The provision of tap water

22

cannot be a "benefit incident to service" in this case because that same water line reached civilians and civilian neighborhoods. In consuming the tap water in their homes, the *Whaley* plaintiffs stood in the same position as any civilian water customer or civilian family member. *See Johnson*, 704 F.2d at 1439.

Finally, any medical benefits or other compensation received by the *Whaley* plaintiffs does not preclude recovery under the FTCA in this Circuit. The Ninth Circuit has recognized that "compensation received on account of the resulting injury is a 'benefit' of military status." *Schoenfeld*, 492 F.3d at 1024. The receipt of such benefits, however, does not necessitate a finding that a *Feres* bar applies to a service member's claims. *Schoenfeld*, 492 F.3d at 1024; *United States v. Brown,* 348 U.S. 110 at 113 (1954). In *Brooks v. United States*, the Supreme Court explained that, "[u]nlike the usual workman's compensation statute . . . there is nothing in the Tort Claims Act or the veterans' laws which provides for exclusiveness of remedy." *Id*. at 53. The court went on to note that "the amount payable under servicemen's benefit laws [could] be deducted, or taken into consideration when the serviceman obtains judgment under the Tort Claims Act." *Id*. at 53.

Therefore, to the extent that the *Whaley* plaintiffs have received any medical or disability benefits as a result of their service, those benefits do not preclude recovery under the FTCA.

23

## CONCLUSION

Because the *Whaley* plaintiffs were engaged in personal, private, intimate activity at the time of their injuries from toxic water over Thanksgiving weekend, the United States is liable to them for its negligence—just as it is liable to their civilian counterparts. No *Feres* bar applies. The Court should deny the Government's Motion to Dismiss.

DATED: Honolulu, Hawaiʻi, February 27, 2026.

/s/ Lyle Hosoda                    /s/ Frederick C. Baker
LYLE S. HOSODA                     FREDERICK C. BAKER
SPENCER J. LAU                     CYNTHIA A. SOLOMON
                                   JAMES W. LEDLIE
/s/ Kristina S. Baehr              KRISTEN HERMIZ
KRISTINA S. BAEHR                  SARA O. COUCH
MARY M. NEUSEL

                                   *Attorneys for Plaintiffs*

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was

filed and served on counsel of record via the U.S. District Court's CM/ECF

electronic filing system.

/s/ Lyle Hosoda
Lyle Hosoda