J. PATRICK GLYNN, Director
ERIC REY, Trial Attorney
Environmental Tort Litigation
Civil Division, U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-5145
Email: eric.a.rey@usdoj.gov
*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 22-cv-00397-LEK-KJM<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS *WHALEY* FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION |
| JESSICA WHALEY, et al.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 23-cv-00457- LEK-KJM |
| JACLYN HUGHES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO. 24-cv-00059-LEK-KJM |

**REPLY IN SUPPORT OF MOTION TO DISMISS**
***WHALEY* FIRST AMENDED COMPLAINT FOR**
**LACK OF SUBJECT-MATTER JURISDICTION**

**TABLE OF CONTENTS**

**PAGE(s)**

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................2

I.   The Court's *Feres* Analysis Should Begin and End with *Feres* Itself and the
Camp Lejeune Cases that Dismissed Identical Claims. .........................................2

II.   Even If the Court Were to Apply the Ninth Circuit's Four-Factor Test,
Plaintiffs' Claims Are Still *Feres*-Barred...........................................................6

A.  Factor 1 (Place Where the Tortious Act Occurred) Weighs in Favor of
the *Feres* Bar.............................................................................................7

B.  Factor 2 (Duty Status) Weighs in Favor of the *Feres* Bar. .......................9

C.  Factor 3 (Benefits Accruing Due to Status as a Service Member) Weighs
in Favor of the *Feres* Bar............................................................................10

D.  Factor 4 (Nature of the Activities When Tortious Act Occurred) Weighs
in Favor of the *Feres* Bar............................................................................13

CONCLUSION .............................................................................................15

# TABLE OF AUTHORITIES

Page(s)

*Baldonado v. United States*,
  320 F. App'x 787 (9th Cir. 2009)......................................................................3

*Bon v. United States*,
  802 F.2d 1092 (9th Cir. 1986) ................................................................ 5, 12, 13

*Brooks v. United States*,
  337 U.S. 49 (1949) ..........................................................................................11

*Clendening v. United States*,
  19 F.4th 421 (4th Cir. 2021)..................................................................... passim

*Costo v. United States*,
  248 F.3d 863 (9th Cir. 2001) .................................................................... passim

*Daniel v. United States*,
  889 F.3d 978 (9th Cir. 2018).........................................................................2, 6

*Feres v. United States*,
  340 U.S. 135 (1950) ...........................................................................................2

*Foster v. Dep't of the Navy*,
  2020 WL 1542092 (E.D.N.C. Mar. 31, 2020).................................................3

*Green v. Hall*,
  8 F.3d 695 (9th Cir. 1993) .................................................................................8

*Gros v. United States*,
  232 F. App'x 417 (5th Cir. 2007)......................................................................3

*Hatzlachh Supply Co. v. United States*,
  444 U.S. 460 (1980) .........................................................................................11

*In re Camp Lejeune N. Carolina Water Contamination Litig.*,
  263 F. Supp. 3d 1318 (N.D. Ga. 2016) .............................................................4

*Johnson v. United States*,
704 F.2d 1431 (9th Cir. 1983) ............................................................................. 1, 11

*Lanus v. United States*,
492 F. App'x 66 (11th Cir. 2012) ....................................................................... 4, 10

*Latchum v. United States*,
65 F. App'x 171 (9th Cir. 2003) ...................................................................... passim

*Latchum v. United States*,
183 F. Supp. 2d 1220 (D. Haw. 2001) ............................................................ passim

*McConnell v. United States*,
478 F.3d 1092 (9th Cir. 2007) ......................................................................... 12, 14

*Perez v. United States*,
2010 WL 11505507 (S.D. Fla. Mar. 1, 2010) ......................................................... 3

*Preferred Ins. Co. v. United States*,
222 F.2d 942 (9th Cir. 1955) .................................................................................. 8

*Ritchie v. United States*,
733 F.3d 871 (9th Cir. 2013) .................................................................................. 2

*Schoenfeld v. Quamme*,
492 F.3d 1016 (9th Cir. 2007) ............................................................................... 11

*Spletstoser v. Hyten*,
44 F.4th 938 (9th Cir. 2022) ......................................................................... 2, 8, 12

*Stencel Aero Engineering Corp. v. United States*,
431 U.S. 666 (1977) ............................................................................................... 15

*United States v. Johnson*,
481 U.S. 681 (1987) ...................................................................................... 7, 11, 15

*Veillette v. United States*,
615 F.2d 505 (9th Cir. 1980) ................................................................................... 5

**INTRODUCTION**

Contrary to Plaintiffs' claim, the *Feres* doctrine is not discretionary: "When the *Feres* doctrine bars a suit, the federal courts **must** dismiss the case because the United States has not waived its sovereign immunity." *Johnson v. United States*, 704 F.2d 1431, 1435 n.2 (9th Cir. 1983) (emphasis added). As detailed in the United States' Motion (Dkt. No. 671-1; Mot.), *Feres* itself, identical cases involving water contamination at the Marine Corps' Camp Lejeune, and other analogous cases arising from the negligent operation of military assets all establish that the *Feres* doctrine bars Plaintiffs' claims arising from the Navy's negligent operation of its strategic Red Hill fuel reserve and the resulting impact on their military housing.

In their Opposition (Dkt. No. 684; Opp'n), Plaintiffs largely ignore these cases and instead rely on cases involving the negligent operation or maintenance of a bar (*Johnson*), a wastewater channel (*Dreier*), or a roadway guardrail (*Schoenfeld*), as well as an intentional tort for sexual assault in a civilian hotel (*Spletstoser*). Opp'n at PageID.47634-39. Such cases are inapt comparisons for their efforts to establish novel FTCA liability for servicemembers' claims arising from the negligent operation of military assets. Courts also have rejected Plaintiffs' two main additional arguments as either irrelevant (civilians' access to military housing) or too narrow an inquiry (what discrete act Plaintiffs were doing the precise moment they allegedly were injured). The Court should dismiss Plaintiffs' claims under the *Feres* doctrine.

1

**ARGUMENT**

Pursuant to the *Feres* doctrine, "'the Government is not liable under the Federal Tort Claims Act [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.'" *Ritchie v. United States*, 733 F.3d 871, 874 (9th Cir. 2013) (quoting *Feres v. United States*, 340 U.S. 135, 146 (1950)); Mot. at PageID.47392 (detailing the facts and allegations in *Feres*). The Court's analysis of whether the *Feres* doctrine bars Plaintiffs' claims should "begin[] and end[]" with *Feres* and the Courts of Appeals' Camp Lejeune cases (*Clendening*; *Gros*) given the significant overlap between these cases and Plaintiffs' claims. *Daniel v. United States*, 889 F.3d 978, 982 (9th Cir. 2018) ("comparison of fact patterns to outcomes in cases that have applied the *Feres* doctrine is the most appropriate way to resolve *Feres* doctrine cases") (citation omitted). Even if the Court were to consider the Ninth Circuit's four *Feres* factors, those factors still bar Plaintiffs' claims, despite the Opposition's failure to apply them properly.

I.    **The Court's *Feres* Analysis Should Begin and End with *Feres* Itself and the Camp Lejeune Cases that Dismissed Identical Claims.**

Plaintiffs ignore well-founded Ninth Circuit precedent, which "dictates that 'comparison of fact patterns to outcomes in cases that have applied the *Feres* doctrine is the most appropriate way to resolve *Feres* doctrine cases.'" *Daniel*, 889 F.3d at 982 (citation omitted)); *accord Spletstoser v. Hyten*, 44 F.4th 938, 953 (9th Cir. 2022). Consequently, the Ninth Circuit has held that the *Feres* doctrine

2

applies—without applying the four *Feres* factors used to analyze novel cases—because a closely analogous case reached the same result. *See infra* at 6 (citing *Daniel*, *Costo*, and *McAllister*). Plaintiffs are wrong that *Baldonado v. United States*, requires the application of the four factors in every case. Opp'n at PageID.47640.[1]

Confronted with identical FTCA claims from servicemembers who alleged exposure to contaminated drinking water at Camp Lejeune, multiple Courts of Appeals have found that "it is hard to see how [Plaintiffs'] exposure claims are meaningfully different from *Feres* itself." *Clendening v. United States*, 19 F.4th 421, 428 (4th Cir. 2021); *id.* at 425 (alleging contaminated drinking water from, among other things, the Marine Corps' on-base fuel tanks); *Gros v. United States*, 232 F. App'x 417, 418-19 (5th Cir. 2007) (finding "there is little to distinguish this case from *Feres* itself" and applying the *Feres* bar when an active-duty servicemember alleged exposure "to toxic chemicals while showering or drinking water at his home on the base"); *see also Foster v. Dep't of the Navy*, 2020 WL 1542092, at *3 (E.D.N.C. Mar. 31, 2020) ("The instant case is indistinguishable from *Feres* itself.").[2] The Court should reach the same conclusion here. *See* Mot. at

---

[1] Rather, in *Baldonado*, the Ninth Circuit affirmed the district court's *Feres* decision and remanded to allow the *pro se* plaintiff to amend his complaint, noting it was "deficient in its current form." 320 F. App'x 787, 788 (9th Cir. 2009).

[2] *See also Perez v. United States*, 2010 WL 11505507, at *4 (S.D. Fla. Mar. 1, 2010) ("The negligence alleged in *Feres*—the government's failure to maintain safe premises for soldiers living on a military base—is very similar to, and in my view

3

PageID.47394 (comparing facts in *Feres* to Plaintiffs' allegations).

Plaintiffs attempt to distinguish these Camp Lejeune cases by arguing that they did not involve housing accessible to civilians. Opp'n at PageID.47647. Plaintiffs are wrong. *In re Camp Lejeune N. Carolina Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1325 & 1341-42 (N.D. Ga. 2016) (*Feres* bar applied to servicemembers "who allege they were exposed to toxic substances in the water supply while living at Marine Corps Base Camp Lejeune in North Carolina," even though their civilian family members also alleged exposure to the same contamination), *aff'd on other grounds*, 774 F. App'x 564 (11th Cir. 2019).

Plaintiffs also cannot distinguish *Feres* or the Camp Lejeune cases on the basis that their military housing was open to certain civilians. Opp'n at PageID.47646-47. In *Lanus v. United States*, the Eleventh Circuit held that this exact argument "fails to differentiate the case from *Feres*," as "[t]he *Feres* Court made no mention of whether the decedent's barracks also housed civilians from time to time, and the relevance of the distinction remains unclear." 492 F. App'x 66, 70 (11th Cir. 2012).

The Ninth Circuit has long confirmed that this distinction is irrelevant. For example, in *Bon v. United States*, the Ninth Circuit held that the *Feres* doctrine applied when an active-duty servicemember was injured while renting a canoe from

---

legally indistinguishable from, the negligence alleged here—the government's failure to maintain a clean drinking water supply at a military base . . . . .").

the Special Services Center, even though the Center was also open to "employees of the Department of Defense and their guests and dependents." 802 F.2d 1092, 1095 (9th Cir. 1986); *Costo v. United States*, 248 F.3d 863, 865 & 867 (9th Cir. 2001) (*Feres* applied, even though the recreational program was open to "navy personnel and their family members"). Likewise, in *Latchum v. United States*, the District of Hawaii held that the *Feres* doctrine barred claims arising from the shooting of a servicemember while he "stood on the porch of the cabin he and his family were renting" at the Waianae Army Recreational Center (WARC), even though the WARC was open to "civilians (DOD employees and federal employees)." 183 F. Supp. 2d 1220, 1222 & 1233 (D. Haw. 2001), *aff'd,* 65 F. App'x 171 (9th Cir. 2003). On appeal, the Ninth Circuit agreed: "The use of the cabins by some civilian employees of the Department of Defense does not undercut this conclusion." 65 F. App'x at 172; *accord Veillette v. United States*, 615 F.2d 505, 507 (9th Cir. 1980).[3]

The relevant question is not whether civilians had access to the military housing, but whether Plaintiffs' housing "was provided" to Plaintiffs "as a benefit of military service." *Costo*, 248 F.3d at 867; *Bon*, 802 F.2d at 1095 (*Feres* bar applied to a canoe trip because it was "an activity provided for the benefit of [plaintiff's] military service"); *Latchum*, 183 F. Supp. 2d at 1233 ("Latchum's use

---

[3] As in *Bon* and *Latchum*, Plaintiffs' newly appended documents, *see* Opp'n at n.1, confirm that only certain, specified civilians could rent the military housing, such as DOD employees and contractors, retired servicemembers, and first responders.

5

of WARC can similarly be said to have been a benefit that derived from his military status."), *aff'd* 65 F. App'x at 172 (affirming the *Feres* bar in part "because [Latchum's] use of WARC was a benefit of his military status"). Plaintiffs do not disclaim that their military housing was provided as a benefit of their service. It was.

Since Plaintiffs' claims are indistinguishable from *Feres*, *Clendening*, 19 F.4th at 428, the Court should conclude that the *Feres* doctrine applies without resorting to the Ninth Circuit's four factor test. The Ninth Circuit has done so repeatedly. *Daniel*, 889 F.3d at 982 (holding that its *Feres* "analysis begins and ends with" *Atkinson v. United States*, given the significant overlap between the two cases); *Costo*, 248 F.3d at 867 ("Our [*Feres*] inquiry begins—and, in large measure, ends—with *Bon*"); *accord Est. of McAllister v. United States*, 942 F.2d 1473, 1478 (9th Cir. 1991). Likewise, here, the Court's analysis "begins and ends" with the holdings of *Feres*, *Clendenning*, and *Gros*, barring servicemembers claims for negligence stemming from contaminated water and military housing conditions.

## II.   Even If the Court Were to Apply the Ninth Circuit's Four-Factor Test, Plaintiffs' Claims Are Still *Feres*-Barred.

Even if the Court were to deploy the Ninth Circuit's four-factor "totality of the circumstances" *Feres* test, it would result in the same conclusion: the *Feres* doctrine bars Plaintiffs' claims. *Daniel*, 889 F.3d at 981; *see* Mot. at PageID.47393 (listing factors). The Court should reject Plaintiffs' arguments to the contrary.

## A. Factor 1 (Place Where the Tortious Act Occurred) Weighs in Favor of the *Feres* Bar.

The first factor—the situs of the negligence—strongly weighs in favor of the *Feres* bar. Notably, Plaintiffs concede that the "situs of the negligence [is] a military-owned fuel depot used for operational purposes." Opp'n at PageID.47645. This should be dispositive as to the outcome of the first factor. *Costo*, 248 F.3d at 868 (for the first factor, the "appropriate consideration is the 'situs of the negligence,' not the location of the accident"); Mot. at PageID.47399.

However, Plaintiffs argue that the first factor weighs against the *Feres* bar because they did not work at Red Hill. Opp'n at PageID.47645. But that is not the test. *Costo*, 248 F.3d at 868 ("military-sponsored activities fall within the *Feres* doctrine, regardless of whether they are related to military duties"). Moreover, Plaintiffs' new test defies numerous Ninth Circuit precedents, including *Bon* and *Latchum*, as well as U.S. Supreme Court's holding in *United States v. Johnson*, that the *Feres* doctrine still applies when the complaint alleges negligence by a "civilian agency of the Federal Government." 481 U.S. 681, 685 (1987). In none of these cases did the plaintiff servicemember work for the agency or military program that was allegedly negligent, but the *Feres* bar still applied and—for *Bon* and *Latchum*—the courts held that the first factor in particular weighed in favor of the *Feres* bar.

Moreover, the negligence at issue at Red Hill bears "a real and substantial

7

relationship to the military service of any servicemember assigned to [Joint Base Pearl Harbor-Hickam (JBPHH)] whether or not he has any direct part in the maintenance or operation of" Red Hill. *Preferred Ins. Co. v. United States*, 222 F.2d 942, 948 (9th Cir. 1955) (holding that the *Feres* doctrine applied when an Air Force plane crash destroyed servicemembers' trailers at the base: "The damage to the trailers resulted directly from the flight of an Air Force airplane operated in the course of military service."). In comparison to the bar in *Johnson* or the sexual assault in *Spletstoser*,[4] there is a much more "substantial relationship to [] military service," *id.*, in the Navy's negligence while operating its strategic Red Hill fuel reserve for the entire Pacific, *Whaley*, Dkt. No. 236 (FAC) ¶ 6. Red Hill provided the fuel "necessary for powering military assets," such as "marine diesel for ships and two types of jet fuel." FAC ¶ 7. These facts also distinguish this case from *Green v. Hall*, 8 F.3d 695 (9th Cir. 1993) (car crash while driving to get breakfast), and the out-of-circuit district court carbon monoxide cases Plaintiffs cite. Opp'n at PageID.47641-42. This case provides even more of a nexus to military service than

---

[4] In *Spletstoser*, that the alleged tort was the intentional tort of sexual assault "weigh[ed] heavily" on the panel's analysis, 44 F.4th at 954, and distinguished *Spletstoser* from other cases where negligent conduct arose during a military activity, *id.* at 958 ("Intentional tortious and unconstitutional acts directed by one servicemember against another which *further no conceivable military purpose* and are not perpetrated during the course of a military activity surely are past the reach of *Feres* . . . .") (citation omitted). The tortious activities here, in contrast, arose from the negligent operation of a Navy fuel facility integral to JBPHH military operations.

that in the military recreational programs to which the Ninth Circuit held *Feres*

applied in *Bon*, *Costo*, *Latchum*, and *McConnell*. The same would apply if the Court

were to view this factor in terms of the military housing in which Plaintiffs were

allegedly exposed.[5] *Clendening*, 19 F.4th at 428 ("the military's provision of water

and accommodations to its troops is clearly activity 'incident to service'"); *but see*

*supra* at 7 & Mot. at PageID.47399-400 (proper focus is the situs of the negligence).

### B.     Factor 2 (Duty Status) Weighs in Favor of the *Feres* Bar.

The second factor—Plaintiffs' duty status—weighs in favor of applying the

*Feres* bar because they were active-duty servicemembers. Mot. at PageID.47401-

02. The Ninth Circuit has held that this factor weighs in favor of applying *Feres*

when active-duty servicemembers, while not "engaged in an official duty, [] were

taking part in an activity provided for the benefit of their military service." *Bon*, 802

F.2d at 1095 (canoeing); *accord Costo*, 248 F.3d at 867 (rafting); Mot. at

PageID.47402 & 47406-08 (Plaintiffs were partaking in activity provided as a

benefit of their military service); *infra* at 13-14 (same). Even when active-duty

servicemembers were not utilizing a benefit of their military service when injured

(which is not the case here), the Ninth Circuit still has found that this factor "cuts in

---

[5] Plaintiffs criticize the United States for not distinguishing between those Plaintiffs who lived in military housing and those who lived in private housing. Opp'n at PageID.47647. Nor does the First Amended Complaint. FAC ¶ 1139 (alleging that "[t]he United States is the occupier, owner, and possessor of . . . the housing which Plaintiffs leased and resided upon").

favor of applying *Feres*, but not strongly . . . ." *Schoenfeld v. Quamme*, 492 F.3d 1016, 1023 (9th Cir. 2007). Accordingly, Plaintiffs are incorrect that their allegedly off-duty status weighs against applying *Feres*. Opp'n at 47648-49.

Other Courts of Appeals have rejected identical attempts to distinguish *Feres* based on a plaintiff's off-duty status. For example, in *Gros*, the servicemember alleged he was exposed to contaminated water at Camp Lejeune "while showering or drinking water at his home on the base" and tried to distinguish *Feres* by arguing that his exposure occurred "during his off-duty hours." 232 F. App'x at 418. The Fifth Circuit rejected this argument, holding that "there is little to distinguish this case from *Feres*," as "[i]n *Feres,* the Supreme Court held that a serviceman was acting incident to service when he was killed in a fire while off-duty and sleeping in his barracks." *Id.* at 419. Similarly, in *Lanus*, the Eleventh Circuit held that *Feres* applied to FTCA claims arising from a servicemember's death in a fire originating from a stove he used for cooking while not on duty because "the decedent's status in *Feres* (on active duty and sleeping between on-duty shifts) is functionally similar to the active-duty liberty status" of the decedent. 492 F. App'x at 69-70.

## C.    Factor 3 (Benefits Accruing Due to Status as a Service Member) Weighs in Favor of the *Feres* Bar.

The third factor—the benefits accruing to the plaintiff because of his or her status as a service member—weighs in favor of the *Feres* bar. Although Plaintiffs

10

correctly cite *Schoenfeld* for the proposition that their receipt of medical, disability, and other benefits from the United States is not "a dispositive factor in the *Feres* analysis,"[6] they omit that the *Schoenfeld* panel held that "[t]he existence and receipt of these medical and disability benefits by [plaintiff] supports the application of the *Feres* doctrine . . . ." 492 F.3d at 1024 (citation omitted); Opp'n at PageID.47650 (citing *Schoenfeld*). Plaintiffs do not dispute that such benefits are available to, and have been utilized by, them. Nor could they. *E.g.*, Mot. at PageID.47405-06 (quoting Plaintiffs' allegations of their military medical care resulting from the spill).

Plaintiffs quote *Brooks v. United States*, 337 U.S. 49 (1949), to argue that their military benefits do not support applying *Feres*. Opp'n at PageID.47650. But *Brooks* predated the *Feres* doctrine and defies *United States v. Johnson*—the U.S. Supreme Court's most recent *Feres* decision—that reaffirmed *Feres*'s holding that "the existence of these generous statutory disability and death benefits is an independent reason why the *Feres* doctrine bars suit for service-related injuries." 481 U.S. 681, 689 (1987); *see also id.* at 690 ("[T]he Veterans' Benefits Act provided compensation to injured servicemen, which we understood Congress intended to be the sole remedy for service-connected injuries") (quoting *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 464 (1980)).

Finally, Plaintiffs contend that their consumption of water in their military

---

[6] In fact, "none of these factors is dispositive." *Costo*, 248 F.3d at 867.

housing was not a benefit incident to service. Opp'n at PageID.47649. But the Ninth Circuit has repeatedly held that recreational activities—including renting cabins—are benefits of military service due to "the value . . . to military morale and other military interests." *Latchum*, 183 F. Supp. 2d at 1233 (renting a cabin), *aff'd,* 65 F. App'x 171; *see also McConnell v. United States*, 478 F.3d 1092, 1096-1098 (9th Cir. 2007) (waterskiing); *Costo*, 248 F.3d at 868-869 (rafting); *Bon*, 802 F.2d at 1093 & 1095-96 (canoeing). By these measures, "the military's provision of water and accommodations to its troops is clearly activity 'incident to service.'" *Clendening*, 19 F.4th at 428. Indeed, "it has long been recognized . . . that military-sponsored activities fall within the *Feres* doctrine, regardless of whether they are related to military duties." *Costo*, 248 F.3d at 868.

Moreover, as Plaintiffs acknowledge, only a limited subset of civilians could lease the military housing at issue—*i.e.*, "family, dependents, civilian civil servants, employees of the state and United States government, retired officers, and retired government employees." Opp'n at PageID.47649. Consequently, the military housing here is more akin to the military-sponsored recreational activities that have been found to be benefits of service in *McConnell*, *Costo*, *Bon*, and *Latchum*, than the civilian hotel in *Spletstoser*. *Compare Spletstoser*, 44 F.4th at 956 ("any civilian could have booked the room"), *with Latchum*, 183 F. Supp. 2d at 1233 ("This case is similar to *Bon*, which noted that civilian DOD employees could use the Special

12

Services Center. . . . Latchum's use of WARC can similarly be said to have been a benefit that derived from his military status."), *aff'd,* 65 F. App'x at 172 ("The use of the cabins by some civilian employees of the Department of Defense does not undercut th[e] conclusion" that *Feres* applies); *accord Bon*, 802 F.2d at 1095; *see also supra* at 4-6 (civilians' access to the military housing does not distinguish this case from *Feres* and Plaintiffs do not dispute that they qualified for their military housing due to their active-duty status).

### D. Factor 4 (Nature of the Activities When Tortious Act Occurred) Weighs in Favor of the *Feres* Bar.

The fourth factor strongly supports applying *Feres* here because Plaintiffs were engaged in the same kind of activity when allegedly injured as the decedent in *Feres* itself—occupying military housing to which they were entitled because of their military service. Mot. at PageID.47392, 47394-97 & 47406; *supra* at 3-4. In response, Plaintiffs argue that the Court should limit its inquiry here to only what precise task Plaintiffs allegedly were doing in their military housing when they were allegedly injured. Opp'n at PageID.47641-44 (Plaintiffs were, *inter alia*, showering, bathing, and preparing food in their military housing when they were injured).

But Plaintiffs' narrow construction of the fourth factor defies *Feres* itself, in which the decedent was off-duty sleeping in his military housing when he died. *See supra* at 10 (the Fifth Circuit and the Eleventh Circuit refused to distinguish *Feres*

13

on these grounds in *Gros* and *Lanus*, respectively).

The District of Hawaii also expressly rejected Plaintiffs' approach in *Latchum*. There, plaintiffs contended that the "court should merely examine what Latchum was doing at the time he was shot" and that, since he "was merely standing on his porch," the fourth factor should weigh against applying *Feres*. 183 F. Supp. 2d at 1233-34. The *Latchum* court disagreed, "find[ing] that this argument too narrowly construes Latchum's actions." *Id.* at 1234. Instead, the court held that the fourth factor weighed in favor of applying *Feres* because Latchum was participating in a military sponsored recreational program (renting the cabin) when he was injured. *Id.* Likewise, in this case, the fourth factor weighs in favor of applying the *Feres* doctrine because Plaintiffs rented their military housing—like Latchum rented the cabin—as a benefit of their military service. *See supra* at 5-6.

Moreover, although Plaintiffs were allegedly off-duty in their military housing when they were injured, "this does not mean that [their activities] were unrelated to [their] military status" any more so than the "purely recreational" activities in *McDonnell*, *Costo*, and *Bon* that the Ninth Circuit held were still related to military duties and barred by *Feres*. Rather, "the military's provision of water and accommodations to its troops is clearly activity 'incident to service.'" *Clendening*, 19 F.4th at 428. Unlike *Spletstoser*, this case does not involve intentional torts committed outside of the course of military activity. *See supra* at 8 n.4.

14

Finally, Plaintiffs do not dispute that their claims will require the Court to "examin[e] acts of military personnel which were allegedly negligent with respect to other members of the armed services," *Ritchie*, 733 F.3d at 877 (citation omitted), including: (1) Major Feindt's claims that the military unlawfully retaliated against her due to her response to the November 2021 spill; (2) the military's alleged truancy case against Petty Officer Wallace; (3) the impact on Chief Thompson-Wallace of being ordered to participate in the spill response; and (4) Chief Petty Officer Jessup's alleged injuries from being ordered to enter the Red Hill Shaft during the response, Mot. at PageID.47407-08. The *Feres* doctrine bars such claims because "a suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission." *United States v. Johnson*, 481 U.S. 681, 691 (1987); *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671-72 (1977) (noting "the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty," especially given "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline") (citation omitted).

## CONCLUSION

The Court should dismiss Plaintiffs' FTCA claims for lack of subject-matter jurisdiction pursuant to the *Feres* doctrine.

15

DATED: March 20, 2026,

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Ass't Attorney General
Torts Branch

J. PATRICK GLYNN
Director
Environmental Tort Litigation

*/s/ Eric Rey*
ERIC REY, DC Bar No. 998615
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Environmental Tort Litigation
1100 L Street, NW
Washington, DC 20005
(202) 305-5145
eric.a.rey@usdoj.gov

*Attorneys for the United States*

16

## CERTIFICATE OF SERVICE

I hereby certify that, on March 20, 2026, I served counsel of record by filing

the foregoing using the Electronic Case Filing (ECF) system of this Court.

*/s/ Eric Rey*
ERIC REY