UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| PATRICK FEINDT, JR. et al., | CIV. NO. 22-00397 LEK-KJM |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| JESSICA WHALEY et al., | CIV. NO. 23-00457 LEK-KJM |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| JACLYN HUGHES et al., | CIV. NO. 24-00059 LEK-KJM |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS *WHALEY*
FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION**

Before the Court is Defendant United States of

America's ("United States") Motion to Dismiss Whaley First

Amended Complaint for Lack of Subject-Matter Jurisdiction, filed

on January 30, 2026 ("Motion"). [Dkt. no. 671.] The same motion was also filed in Whaley et al. v. United States of America, CV 23-00457 LEK-KJM ("Whaley"), and Hughes et al. v. United States of America, CV 24-00059 LEK-KJM ("Hughes"), cases that are consolidated with the instant case. See Order Granting United States' Motion to Consolidate, filed 4/11/24 (dkt. no. 413).

On February 27, 2026, Plaintiffs filed their memorandum in opposition to the Motion. [Dkt. no. 684.] The United States filed its reply on March 20, 2026. [Dkt. no. 707.] On March 31, 2026, an entering order was issued informing the parties of the Court's inclination to grant the Motion ("3/31 Inclination"). [Dkt. no. 718.] The Motion came on for hearing on April 9, 2026. For the reasons set forth below, the Motion is granted.[1]

**BACKGROUND**

The operative pleading in Whaley is the First Amended Complaint, [filed 8/11/25 (dkt. no. 236)]. This case arises out of the May 6 and November 20, 2021 fuel leaks from the United States Navy's ("the Navy") Red Hill Bulk Fuel Storage Facility

---

[1] Because the Motion seeks to dismiss the First Amended Complaint filed in Whaley, all subsequent docket number references will refer to the Whaley case docket, unless otherwise stated.

on Joint Base Pearl Harbor-Hickam ("Red Hill" and "JBPHH"). [First Amended Complaint at ¶¶ 4-49.] A detailed background of the facts at issue in the instant case is set forth in the Court's August 7, 2025 Findings of Fact and Conclusions of Law ("FOFCOL"). [Dkt. no. 235.[2]] The Court discusses only those facts relevant to the instant Motion.

The plaintiffs in Whaley ("Whaley Plaintiffs") are United States service members. See First Amended Complaint at pgs. xxii-xxiii; Mem. in Opp. at 1. During the November 2021 fuel release, the Whaley Plaintiffs lived in housing owned by the military. See, e.g., First Amended Complaint at ¶¶ 63, 71, 78, 86, 93; see also id. at ¶ 1139 ("The United States is the occupier, owner, and possessor of . . . the housing which Plaintiffs leased and resided upon."). Some of the housing was off base in areas accessible to the public, while some was on base. See id. at pg. xxiii. The United States also owns Red Hill, [id. at ¶ 1096,] as well as the JBPHH water line that pumped potable water to the military housing where the Whaley Plaintiffs resided, [id. at ¶¶ 9, 1139]. The Whaley Plaintiffs allege that they lived on the JBPHH water line during the November 20, 2021 fuel release and that they suffered, among other things, inconvenience, emotional distress, and personal

---

[2] The Court's FOFCOL is also available at 2025 WL 2254119.

3

injury because of the United States' negligence. [Id. at ¶¶ 101-1094.]

The Whaley Plaintiffs allege that on May 6, 2021, a civilian employee at Red Hill failed to follow protocol and "'specific Operations Orders'" and negligently released 19,000 gallons of jet fuel into a fire suppression discharge pipe at Red Hill. See id. at ¶¶ 11-13, 16. On November 20, 2021, an employee struck the fire suppression discharge pipe with a train cart. [Id. at ¶ 16.] The Whaley Plaintiffs contend that "[t]he Navy violated the Department of Defense requirement to use steel pipes for fuel transmission." [Id. at ¶ 22.] They also contend that, by striking the discharge pipe, the United States negligently released jet fuel into the environment and contaminated the Whaley Plaintiffs' drinking water source. See, e.g., id. at ¶¶ 16, 21, 1095-1102. The Whaley Plaintiffs state that, when the contaminated water entered their homes, they were not acting under any military order and were engaged in personal activities such as showering, bathing, and cooking food. They also state that they were not participating in any type of military-sponsored, recreational activity. See id. at pg. xxiii.

The United States moves to dismiss the Whaley Plaintiffs' First Amended Complaint on the grounds that the Whaley Plaintiffs' "claims 'arise out of or are in the course of activity incident to service,' and are thus barred under the

4

[Federal Tort Claims Act ('FTCA')]." [Motion, Mem. in Supp. at 1 (quoting Feres v. United States, 340 U.S. 135, 146 (1950)).] It admits that the FTCA waives the United States' sovereign immunity over tort claims, but it contends that this waiver is limited. See id. at 5. It notes that one such limit is the Feres doctrine, which it claims stands for the proposition that "the [United States] is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." See id. (quotation marks and citation omitted). The United States argues that this case is factually analogous to the facts at issue in Feres and therefore "the Feres bar clearly applies" to strip the Court of jurisdiction. See id. at 8.

Plaintiffs, on the other hand, argue that activities such as boiling potatoes for Thanksgiving dinner and washing baby bottles are not incident to military service. [Mem. in Opp. at 1.] They contend that the critical issue that must be resolved is determining whether the nature of the Whaley Plaintiffs' activities at the time of injury was personal in nature. They argue that their activities were purely personal and bear no relationship to their military service as service members. Thus, they contend, the Feres doctrine does not apply. See id. at 1, 14-17.

**STANDARDS**

## I.   Rule 12(b)(1) Motion to Dismiss

> Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to move for dismissal of an action for "lack of subject-matter jurisdiction[.]" "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009) (citation and quotation marks omitted). . . .
>
> . . . .
>
> "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Leite v. Crane, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation and some internal quotation marks omitted). "A 'factual' attack . . . contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. (citations omitted).

Pub. Int. Legal Found., Inc. v. Nago, CIV. NO. 23-00389 LEK-WRP, 2024 WL 3233994, at *2-3 (D. Hawaiʻi June 28, 2024) (some alterations in Pub. Int.). The United States brings a facial attack. See Motion, Mem. in Supp. at 5.[3] The Court therefore

---

[3] At the April 9, 2026 hearing, Plaintiffs provided the Court with a binder. The binder contained, among other things, the parties' memoranda, case law in support of the parties' memoranda, and the Court's 3/31 Inclination. At the end of the binder, following a tab labeled "Supplemental Info," Plaintiffs included several documents that were not appended to the parties' memoranda, were not included in the First Amended Complaint, and were not previously provided to the United

(. . . continued)

accepts as true the non-conclusory facts alleged in the First

Amended Complaint. <u>See</u> <u>Leite</u>, 749 F.3d at 1121.

## II.    <u>Sovereign Immunity</u>

"'Absent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit'" and deprives the

court of jurisdiction. <u>See</u> <u>Harger v. Dep't of Lab.</u>, 569 F.3d

898, 903 (9th Cir. 2009) (quoting <u>Dep't of the Army v. Blue Fox,</u>

<u>Inc.</u>, 525 U.S. 255, 260, 119 S. Ct. 687, 142 L. Ed. 2d 718

(1999)). As a result, the United States may challenge a federal

court's subject matter jurisdiction under Rule 12(b)(1) on the

basis of sovereign immunity. <u>See</u> <u>Pistor v. Garcia</u>, 791 F.3d

1104, 1111 (9th Cir. 2015) (collecting cases) ("Rule 12(b)(1) is

. . . a proper vehicle for invoking sovereign immunity from

suit." (citations omitted)).

> "Jurisdiction over any suit against the
> Government requires a clear statement from the
> United States waiving sovereign immunity,
> together with a claim falling within the terms of
> the waiver." <u>United States v. White Mountain</u>
> <u>Apache Tribe</u>, 537 U.S. 465, 472, 123 S. Ct. 1126,
> 155 L. Ed. 2d 40 (2003) (citations omitted).
> "[L]imitations and conditions upon which the
> Government consents to be sued must be strictly
> observed and exceptions thereto are not to be
> implied." <u>Soriano v. United States</u>, 352 U.S. 270,
> 276, 77 S. Ct. 269, 1 L. Ed. 2d 306 (1957).

------

States. Consequently, as the Court stated at the April 9, 2026
hearing, the Court does not consider the supplemental
information that Plaintiffs submitted to the Court in deciding
the Motion. <u>See</u> Transcript of Proceedings (4/9/26 hrg. on the
Motion), filed 4/15/26 (dkt. no. 320) ("4/9 Hrg. Trans."), at
29-30.

Mollison v. United States, 568 F.3d 1073, 1075 (9th Cir. 2009) (alteration in Mollison). The Feres doctrine is a "jurisdictional bar" to tort claims against the United States. See Daniel v. United States, 889 F.3d 978, 980 (9th Cir. 2018).

**DISCUSSION**

## I.    The *Feres* Doctrine

In Johnson v. United States, 704 F.2d 1431 (9th Cir. 1983), the Ninth Circuit Court of Appeals developed a four-factor test to determine whether the Feres doctrine applies in particular cases. See id. at 1436-41; see also Spletstoser v. Hyten, 44 F.4th 938, 947-53 (9th Cir. 2022) (surveying the Ninth Circuit's application of the four-factor test in Johnson and its progeny and explaining that "[i]n Johnson, 704 F.2d at 1436, we endeavored to provide a coherent framework for applying the Feres doctrine").[4] The four factors are:

1)    the place where the negligent act occurred;

---

[4] The United States argues that the Court need not apply the Johnson four-factor test because "[i]n this case, the alleged facts mirror those of Feres itself, and so the Feres bar clearly applies[.]" [Motion, Mem. in Supp. at 8.] Plaintiffs, on the other hand, assert that it would be reversible error for the Court to exclusively focus on Feres and ignore the Johnson factors. See Mem. in Opp. at 13 ("The Ninth Circuit has found reversible error where the district court does not analyze claims under the Johnson factors." (citation omitted)). The Court, however, need not decide whether it is free to rely exclusively on Feres or if it is bound to apply the Johnson factors because it would reach the same result regardless of the analytical framework.

2)    the duty status of the plaintiff when the
      negligent act occurred;

3)    the benefits accruing to the plaintiff
      because of his status as a service member;
      and

4)    the nature of the plaintiff's activities at
      the time the negligent act occurred.

Costo v. United States, 248 F.3d 863, 867 (9th Cir. 2001)

(citation omitted).

These factors "cannot be blindly applied to determine

whether an injury occurred in the course of activity incident to

service. The only way to decide whether an injury is incident to

service is to consider the facts of each individual case."

Jackson v. Tate, 648 F.3d 729, 734 (9th Cir. 2011) (citation and

internal quotation marks omitted). Furthermore, the Ninth

Circuit has "reached the unhappy conclusion that the cases

applying the Feres doctrine are irreconcilable, and thus,

comparison of fact patterns to outcomes in cases that have

applied the Feres doctrine is the most appropriate way to

resolve Feres doctrine cases." Costo, 248 F.3d at 867 (citation

and internal quotation marks omitted).

Accordingly, the Court compares the instant action to

actions where the United States and its military departments

were accused of negligently contaminating drinking water

resulting in service member injuries because such actions are

the most factually analogous to the dispute before the Court.

9

Federal courts in the Ninth Circuit and other circuits have applied the Feres doctrine to cases related to the Camp Lejeune water contamination crisis, see, e.g., Swanson v. United States, Case No. 3:18-cv-02148-JR, 2019 WL 7633157, at *1-2 (D. Or. Nov. 6, 2019);[5] Clendening v. United States, 19 F.4th 421, 425-32 (4th Cir. 2021); Foster v. Dep't of the Navy, NO. 5:19-CV-429-FL, 2020 WL 1542092 (E.D.N.C. Mar. 31, 2020); O'Connell v. Dep't of the Navy, Civil Action No. 10-10746-NMG, 2010 WL 5572928 (D. Mass. Dec. 21, 2010); Perez v. United States, CASE NO. 09-22201-CIV-JORDAN, 2010 WL 11505507 (S.D. Fla. Mar. 1, 2010). The Court also notes that, in the First Amended Complaint, the Whaley Plaintiffs draw a parallel between the instant action and the Camp Lejeune water contamination crisis. See First Amended Complaint at pg. 449 n.3 (describing the Camp Lejeune water contamination crisis as "another military water contamination case"). Thus, the Court looks to the Camp Lejeune cases in its analysis of the Feres issue. The Court now turns to a discussion of each Johnson factor.

## A.    Factor One – Situs of the Tort

The first factor requires the Court to examine where the negligent act occurred. See Johnson, 704 F.2d at 1436. There

---

[5] The magistrate judge's report and recommendation in Swanson, 2019 WL 7633157, was adopted by the district judge. 2020 WL 423384 (Jan. 24, 2020). The Ninth Circuit affirmed. 845 F. App'x 690 (9th Cir. 2021).

is no dispute that the Navy's negligent act took place at Red
Hill. See Mem. in Opp. at 18 (stating that "[t]he situs of the
negligence" is "a military-owned fuel depot used for operational
purposes," *i.e.*, Red Hill). While the Whaley Plaintiffs' alleged
injuries took place in their respective homes, "[t]he
appropriate consideration is the 'situs of the negligence.'" See
Costo, 248 F.3d at 868 (quoting Johnson v. United States, 704
F.2d at 1436).

Plaintiffs argue that the first factor "carries little
weight" in the instant action because Red Hill has a tenuous
connection to the Whaley Plaintiffs' military service. See Mem.
in Opp. at 17 (citation omitted). The Court disagrees. The
Whaley Plaintiffs describe themselves as "military service
members assigned to serve their country there." See First
Amended Complaint at pg. xxii. "[T]here" refers to JBPHH. See
id. The Whaley Plaintiffs allege that Red Hill is near JBPHH,
see id., and that "[t]he Navy owns and operates the Red Hill
Facility on the island of O`ahu, Hawai`i to maintain strategic
fuel reserves in the Pacific," [id. at ¶ 6]. They further allege
that "[t]he needless and foreseeable leaks at the Red Hill
Facility were caused by a specific series of negligent actions
by federal officers." [Id. at ¶ 5.] In other words, based on the
allegations contained in the First Amended Complaint, the Whaley
Plaintiffs were allegedly injured **because** of their military

service in Hawai`i. If not for their military service, the Whaley Plaintiffs would not have been stationed at JBPHH, lived in military-provided homes, or been provided water that was "poisoned by the Navy's jet fuel leak" at Red Hill, see, e.g., id. at ¶ 64.[6]

Although the Ninth Circuit in several cases has refused to afford much weight to this factor when a military service member is leaving a base on liberty, see, e.g., Schoenfeld v. Quamme, 492 F.3d 1016, 1023 (9th Cir. 2007) (riding in a car going off base during weekend liberty), or when taking part in activities that are open to civilians or could be undertaken by civilians, see, e.g., Dreier v. United States, 106 F.3d 844, 852-53 (9th Cir. 1996), as amended (Feb. 4, 1997) (drinking beer and swimming at a civilian-accessible location on base while on liberty); Johnson, 704 F.2d at 1437 (working as a bartender in a club on base), neither circumstance is present in this case. Accordingly, the first factor weighs in favor of applying the Feres doctrine to bar the Whaley Plaintiffs' claims against the United States.

---

[6] Plaintiffs' assertion that "[m]ost of these homes were off-base," [Mem. in Opp. at 20,] does not belie their assertion that the United States owns "the housing which Plaintiffs leased and resided upon," [First Amended Complaint at ¶ 1139,] Red Hill, [id. at ¶ 1096,] and the JBPHH water line, [id. at ¶ 9].

B.    **Factor Two – Duty Status**

The second factor mandates that the Court scrutinize the Whaley Plaintiffs' duty status when the tortious act occurred. See Johnson, 704 F.2d at 1437-38. There is no dispute that the Whaley Plaintiffs were active-duty service members at the time of the November 2021 fuel release.

Plaintiffs attempt to distinguish the second factor by pointing to cases where service members performed activities that could have been performed by civilians in similar positions. See Mem. in Opp. at 21-22 (citing Johnson, 704 F.2d at 1437; Spletstoser, 44 F.4th at 955). Plaintiffs first emphasize that the plaintiff in Johnson was bartending – an activity akin to "'a non-military job in what was essentially a civilian context.'" [Id. at 21 (quoting Johnson, 704 F.2d at 1437).] Plaintiffs then point out that the plaintiff in Spletstoser was simply "'preparing for bed in her private hotel room,'" putting her "'in the same position as any civilian would have been at the time.'" [Id. at 21-22 (quoting Spletstoser, 44 F.4th at 955).] Plaintiffs, therefore, point to cases where service members engaged in activities unrelated to their duty status. See id. at 21 (arguing that the Whaley Plaintiffs "were not engaged in activities related to their military duties at the time of their injuries"). Plaintiffs contend that, because activities such as "showering, bathing their children, drinking

13

water, and cooking in their homes" are unrelated to the Whaley

Plaintiffs' duty status, then the second factor should weigh

against the application of the Feres bar. See id.

The Ninth Circuit in Johnson, when discussing the

second factor, stated that, "duty status is relevant only

insofar as it bears on the relationship between the activity

leading to the injury and [the service member's] military

service." 704 F.2d at 1438. Accordingly, "[t]he important

question is whether the service member on active duty status was

engaging in an activity that is related in some relevant way to

his military duties." Id. In the absence of such a relationship,

active-duty status would not be relevant in assessing the second

Johnson factor. See id.

Plaintiffs ask the Court to focus narrowly on the

personal activities that the Whaley Plaintiffs engaged in during

the November 2021 fuel release such as showering and cooking in

their homes. See Mem. in Opp. at 21. The activity, however, that

led to the Whaley Plaintiffs' injuries was their quartering in

military housing. This activity parallels the activity at issue

in Feres. See Feres, 340 U.S. at 136–37, 146 (barring a

negligence claim alleging that the United States knew or should

have known of unsafe living conditions in the barracks of a

service member who perished from a fire in the barracks); see

also Perez, 2010 WL 11505507, at *4 ("The negligence alleged in

14

Feres — the government's failure to maintain safe premises for soldiers living on a military base — is very similar to, and . . . legally indistinguishable from, the negligence alleged here — the government's failure to maintain a clean drinking water supply at a military base and failure to warn soldiers and their dependents about dangerous chemicals in the water.").

Consequently, Plaintiffs' reliance on cases such as Johnson and Spletstoser is unavailing. The plaintiffs in those actions were engaged in activities that did not relate in any relevant way to their military duties. For instance, in Johnson, the plaintiff's work as a bartender, *i.e.*, the activity that led directly to his injury, did not bear any relevant relationship to his military duty as a noncommissioned officer in the Air Force, see 704 F.2d at 1433, or "to the military disciplinary structure that the Feres doctrine was meant to safeguard," id. at 1438 (citation omitted). In Spletstoser, the plaintiff's active-duty service status did not bear on the relationship between the activity leading to her injury, *i.e.*, "preparing for bed in her private hotel room" shortly before she was allegedly sexually assaulted by a superior, and her military service. See 44 F.4th at 955; see also id. at 942 (describing the incident). In contrast, here, the Whaley Plaintiffs were active-duty service members occupying military housing provided to them as a direct consequence of their active-duty status. The activities

15

leading to their injuries, *i.e.*, utilizing military housing and water utilities, are inextricably linked to their active-duty military service. Therefore, the second factor weighs in favor of applying the Feres bar.

### C.    **Factor Three – Benefits to Service Members**

The third Johnson factor requires the examination of the benefits accruing to the Whaley Plaintiffs because of their military status. See Johnson, 704 F.2d at 1438-39. When considering the third Johnson factor, two distinct benefits can be examined: first, an entitlement to compensation on account of the resulting injury, and second, "the benefit of being permitted to participate in the activity that led to the injury." See Schoenfeld, 492 F.3d at 1024 (citation omitted). Both considerations weigh in favor of applying the Feres doctrine to bar the Whaley Plaintiffs' claims in this case.

First, the Court examines whether the Whaley Plaintiffs are entitled to compensation resulting from their alleged injuries. See id. The United States asserts that the Whaley Plaintiffs received medical benefits following the Red Hill incident. See Motion, Mem. in Supp. at 18-19. The United States also asserts that the Whaley Plaintiffs are entitled to "other benefits . . . under the Veterans' Benefits Act . . . ." See id. (citation omitted).

Plaintiffs do not dispute that the Whaley Plaintiffs received medical benefits or benefits pursuant to the Veterans' Benefits Act. See Mem. in Opp. at 23 (arguing the receipt of medical benefits or other compensation does not preclude recovery); see also, e.g., First Amended Complaint at ¶¶ 75, 76, 81-82 (alleging that certain plaintiffs received medical care following the Red Hill incident, including through military medical providers). To support their argument that the Whaley Plaintiffs' receipt of medical benefits does not preclude recovery under the FTCA, Plaintiffs rely primarily on the United States Supreme Court's pre-Feres decision in Brooks v. United States, 337 U.S. 49 (1949). See Mem. in Opp. at 23 (citing Brooks, 337 U.S. at 53). Since deciding Brooks, however, the Supreme Court has held that the existence of statutory benefits, such as those provided under the Veterans' Benefits Act, serves as an independent rationale for barring suits for military service-related injuries under Feres. See United States v. Johnson, 481 U.S. 681, 689-90 (1987). Accordingly, the Whaley Plaintiffs' entitlements to compensation resulting from their alleged injuries supports the application of the Feres doctrine to bar their claims.

Next, the Court considers the benefit of participating in the activity that led to the Whaley Plaintiffs' injury. See Schoenfeld, 492 F.3d at 1024. According to Plaintiffs, to assess

17

the third factor, "[t]he critical question is whether the benefit is available to the plaintiff 'solely by virtue of his status as a serviceman.'" [Mem. in Opp. at 22 (quoting Schoenfeld, 492 F.3d at 1025).] Plaintiffs contend that the Whaley Plaintiffs' personal use and consumption of tap water in their military homes cannot be considered a benefit incident to military service. Plaintiffs argue that their housing communities included civilians, government workers, and retired officers, and that the Navy water line serviced both military and civilian neighborhoods. See id. at 22-23. Accordingly, Plaintiffs argue that the tap water that the Whaley Plaintiffs allegedly drank and were injured by was not provided to them solely because of their status as service members and that, as a result, the Court should find that the third Johnson factor weighs in their favor. See id.

Plaintiffs misstate the law. First, the relevant legal inquiry is not whether civilians had access to the Whaley Plaintiffs' military housing or the Navy's water line, but rather whether the housing and utilities were provided to the Whaley Plaintiffs as a benefit of their military service. The Ninth Circuit has held that a military-provided benefit remains incident to service even if civilians, such as government employees or service members' civilian dependents, are also permitted to access that same service. As the Ninth Circuit

18

noted in Veillette v. United States, 615 F.2d 505 (9th Cir.
1980), the Feres doctrine applies even when "civilians as well
as military personnel" have access to the service at issue,
provided the service members received the benefit as an incident
to their military service. See id. at 507 (rejecting the
appellants' argument that their injuries were not incident to
service because civilians were admitted to the same hospital
where they were treated). Similarly, while not binding on the
Court, this district court has expressly rejected the argument
that a benefit is not incidental to service when it is alleged
that civilians can also access that benefit, such as when
civilian United States Department of Defense employees were
allowed to rent military recreational cabins. See Latchum v.
United States, 183 F. Supp. 2d 1220, 1233 (D. Hawai`i 2001).

      The Whaley Plaintiffs received the benefit of the
housing through their military status. Their family members, in
turn, received the benefit of the housing through their
relationship with the service members. In McConnell v. United
States, 478 F.3d 1092 (9th Cir. 2007), a service member died in
a boating accident after renting a boat from a military
recreational center. Id. at 1093. The Ninth Circuit held that,
even though boat rentals could be provided to active-duty
members and their families, the deceased service member's "use
of the boat [] was due to his status as a service member" under

the third factor. Id. at 1097. In other words, the deceased service member and his fellow lieutenants "were exercising their privileges as service members rather than as civilian guests." Id. Plaintiffs do not dispute that the Whaley Plaintiffs were permitted to reside in their military housing because of their active-duty military status. The Court thus finds that the Whaley Plaintiffs' housing, and their access to Navy-provided water, were benefits derived from their positions as service members. The third Johnson factor, therefore, also weighs in favor of the application of the Feres doctrine to bar the Whaley Plaintiffs' claims.

  D.    **Factor Four – Nature of Activities**

        Pursuant to the fourth Johnson factor, the Court must analyze the nature of the Whaley Plaintiffs' activities at the time the negligent act occurred. See Johnson, 704 F.2d at 1439-41. The Ninth Circuit has previously stressed that the fourth factor is "is the most important in determining whether a plaintiff's suit is Feres barred." Schoenfeld, 492 F.3d at 1025 (citation omitted). "[T]he key inquiry is 'whether or not the service member's activities at the time of injury are of the sort that could harm the disciplinary system if litigated in a civil action.'" Id. (quoting Johnson, 704 F.2d at 1439). Considerations that are relevant to this key inquiry include whether the nature of the activity at issue "involve the sort of

close military judgment calls that the Feres doctrine was designed to insulate from judicial review" or implicate "decision[s] requiring military expertise or judgment." See Johnson, 704 F.2d at 1440 (citation omitted).

Plaintiffs contend that the Whaley Plaintiffs' activities at the time that they were injured were entirely private. See Mem. in Opp. at 14-17. They point to activities such as bathing children and preparing dinner and argue that such activities do not relate in any relevant way to the scope of their military service. See id. at 14. Plaintiffs' focus on these activities obfuscates the nature of the activity at issue before the Court. In other words, Plaintiffs' focus on activities such as preparing Thanksgiving dinner and bathing, which constitute personal activities that – in the abstract – do not relate to military service, are all subcomponents of one activity, *i.e.*, residing in military housing, which led to the Whaley Plaintiffs' alleged injuries. Cf. Perez, 2010 WL 11505507, at *4 ("although it is not exactly clear what precise activity or activities [the plaintiff] was engaged in every single time he drank or used the contaminated water at [Camp Lejeune], it is undeniable that he drank and used the water while performing at least some military activities").

When evaluating similar claims involving contaminated water provided by the military, federal courts have consistently

21

rejected the argument that engaging in routine, personal activities at home precludes the application of the Feres doctrine. For example, in Gros v. United States, 232 F. App'x 417 (5th Cir. 2007) (per curiam), a service member "was allegedly engaged in personal activities when he was exposed to the toxic chemical" "while showering or drinking water at his home on the base." Id. at 418. The Fifth Circuit Court of Appeals affirmed the district court's dismissal of the plaintiffs' claims, holding that "the Feres doctrine bars suit when the injuries arose on base while plaintiffs were off-duty and attending to personal activities" because the underlying activity — residing in military housing — was indistinguishable from the facts of Feres itself. See id. at 418-19 (citations omitted).

The Fourth Circuit Court of Appeals reached a similar conclusion in Clendening, 19 F.4th 421. In Clendening, the Fourth Circuit affirmed the district court's conclusion that "the Feres doctrine barred [the p]laintiff's tort claims for Clendening's exposure to contaminated water and other toxins while living at Camp Lejeune[.]" See id. at 427, 431. Like here, the plaintiff in Clendening argued that the Feres doctrine should not apply because exposure to contaminated water was not "related to or served a military objective" and did not "implicate[] [a] military function." Compare id. at 429 (some

22

alterations in Clendening) (quotation marks and citation omitted), with Mem. in Opp. at 17 ("In sum, because 'there is no relevant relationship' between the service member's purely personal activities, bathing their children and cooking for their families . . . and 'the military interests that might be jeopardized by civil suits, the Feres doctrine cannot bar recovery.'" (quoting Johnson, 704 F.2d at 1440)). The Fourth Circuit rejected this argument, concluding that the "military's provision of water and accommodations to its troops is clearly activity 'incident to service,'" and also finding that "it is hard to see how [the p]laintiff's exposure claims are meaningfully different from Feres." Clendening, 19 F.4th at 428 (citation omitted).

Plaintiffs also contend that, pursuant to Ninth Circuit precedent, the Feres doctrine is inapplicable unless a service member is acting under orders or on a specific military mission. See Mem. in Opp. at 15; see also 4/9 Hrg. Trans. at 6-7, 13-14, 17-18, 28. Plaintiffs submit that the Whaley Plaintiffs could not have been acting under orders during the Red Hill incident because "they 'stood in exactly the same position as a civilian' water customer using tap water in their homes and 'could just as easily been injured had [they] never worn a uniform at all.'" See Mem. in Opp. at 15 (brackets in

23

Mem. in Opp.) (some citations omitted) (quoting Spletstoser, 44 F.4th at 947).[7]

Such contentions rely on an overly narrow interpretation of the law. The Ninth Circuit has expressly held that "military-sponsored activities fall within the Feres doctrine, regardless of whether they are related to military duties." Costo, 248 F.3d at 868. Indeed, the Ninth Circuit has applied the Feres doctrine to bar claims against the United States even when a service member is off duty and engaged in purely recreational pursuits, provided the activity is sponsored by the military or related to their military service. For instance, in McConnell, the Ninth Circuit affirmed the application of the Feres bar despite the fact that the deceased service member's activities resulting in his death "were purely recreational" but "military-sponsored" and "[]related to his

---

[7] As a factual matter, the First Amended Complaint does not indicate whether the Whaley Plaintiffs were subject to military orders during the Red Hill incident. The Whaley Plaintiffs simply allege that "[t]hey were not acting under official orders as they showered, bathed, drank, and cooked food with the contaminated water." [First Amended Complaint at pg. xxiii.] A service member does not need to act pursuant to military orders to nevertheless still be subject to military orders. Cf. Barry v. Stevenson, 965 F. Supp. 1220, 1225-26 (E.D. Wis. 1997) ("The concept of 'military discipline' is broadly applied under the Feres doctrine. A service member need not be acting under direction of command. See United States v. Shearer, 473 U.S. 52, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985). '[M]ilitary discipline involves not only obedience to orders, but more general duty and loyalty to one's service and to one's country.' Johnson, 481 U.S. at 691, 107 S. Ct. at 2069." (brackets in Barry)).

24

military status." See 478 F.3d at 1097-98. Furthermore, in the instant case, while "civilians were injured in the very same homes from the very same negligence," [Mem. in Opp. at 16 (emphasis omitted),] this does not negate the Whaley Plaintiffs' assertions that these homes were provided to them by the military, [First Amended Complaint at ¶ 1139,] and that the water they consumed was also provided to them by the military, [id. at ¶¶ 9, 1139]. Nor do Plaintiffs' contentions address the fact that service members and civilians who lived in the Camp Lejeune military housing were also injured by the same negligence. See, e.g., Bunting v. United States, No. 7:19-cv-67-BO, 2020 WL 6587086, at *1 (E.D.N.C. Nov. 10, 2020) (discussing that the plaintiff's claims for alleged negligent storage and disposal of contaminated waste arose from the plaintiff's time living in Camp Lejeune with his parents from his birth until he was at least seven years old). Nevertheless, as discussed *supra*, claims by service members in the Camp Lejeune cases were systematically denied by federal courts on Feres grounds, among others. Cf. Camp Lejeune Justice Act of 2022, Pub. L. No. 117-168, § 804(b), 136 Stat. 1759, 1802 (allowing certain individuals, including civilians and veterans, to "bring an action . . . to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune").

Accordingly, the Court must turn to what the Ninth Circuit case law demands: analyzing the nature of the Whaley Plaintiffs' quartering in military housing when the United States' tortious act occurred. The United States has an "obligation to provide the soldiers and their dependents with necessary housing, sufficient food, and clean water." Perez, 2010 WL 11505507, at *3. Because "[w]ater is obviously necessary to sustain life, . . . its provision to those living on a base is therefore essential to, and part of, the government's military mission." Id.; see also Swanson v. United States, 845 F. App'x 690, 691 (9th Cir. 2021) (affirming the district court's dismissal of the plaintiff's claim for injuries arising from his time at Camp Lejeune "because [the plaintiff's] injuries were sustained incident to military service" (some citations omitted) (citing Feres v. United States, 340 U.S. 135, 146, 71 S. Ct. 153, 95 L. Ed. 152 (1950))). While each plaintiff may not have lived "on base," the water provided to each plaintiff came from a source allegedly owned and operated by the United States, [First Amended Complaint at ¶¶ 9, 1139], and the Whaley Plaintiffs also allege that they lived in housing owned by the United States, [id. at ¶ 1139]. Consequently, the Whaley Plaintiffs' overarching activity of residing in military-provided housing and consuming military-supplied water is fundamentally incidental to their military service.

26

Furthermore, assertions made in the First Amended Complaint challenge the Navy's decision-making, including its choices regarding the operation of Red Hill and its efforts to mitigate the damage from the November 2021 fuel release. See, e.g., id. at ¶¶ 1097-98 (asserting that federal officers were negligent in, *inter alia*, their operation and maintenance of Red Hill); id. at ¶¶ 1133-34, 1149 (suggesting that the Navy was negligent in operating the Red Hill facility in proximity to the JBPHH drinking water system and military housing). The assertions made in the instant action may "call[] into question basic choices about the discipline, supervision, and control of military personnel." Spletstoser, 44 F.4th at 957 (citations omitted); see also First Amended Complaint at ¶ 1098(g) (alleging that the Navy breached its duty of care to exercise ordinary care at Red Hill when its "[o]fficers ordered junior servicemembers to flush hazardous fuel into groundwater without a permit and in violation of federal and state law").

The Whaley Plaintiffs also make allegations that may risk undermining the "instinctive obedience, unity, commitment, and esprit de corps," which "[t]o accomplish its mission the military must foster . . ." See Johnson, 481 U.S. at 691 (quotation marks and citation omitted). For instance, as to Plaintiff Amanda Feindt, who lived in Ford Island military housing, the Whaley Plaintiffs allege that the Navy's actions

27

constitute "institutional betrayal" and that, because of the Navy's negligence, she has experienced a "devastating loss of trust in the very institution she has risked her life for in service to our country." [First Amended Complaint at ¶¶ 71, 76.] Similarly, the Whaley Plaintiffs allege that the November 2021 fuel release "poisoned" Plaintiff Jessica Whaley's "trust and faith . . . in her government[.]" [Id. at ¶ 67.] The Whaley Plaintiffs also make a similar allegation regarding Plaintiff Elizabeth Thompson-Watson, who "played a critical role on the Army's Veterinary Services response team" during the "public health crisis in her community." See id. at ¶ 85 (alleging her "[t]rust in leadership has eroded"). For these reasons, the Court finds that the fourth factor weighs in favor of the application of the Feres bar.

## II.   Summary

Because all four Johnson, 704 F.2d 1431, factors weigh in favor of the application of the Feres doctrine to bar the Whaley Plaintiffs' claims, the Court is compelled to grant the Motion. The Court nevertheless recognizes that dismissal of claims by service members in this matter based on the Feres doctrine is an overly harsh and unjust outcome. The Court takes note that several justices of the Supreme Court and the Ninth Circuit have cast doubt on the validity of the Feres doctrine. See, e.g., Johnson, 481 U.S. at 692-703 (Scalia, J.,

28

dissenting); Stencel Aero Eng'g Corp. v. United States, 431 U.S. 666, 674–77 (1977) (Marshall, J., dissenting); Costo, 248 F.3d at 869 ("we join the many panels of this Court that have criticized the inequitable extension of this doctrine to a range of situations that seem far removed from the doctrine's original purposes" (citing cases)). Indeed, Justice Sotomayor and Justice Thomas recently wrote a statement and a dissent, respectively, concerning the Supreme Court's denial of a writ of certiorari in a case that challenged the validity of the Feres doctrine. See Beck v. United States, No. 24-1078, 2025 WL 3260174, at *1-2 (U.S. Nov. 24, 2025) (Sotomayor, J., statement respecting the denial of certiorari) (noting the problems posed by the Feres doctrine but voting to deny the petition for a writ of certiorari on statutory *stare decisis* grounds); id. at *2-6 (Thomas, J., dissenting). Nevertheless, unless the Supreme Court reverses Feres, or unless the United States Congress acts in response to the Red Hill cases - as it did when it enacted the Camp Lejeune Justice Act of 2022, thereby allowing veterans to sue the United States for injuries they suffered as a result of their service at Camp Lejeune - the Court is inextricably bound and compelled to follow Feres and its Ninth Circuit progeny.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss Whaley First Amended Complaint for Lack of Subject-Matter Jurisdiction, filed on January 30, 2026, is GRANTED.

There being no remaining claims in Whaley, the Clerk's Office is DIRECTED to enter judgment in favor of the United States and to close that case, pursuant to the instant Order, on **May 20, 2026.** The closure of Whaley does not affect the remaining claims in Feindt and Hughes.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 5, 2026.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

PATRICK FEINDT, JR. ET AL. VS. UNITED STATES; CV 22-00397 LEK-KJM; JESSICA WHALEY ET AL. VS. UNITED STATES; CV 23-00457 LEK-KJM; JACLYN HUGHES ET AL. VS. UNITED STATES; CV 24-00059 LEK-KJM; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS *WHALEY* FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION